# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### GREEN BAY DIVISION

| | |
|---|---|
| CITY OF LA CROSSE, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>OSHKOSH CORPORATION, PIERCE MANUFACTURING, INC., REV GROUP, INC., ROSENBAUER AMERICA, LLC, FIRE APPARATUS MANUFACTURERS' ASSOCIATION,<br><br>          Defendants. | Case No. 1:25-cv-01252<br><br>Hon. Byron B. Conway |
| CITY OF ONALASKA, individually, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>OSHKOSH CORPORATION; REV GROUP, INC., ROSENBAUER AMERICA LLC, and FIRE APPARATUS MANUFACTURERS' ASSOCIATION,<br><br>          Defendants. | Case No. 1:25-cv-01717-BBC<br><br>Hon. Byron B. Conway |

## MEMORANDUM OF LAW IN SUPPORT OF
## INDIRECT PURCHASER PLAINTIFFS' MOTION TO CONSOLIDATE
## <u>AND TO APPOINT INTERIM CO-LEAD CLASS COUNSEL</u>

**TABLE OF CONTENTS**

                                                                                    **Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

III.  ARGUMENT ....................................................................................................... 3

      A.    Motion to Consolidate the Related Matters ............................................... 3

            1.    Legal Standard for Consolidation .................................................... 3

            2.    Consolidation of the Related Matters is appropriate under
                  Rule 42(a) ......................................................................................... 4

      B.    Motion to Appoint Interim Class Counsel ................................................. 5

            1.    Legal Standard for Appointing Interim Class Counsel .................... 5

            2.    Indirect Purchaser Plaintiffs' counsel unanimously support
                  Plaintiffs' motion to appoint HBSS, CD, and GG as interim
                  co-lead class counsel. ...................................................................... 8

            3.    HBSS and CD have expended significant time and
                  resources to investigate Plaintiffs' claims and advance this
                  litigation. ......................................................................................... 9

            4.    HBSS is sufficiently qualified and resourced to serve as
                  interim co-lead counsel. ................................................................. 11

                  a.    HBSS has extensive antitrust class action
                        experience. ........................................................................... 11

                  b.    HBSS has the resources necessary to effectively
                        prosecute this litigation. ..................................................... 21

            5.    CD is sufficiently experienced and resourced to serve as
                  interim co-lead counsel. ................................................................. 14

            6.    GG is sufficiently experienced and resourced to serve as
                  interim co-lead counsel. ................................................................. 16

            7.    HBSS, CD, and GG will continue to work cooperatively
                  with all counsel. ............................................................................. 21

IV.   CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahnert v. Emps. Ins. Co. of Wausau*,
2017 WL 1251113 (E.D. Wis. Mar. 31, 2017) ...........................................................................4

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
240 F.R.D. 56 (E.D.N.Y. 2006)................................................................................................7

*In Re: Aqueous Film-Forming Foams Prods. Liability Litig.*,
18-mn-2873 (D.S.C. 2018) ................................................................................................14, 15

*Baker v. City of Atlanta*,
2022 WL 18777369 (N.D. Ga. Mar. 8, 2022)...........................................................................4

*Baker v. Saint-Gobain Performance Plastics Corp.*,
2016 WL 4028974 (N.D.N.Y. July 27, 2016) ........................................................................21

*In re Bear Stearns Companies, Inc. Sec., Derivative,*
*& Emp. Ret. Income Sec. Act (Erisa) Litig.*,
2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) .................................................................................7

*Bhatia v. 3M Co.*,
No. 16-cv-1304 (D. Minn).......................................................................................................19

*BHP, Inc. v. Ackerman*,
2025 WL 2493989 (E.D. Wis. Aug. 29, 2025).........................................................................3

*Bitzko v. Weltman, Weinberg, & Reis Co., LPA*,
2018 WL 10593815 (N.D.N.Y. May 18, 2018)........................................................................6

*In re Broiler Chicken Antitrust Litig.*,
No. 1:16-cv-08637 (N.D. Ill.) ......................................................................................16, 18, 19

*Canchola, et al. v. Allstate Ins. Co.*,
8:23-cv-00734 (C.D. Cal. 2023) .............................................................................................14

*In re Cattle and Beef Antitrust Litig.*,
No. 0:22-cv-3031 (D. Minn.)........................................................................................17, 18, 19

*In re Charles Schwab Corp. Sec. Litig.*,
No. 08-cv-01510 (N.D. Cal.) ..................................................................................................13

*City of Augusta v. Oshkosh Corporation, et al.*,
No. 1:25-cv-01543-BBC.......................................................................................................3, 10

*City of La Crosse v. Oshkosh Corp., et al.*,
   No. 1:25-cv-01252 ...........................................................................................................1, 3, 10

*City of Onalaska v. Oshkosh Corp., et al.*,
   No. 1:25-cv-01717 ..................................................................................................................1, 3

*City of Philadelphia v. Oshkosh Corporation, et al.*,
   No. 1:25-cv-01801-BBC.........................................................................................................3, 10

*In re Cmty. Bank of N. Virginia Mortg. Lending Practs. Litig.*,
   2011 WL 4382942 (W.D. Pa. Sept. 20, 2011)...............................................................................9

*In re College Athlete NIL Litig.*,
   No. 4:20-cv-03919-CW (N.D. Cal.) .....................................................................................11, 12

*Cumberland County v. The Chemours Co.*,
   22 CVS 1569 (N.C. Sup. Ct.).....................................................................................................14

*In Re Dealer Mgmt. Sys. Antitrust Litig.*,
   MDL No. 2817 (N.D. Ill.)..........................................................................................................19

*In re Deere & Co. Repair Servs. Antitrust Litig.*,
   MDL No. 3030 (N.D. Ill.)..........................................................................................................18

*In re Delphi ERISA Litig.*,
   230 F.R.D. 496 (E.D. Mich. 2005) ..........................................................................................7, 8

*Doe v. Hanson*,
   No. 25-cv-19-2297 (Henn. Dist. Ct.) .........................................................................................20

*Donaldson v. Pharmacia Pension Plan*,
   2006 WL 1308582 (S.D. Ill. May 10, 2006)................................................................................5

*In re DRAM Antitrust Litig.*,
   MDL No. 1486 (N.D. Cal.)..........................................................................................................17

*In re Elec. Books Antitrust Litig.*,
   No. 11-md-02293, ECF No. 676 (S.D.N.Y.) .......................................................................12, 13

*Equal Employment Opportunity Comm'n v. G-K-G, Inc.*,
   39 F.3d 740 (7th Cir.1994) ...........................................................................................................4

*In Re: Farm-Raised Salmon And Salmon Products Antitrust Litig.*,
   2021 WL 1109128 (S.D. Fla. Mar. 23, 2021).............................................................................10

*In re Forefront Data Breach Litig.*,
   2022 WL 20690780 (E.D. Wis. Jan. 27, 2022)............................................................................6

*In re Foundry Resins Antitrust Litig.*,
No. 2:04-md-1638, (S.D. Ohio Dec. 10, 2004)..................................................................8

*In re Frozen Potato Products Antitrust Litig.*,
No. 24-cv-11801 (N.D. Ill.) ...........................................................................................13

*In re Generac Solar Power Sys. Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2023 WL 5878523 (E.D. Wis. July 18, 2023) .................................................................6

*In re Granulated Sugar Antitrust Litig.*,
No. 24-md-0311 (D. Minn).............................................................................................20

*Greenberg v. Amazon.com, Inc.*,
3 Wash. 3d 434 (2024)....................................................................................................11

*Habitat Educ. Ctr., Inc. v. Kimbell*,
250 F.R.D. 390 (E.D. Wis. 2008) ....................................................................................4

*Hill v. The Tribune Co.*,
2005 WL 3299144 (N.D. Ill. Oct. 13, 2005).....................................................................7

*Jammal v. Am. Family*,
13-CV-437 (N.D. Ohio 2013) .........................................................................................14

*Jien v. Perdue Farms, Inc.*,
No. 19-cv-2521 (D. Md.) ................................................................................................13

*In re Johnson Controls, Inc. Data Incident Litig.*,
2025 WL 3063459 (E.D. Wis. Oct. 3, 2025) ....................................................................6

*Khottavongsa v. City of Brooklyn Center*,
No. 16-cv-1031 (D. Minn.)..............................................................................................20

*Kleen Prods. vs. Int'l Paper*,
No. 10-cv-5711 (N.D. Ill.) ..............................................................................................19

*Landers v. Ford Motor Co.*,
2024 WL 489169 (9th Cir. Feb. 8, 2024) .......................................................................11

*Leprino Foods Co. v. DCI, Inc.*,
2015 WL 134235 (D. Colo. Jan. 9, 2015)........................................................................5

*In re Medtronic, Inc.*, *Sprint Fidelis Leads Products Liability Litig.*,
MDL No. 1905 (D. Minn.)...............................................................................................18

*Nat'l Collegiate Athletic Ass'n v. Alston*,
594 U.S. 69 (2021)..........................................................................................................11

*In Re: Nat'l Prescription Opiate Litig.*,
17-md-2804 (N.D. Ohio 2017) ...............................................................................14

*In re National Collegiate Athletic Association Athletic
Grant-In-Aid Cap Antitrust Litig.*,
No. 4:14-md-02541 (N.D. Cal.) ..............................................................................12

*In Re: National Prescription Opiate Litig.*,
17-md-2804 (N.D. Ohio 2017) ...............................................................................15

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
No. 05-cv-11148 (D. Mass.) ....................................................................................12

*In re Packaged Seafood Prods. Antitrust Litig.*,
2017 WL 35571 (S.D. Cal. Jan. 3, 2017)...............................................................10

*Parry v. Farmers Ins. Exch.*,
BC683856 (Sup. Ct. Cal. 2017) ..............................................................................14

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*
MDL No. 3107 (N.D. Ohio) .....................................................................................19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2006 WL 2038650 (E.D.N.Y. Feb. 24, 2006)...........................................................6

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
MDL No. 1456 (D. Mass.).......................................................................................12

*In re Pork Antitrust Litig.*,
No. 0:18-cv-01776 (D. Minn.)......................................................................16, 19, 20

*In re Pork Antitrust Litig.*,
No. 18-cv-01776 (D. Minn.)...............................................................................13, 18

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
No. 1:08-cv-00042 (E.D.N.Y.) ...........................................................................17, 19

*Samaha v. City of Minneapolis*,
No. 20-cv-01715 (D. Minn.)....................................................................................20

*SJ Props Suites, BuyCo, EHF v. Dev. Opportunity Corp.*,
2009 WL 3790009 (E.D. Wis. Nov. 12, 2009) .........................................................3

*Smith v. State Farm Mut. Auto. Ins. Co.*,
301 F.R.D. 284 (N.D. Ill. 2014)..........................................................................6, 7, 8

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
967 F.3d 264 (3d Cir. 2020)....................................................................................11

*In re Syngenta Litig.*,
No: 27-cv-15-3785 (Minn. Dist. Ct.) ...................................................................................17

*In re Syngenta Litig.*,
No. 27-cv-15-3785 (Minn. Dist. Ct.) ...................................................................................18

*In re Terzaosin Hydrochloride*,
220 F.R.D. 672 (S.D.Fla. 2004) ............................................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 3:07-md-01827 (N.D. Cal.) ...........................................................................................17

*The Newstead Fire Co. v. Oshkosh Corporation, et al.*,
No. 1:25-cv-01693-BBC ..................................................................................................3, 10

*U.S. v. Knauer*,
149 F.2d 519 (7th Cir. 1945) .................................................................................................3

*Walker v. Discover Fin. Servs.*,
2011 WL 2160889 (N.D. Ill. May 26, 2011) .....................................................................8, 9

*In re Yardi Revenue Management Antitrust Litig.*,
No. 2:23-cv-01391-RSL (W.D. Wash.) ...............................................................................13

**Statutes & Rules**

Fed. R. Civ. P. 23...................................................................................................1, 5, 7, 8, 11

Fed. R. Civ. P. 42........................................................................................................... 1, 3, 4

15 U.S.C. § 1 ..........................................................................................................................3, 4

**Other Authorities**

7B Charles Alan Wright, et al., Federal Practice and Procedure § 1802.3
(3d ed. 2005) ..........................................................................................................................8

Manual for Complex Litigation, Fourth......................................................5, 6, 7, 8, 9, 21

*Report of the Third Circuit Task Force, Selection of Class Counsel*,
208 F.R.D. 340, 416 (2002) .................................................................................................9

Indirect Purchaser Plaintiff City of La Crosse moves, pursuant to Federal Rule of Civil Procedure 42(a), for an Order consolidating the following two indirect purchaser antitrust class actions currently before the Court: *City of La Crosse v. Oshkosh Corp., et al.*, No. 1:25-cv-01252 (E.D. Wisc.) ("*La Crosse*"), and *City of Onalaska v. Oshkosh Corp., et al.*, No. 1:25-cv-01717 (E.D. Wisc.) ("*Onalaska*") (collectively, "Related Matters") under the title *In re: Indirect Purchaser Fire Apparatus Antitrust Litigation*. In addition, the City of La Crosse respectfully moves, pursuant to Federal Rule of Civil Procedure 23(g), for an order appointing Hagens Berman Sobol Shapiro LLP ("HBSS"), Crueger Dickinson LLC ("CD"), and Gustafson Gluek PLLC ("GG") as interim co-lead class counsel for the putative indirect purchaser class.

## I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 42(a), Plaintiff City of La Crosse respectfully moves the Court for an order consolidating the Related Matters, which arise from the same nucleus of operative facts: the Defendants' anticompetitive actions resulting in illegal price-fixing, which affected these Plaintiffs and all other similarly situated indirect purchasers of fire trucks from the named Defendant manufacturers from January 1, 2016 forward. The Related Matters are brought against common defendants, are grounded in a common set of operative facts, and seek similar remedies through similar causes of action on behalf of virtually identical putative classes. Consolidation of the Related Matters serves the interests of justice, efficiency, and judicial economy.

In addition, pursuant to Fed. R. Civ. P. 23(g), this Court should appoint interim lead class counsel for the putative indirect purchaser class because it will streamline prosecution of this complex litigation, which involves related and overlapping putative antitrust class actions. Appointing interim lead class counsel is necessary to coordinate discovery both among indirect purchaser plaintiffs and also with counsel for the separate, putative class of direct purchaser plaintiffs, and to conduct depositions, employ experts, ensure that deadlines are met, and

otherwise facilitate the efficient and effective prosecution of this litigation on behalf of the putative indirect purchaser class.

The firms seeking appointment as interim co-lead counsel for the putative indirect purchaser class—HBSS, CD, and GG, are well qualified to serve. These firms have exceptional records of experience, knowledge, and capacity to commit the necessary resources to prosecute this litigation. HBSS and CD represent the City of La Crosse, the first Plaintiff to file any antitrust case—direct or indirect—against the named Defendants. Since then, GG filed an additional complaint on behalf of the City of Onalaska. All three firms have conferred with plaintiffs' counsel for all known direct and indirect purchaser actions now pending before this Court, thus demonstrating their commitment to organizing the case, advancing the litigation, and working effectively with other parties and counsel. As a result, all known indirect purchaser plaintiffs and their counsel in the indirect purchaser actions currently pending before this Court unanimously agree to the organizational structure proposed in this motion.

## II.    BACKGROUND

Plaintiffs in these Related Matters allege that defendants conspired to fix and maintain prices in the fire trucks market, in violation of the federal antitrust laws. *See* Declaration of Steve W. Berman in Support of Indirect Purchaser Plaintiffs' Motion to Consolidate and to Appoint Interim Co-Lead Class Counsel ("Berman Decl."), ¶ 2.

The City of La Crosse and the City of Onalaska are each indirect purchasers of fire trucks who filed indirect purchaser antitrust class actions against the nation's largest fire truck manufacturers and the Fire Apparatus Manufacturers' Association ("FAMA"). These actions are brought on behalf of all indirect purchasers of fire trucks from the manufacturer Defendants from

January 1, 2016 to the present.[1] Both Plaintiffs allege that Defendants colluded to artificially raise and maintain prices of fire trucks, in violation of Section One of the Sherman Act, 15 U.S.C. § 1, and that the nationwide Class of indirect purchasers was harmed thereby.[2]

Proposed interim co-lead counsel for indirect purchaser plaintiffs have met and conferred with counsel for the separate putative class of direct purchaser plaintiffs[3] and intend to coordinate with defendants on a stipulation for each of the two plaintiff groups to file its own consolidated amended complaint, followed by a uniform date for defendants to respond to the consolidated amended complaints. The parties may also propose additional case management measures to streamline the case and promote judicial economy.

## III. ARGUMENT

### A. Motion to Consolidate the Related Matters

#### 1. Legal Standard for Consolidation

District courts may consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a). A court has "broad discretion" under this rule to consolidate actions pending within one judicial district. *BHP, Inc. v. Ackerman*, 2025 WL 2493989, at *4 (E.D. Wis. Aug. 29, 2025) (citing *U.S. v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945)). "Consolidation is preferred to avoid unnecessary duplication of efforts in related cases and promote judicial economy and efficiency." *SJ Props Suites, BuyCo, EHF v. Dev. Opportunity Corp.*, 2009 WL

---

[1] Defendants in both cases are Oshkosh Corporation, Pierce Manufacturing, Inc.; Rev Group, Inc.; Rosenbauer America LLC (collectively, "Manufacturer Defendants"); and Fire Apparatus Manufacturers' Association ("FAMA").

[2] *See La Crosse* Complaint, ECF No. 1 ¶¶ 1-9, 118; *Onalaska* Complaint, ECF No. 1 ¶¶ 2-11, 138.

[3] *See City of Augusta v. Oshkosh Corporation, et al.*, No. 1:25-cv-01543-BBC ("*Augusta*"); *The Newstead Fire Co. v. Oshkosh Corporation, et al.*, No. 1:25-cv-01693-BBC ("*Newstead Fire*"); and *City of Philadelphia v. Oshkosh Corporation, et al.*, No. 1:25-cv-01801-BBC ("*Philadelphia*").

3790009, at *1 (E.D. Wis. Nov. 12, 2009) (citing *Equal Employment Opportunity Comm'n v. G-K-G, Inc.*, 39 F.3d 740, 745 (7th Cir.1994)). The Court "need not find that common questions of law or fact predominate, only that they exist and that consolidation will prove beneficial." *Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 390, 394 (E.D. Wis. 2008).[4] In determining whether to consolidate, courts consider factors including "judicial economy, avoiding delay, and avoiding inconsistent or conflicting results," as well as "the possibility of juror confusion or administrative difficulties." *Id.*; *see also Ahnert v. Emps. Ins. Co. of Wausau*, 2017 WL 1251113, at *2 (E.D. Wis. Mar. 31, 2017) (motion to consolidated granted where "the two cases involve a common core of factual questions and legal issues," and "[i]n the absence of consolidation, there is a risk that two judges would preside over two trials with inconsistent rulings or verdicts").

### 2. Consolidation of the Related Matters is appropriate under Rule 42(a).

The complaints filed in the Related Matters assert the same basic facts underpinning the Sherman Act cause of action against the common Manufacturer Defendants and FAMA and seek similar individual and identical class-wide relief in response to the same conspiracy to restrain trade and engage in a price fixing scheme. The Related Matters commonly seek certification of a nationwide class of indirect purchasers of fire trucks and allege that class members suffered harm as a result of the price fixing scheme. The Related Matters present the quintessential consolidation scenario, and the Court should consolidate these cases to ensure judicial economy and preserve party resources.

Courts consistently find that similar actions are particularly appropriate for Rule 42 consolidation. *See, e.g.*, *Baker v. City of Atlanta*, 2022 WL 18777369, at *2 (N.D. Ga. Mar. 8,

---

[4] Internal citations and quotations omitted, and emphasis added throughout, unless otherwise indicated.

2022); *Leprino Foods Co. v. DCI, Inc.*, 2015 WL 134235, at *3 (D. Colo. Jan. 9, 2015) (finding that two actions involved common questions of law or fact and thus "consolidation of these two actions will avoid unnecessary costs and will promote judicial efficiency").

Consolidation of the Related Matters is warranted because it will simplify discovery, pretrial motions, class certification issues, and other case management issues, especially given that the cases are at their procedural inception. Consolidating the Related Matters will also reduce any confusion and/or delay that may result from prosecuting related putative class actions separately, including eliminating duplicative discovery and the possibility of inconsistent rulings on class certification, Daubert motions, and other pretrial matters. Furthermore, consolidation will foster judicial economy and will not prejudice any party.

Accordingly, the City of La Crosse and the City of Onalaska request that the Court consolidate the Related Matters under the docket number for the first-filed Indirect Purchaser case, No. 1:25-cv-01252, and under the caption *In re: Indirect Purchaser Fire Apparatus Antitrust Litigation*.

**B.      Motion to Appoint Interim Class Counsel**

**1.      Legal Standard for Appointing Interim Class Counsel**

Federal Rule of Civil Procedure 23(g)(3) provides that the "court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3); *see also Donaldson v. Pharmacia Pension Plan*, 2006 WL 1308582, at *1 (S.D. Ill. May 10, 2006). Appointing interim class counsel is appropriate where, as here, there are "a number of overlapping, duplicative, or competing suits" because "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for

Complex Litigation, Fourth, § 21.11 ("Manual"); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014). Appointing interim lead counsel "can foster efficiency in case management regarding discovery and potential resolution of the claims." *Bitzko v. Weltman, Weinberg, & Reis Co., LPA*, 2018 WL 10593815, *1 (N.D.N.Y. May 18, 2018). Motions to appoint interim lead counsel in complex class action matters, before any class is certified, are routinely granted in this district. *See, e.g.*, *In re Forefront Data Breach Litig.*, 2022 WL 20690780 (E.D. Wis. Jan. 27, 2022); *In re Generac Solar Power Sys. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2023 WL 5878523 (E.D. Wis. July 18, 2023); *In re Johnson Controls, Inc. Data Incident Litig.*, 2025 WL 3063459 (E.D. Wis. Oct. 3, 2025).

In *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, the court observed that "[t]he appointment of lead counsel is recognized as a useful and helpful way to avoid duplication of effort and a means to streamline what could otherwise be inefficient and unruly proceedings." 2006 WL 2038650, at *2 (E.D.N.Y. Feb. 24, 2006). The court also noted that "[t]he *Manual* . . . counsels that in making such an appointment, [the court] should consider such factors as the qualification and competence of counsel, the ability of counsel to fairly represent diverse interests, and the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court." *Id*.

Early selection of interim class counsel in the litigation process has important benefits, such as providing for "efficiency and economy without jeopardizing fairness to the parties." Manual § 10.221. Appointing interim class counsel assists a court in organizing the case and promotes orderly and efficient litigation. *See generally id*. §§ 10.224, 21.272. The "designation of interim [class] counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary

discovery, moving for class certification, and negotiating settlement." *Id*. § 21.11. Interim class counsel is responsible for acting on behalf of the class, so a court strives to select qualified interim class counsel who can represent the class fairly and adequately during all phases of the litigation. Fed. R. Civ. P. 23(g)(4); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57–58 (E.D.N.Y. 2006) (quoting the Manual).

In the present case, Indirect Purchaser Plaintiffs' claims against Defendants are premised on identical conduct by the various Defendants and will be resolved by application of the same law. Consequently, appointing interim lead class counsel will greatly enhance the efficiency of the prosecution of these claims.

Interim lead class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *In re Delphi ERISA Litig.*, 230 F.R.D. 496, 498 (E.D. Mich. 2005); *see also Hill v. The Tribune Co.*, 2005 WL 3299144, at *3–4 (N.D. Ill. Oct. 13, 2005). In selecting interim lead class counsel, this Court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A); *Smith*, 301 F.R.D. at 288; *Hill*, 2005 WL 3299144, at *3–4. Other pertinent factors include any matter that is relevant to "counsel's ability to fairly and adequately represent the interests of the class." *Smith*, 301 F.R.D. at 288; *In re Delphi*, 230 F.R.D. at 498. Courts have recognized that proposed counsel's knowledge and experience can be the "most persuasive factor when choosing lead counsel." *In re Bear Stearns Companies, Inc. Sec., Derivative, & Emp. Ret. Income Sec. Act (Erisa) Litig.*, 2009 WL 50132, at *11 (S.D.N.Y. Jan. 5, 2009) (citing *In re Terzaosin Hydrochloride*, 220 F.R.D. 672, 702

(S.D.Fla. 2004)), *amended on denial of reconsideration sub nom. In re Bear Stearns Companies, Inc. Sec., Derivative, & Erisa Litig.*, 2009 WL 2168767 (S.D.N.Y. July 16, 2009). Though these various factors pertain to the selection of class counsel upon class certification, courts appointing interim class counsel before certification apply these same factors. *See Smith*, 301 F.R.D. at 288; *In re Delphi*, 230 F.R.D. at 498.

"In determining lead counsel, a court should conduct an independent review to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." *In re Delphi*, 230 F.R.D. at 498. No single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the applicants' relative strengths. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); *Walker v. Discover Fin. Servs.*, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011); *In re Delphi*, 230 F.R.D. at 498; 7B Charles Alan Wright, et al., Federal Practice and Procedure § 1802.3 (3d ed. 2005).

2. **Indirect Purchaser Plaintiffs' counsel unanimously support Plaintiffs' motion to appoint HBSS, CD, and GG as interim co-lead class counsel.**

"Private ordering"—that is, the court's review of the consensus among plaintiffs as to who should serve as interim lead and liaison class counsel—is the most common method for selecting interim class counsel and is strongly encouraged by the Manual. *See* Manual, §§ 10.22, 21.272. The purpose is to accomplish optimal and efficient representation of the proposed class members. Appointing interim counsel to act as the leadership group reflects the consensus of those whose interests are affected—a consensus that is entitled to judicial deference. *See, e.g., In re Foundry Resins Antitrust Litig.*, No. 2:04-md-1638, Order Appointing Interim Co-Lead Counsel, ECF 25, 2–3 (S.D. Ohio Dec. 10, 2004) (appointing counsel that had support of 88% of Plaintiffs). Under the private-ordering approach, counsel agree on who would best serve as

interim class counsel, and the court reviews the selection to "ensure that counsel selected is adequate to represent the class interests." Manual, § 21.272. Where, as here, experienced plaintiffs' counsel unanimously agree to the appointment of certain firms, such counsel are generally considered to be well-suited to serve as interim class counsel. *See In re Cmty. Bank of N. Virginia Mortg. Lending Practs. Litig.*, 2011 WL 4382942, at *2 (W.D. Pa. Sept. 20, 2011) ("[T]he private ordering method of selecting interim lead counsel has long been the preferred approach.") (citing *Report of the Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. 340, 416 (2002)); Manual for Complex Litigation, § 10.224 (stating that "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court" is an important factor in selecting class counsel).

Here, all current indirect purchaser plaintiffs' counsel unanimously support the proposed structure which would appoint HBSS, CD, and GG as interim co-lead class counsel. *See* Berman Decl., ¶ 2; Declaration of Charles Crueger in Support of Indirect Purchaser Plaintiffs Motion to Consolidate and to Appoint Interim Co-Lead Class Counsel ("Crueger Decl."), ¶ 2; Declaration of Daniel E. Gustafson in Support of Indirect Purchaser Plaintiffs Motion to Consolidate and to Appoint Interim Co-Lead Class Counsel ("Gustafson Decl."), ¶ 2. The Court should give significant weight to that unanimous support.

3. **Proposed co-lead counsel have expended significant time and resources to investigate Plaintiffs' claims and advance this litigation.**

Proposed co-lead counsel have already taken significant steps to identify and investigate indirect purchaser plaintiffs' claims and to advance this litigation. Berman Decl., ¶ 4; Gustafson Decl., ¶ 4. "One factor a court may consider is whether an attorney has undertaken 'the process of drafting the complaint [which] requires investigatory and analytical effort.'" *Walker*, 2011 WL 2160889, at *3 (quoting Moore's Federal Practice § 23.120[3][a] (2007)) (appointing as

interim lead counsel the firms that had filed the first class action complaints and had performed the most work in identifying and investigating potential claims).

HBSS and CD were the first to file any class action antitrust complaint on behalf of any plaintiff—direct or indirect—against Defendants in this matter. That process required a significant investment of time and resources, including investigating and researching the facts underlying the market for direct sales by Manufacturer Defendants, researching the impact of the Defendants' alleged anticompetitive behavior on class members, and investigating the mechanisms through which the Defendants coordinated their behavior. The *La Crosse* Complaint was cited in a recent United States Senate investigation; government investigations are a factor widely considered at the pleading stage of antitrust class actions.[5] And the *La Crosse* Complaint has inspired a number of related actions, many of which use language nearly identical to that in the *La Crosse* Complaint.[6]

Since then, GG filed an additional class action antitrust complaint on behalf of an additional plaintiff, the City of Onalaska, which details additional harms suffered by the city.

Proposed co-lead counsel will continue to coordinate and collaborate with plaintiffs' counsel in the direct purchaser cases and with counsel for Defendants to efficiently and effectively advance this litigation. *See* Berman Decl., ¶ 2; Crueger Decl., ¶ 2; Gustafson Decl., ¶ 2.

---

[5] *See, e.g.*, *In Re: Farm-Raised Salmon And Salmon Products Antitrust Litig.*, 2021 WL 1109128, at *14, 17 (S.D. Fla. Mar. 23, 2021) (Court considered pending government investigations among other factors); *In re Packaged Seafood Prods. Antitrust Litig.*, 2017 WL 35571, at *8 (S.D. Cal. Jan. 3, 2017) (noting "it would be improper to draw a conclusion that a pending government investigation on its own supplies sufficient factual material to survive a . . .. motion to dismiss" but nevertheless "consider[ing] the pending [government] investigation in concert with [the] [p]laintiffs' other allegations").

[6] *See Philadelphia* Complaint, ECF 1, at ¶ 1; *Augusta* Complaint, ECF 1, at ¶ 4; *Newstead Fire* Complaint, ECF 1, at ¶ 8.

### 4. Proposed co-lead counsel are sufficiently qualified and resourced to serve as interim co-lead counsel.

Class members should be represented by the counsel that will get them the best results. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii) (a court must consider "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"). HBSS, CD, and GG are all eminently qualified to serve as interim co-lead class counsel because they possess the requisite experience, specialized knowledge, and resources to skillfully and efficiently prosecute this litigation.

#### a. HBSS is qualified to serve as interim co-lead counsel.

HBSS attorneys have been investigating price fixing in the Fire Trucks market since January 2025. HBSS, together with CD, was first to file a complaint against the named Defendants for their role in conspiring to raise the price of firetrucks.

HBSS brings more antitrust lawsuits than any other firm, is in the top five in total dollars recovered, and was named the top "2024 Elite Trial Lawyer" in the antitrust category by the National Law Journal. *See* 2023 Annual Antitrust Report, UC LAW SAN FRANCISCO, CENTER FOR LITIGATION AND COURTS at 36-38 (November 2024); *The 2024 Elite Trial Lawyer Winners*, THE NAT'L L. J. (Jul. 11, 2024). The firm has recently won appellate victories in several circuit courts, in state supreme courts, and in the United States Supreme Court. *See Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69 (2021); *Greenberg v. Amazon.com, Inc.*, 3 Wash. 3d 434 (2024); *Landers v. Ford Motor Co.*, 2024 WL 489169 (9th Cir. Feb. 8, 2024); *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264 (3d Cir. 2020). The firm has successfully acted as lead counsel in several of the highest profile antitrust cases in recent history. *See In re College Athlete NIL Litig.*, No. 4:20-cv-03919-CW, ECF No. 450 (N.D. Cal.) (team at Hagens Berman acting as co-lead counsel recovered $2.87 billion dollars in past

payments and $19.4 billion in future payments); *In re Elec. Books Antitrust Litig.*, No. 11-md-02293, ECF No. 676 (S.D.N.Y.) (team at Hagens Berman acting as co-lead counsel for indirect purchaser class recovered $568 million).

With over 80 attorneys in eight offices nationwide, the firm has represented plaintiffs in a broad spectrum of complex antitrust cases. A "firm resume" detailing its antitrust accomplishments and the team's biographies is attached as Exhibit A to the Berman Declaration. The following HBSS attorneys will spearhead this *Fire Apparatus* case for HBSS: Steve W. Berman, Abigail D. Pershing, and Moses Jehng.

**Steve W. Berman**: Mr. Berman, the founder and managing partner of HBSS, has served as lead or co-lead counsel in antitrust, securities, consumer, product liability, and employment class actions and complex litigation throughout the country.

Mr. Berman is one of the foremost trial attorneys in the country, having led many complex civil actions at trial. In June 2021, Mr. Berman led the firm to a unanimous Supreme Court victory in *In re National Collegiate Athletic Association Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-02541 (N.D. Cal.), regarding the injunctive portion of the case. He also served as co-lead counsel and trial counsel during the bench trial in the Northern District of California. *Id*. Prior to the trial, Mr. Berman obtained a $200 million settlement for the class. *Id*. Then in June 2025, the largest antitrust settlement in history was reached in *In re College Athlete NIL Litig.*, No. 4:20-cv-03919-CW, Dkt. No. 450 (N.D. Cal.), that revolutionized college sports and promised $2.87 billion dollars in past payments and $19.4 billion in future payments to class members.

Mr. Berman was also the lead trial lawyer in *In re Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.), and lead counsel in *New England Carpenters*

*Health Benefits Fund v. First DataBank, Inc.*, No. 05-cv-11148 (D. Mass.), achieving a $350 million settlement eleven days before trial on behalf of a nationwide class. Mr. Berman was also lead counsel in *In re Charles Schwab Corp. Sec. Litig.*, No. 08-cv-01510 (N.D. Cal.), a securities class action that settled on the eve of trial for $235 million, a 42.5 percent recovery for the federal class and 80 percent recovery for the California class. He also represented consumers in the landmark case *In re Elec. Books Antitrust Litig.*, No. 11-md-02293 (S.D.N.Y.) (recovered $568 million). Berman Decl., Ex. A at 35.

Perhaps most notable is Mr. Berman's role as a Special Assistant Attorney General for the states of Illinois, Washington, Arizona, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark *Tobacco* Litigation. Berman Decl., Ex. A at 24. That case resulted in the largest settlement in history. *See* Berman Decl., Ex. A at 8, 30.

**Abigail D. Pershing**: Ms. Pershing is a 2020 graduate of Yale Law School. She has worked on teams that represent class members in several large antitrust cases, including *In re Pork Antitrust Litig.*, No. 18-cv-01776 (D. Minn.) (over $200 million recovered to date for indirect purchasers) and *Jien v. Perdue Farms, Inc.*, No. 19-cv-2521 (D. Md.) (over $398 million recovered to date on behalf of poultry workers). Prior to joining HBSS, Ms. Pershing clerked for Judges Keller and Pavli of the European Court of Human Rights.

**Moses I. Jehng**: Mr. Jehng is a 2025 graduate of Harvard Law School. At HBSS, he is part of teams in several antitrust matters, including *In re Yardi Revenue Management Antitrust Litig.*, No. 2:23-cv-01391-RSL (W.D. Wash.) and *In re Frozen Potato Products Antitrust Litig.*, No. 24-cv-11801 (N.D. Ill.). Prior to joining HBSS, Mr. Jehng interned at the United States Attorney's Office in the District of Hawai'i, the Oregon Law Center, and a nationally recognized

civil rights law firm. Mr. Jehng was also an Executive Managing Editor of the Harvard Civil Rights – Civil Liberties Law Review.

### b. CD is qualified to serve as interim co-lead counsel.

CD is a litigation boutique specializing in large, complex cases on behalf of government entities and classes nationwide and has taken on the role as lead counsel in some of the most significant and high-profile litigation in the country. The firm represents over one hundred county government entities across eighteen states in litigation against the manufacturers and distributors of prescription opioids, and in *In Re: Nat'l Prescription Opiate Litig.*, 17-md-2804 (N.D. Ohio 2017), was appointed to the sixteen-member Plaintiffs' Executive Committee, where it helped steer the multi-district litigation through discovery and trial and secure billions of dollars in settlements for its clients. The firm currently represents a North Carolina government entity in its lawsuit against the manufacturers of PFAS forever chemicals for groundwater contamination, *see Cumberland County v. The Chemours Co.*, 22 CVS 1569 (N.C. Sup. Ct.), and was elected to the Plaintiffs' Executive Committee leading the nationwide multi-district litigation of government entities against manufacturers of AFFF fire-fighting foam, which has allegedly contaminated groundwater across the United States, *see In Re: Aqueous Film-Forming Foams Prods. Liability Litig.*, 18-mn-2873 (D.S.C. 2018).

Both federal and state courts have also regularly appointed CD to serve as lead counsel in significant class actions throughout the nation, and the firm has experience trying a certified class action on the merits. *See, e.g.*, *Canchola, et al. v. Allstate Ins. Co.*, 8:23-cv-00734 (C.D. Cal. 2023); *Parry v. Farmers Ins. Exch.*, BC683856 (Sup. Ct. Cal. 2017); and *Jammal v. Am. Family*, 13-CV-437 (N.D. Ohio 2013).

**<u>Erin K. Dickinson</u>**: Ms. Dickinson is an owner and founding partner of CD, who specializes in class action and mass tort litigation and has over 25 years of experience litigating

large and complex cases. Ms. Dickinson devotes a large portion of her practice to representing government entity clients. As a result of that experience, in 2017, Ms. Dickinson became one of 16 attorneys selected to the Plaintiffs' Executive Committee appointed to lead the *In Re: National Prescription Opiate Litig.*, 17-md-2804 (N.D. Ohio 2017) multi-district litigation that involved thousands of government entities and dozens of large pharmaceutical defendants. Ms. Dickinson took a lead role in litigating that case for the past seven years, which has been referred to as one of the "largest and most complex cases" in history and resulted in settlements that exceeded $50 billion to thousands of government entities around the United States. Additionally, Ms. Dickinson has served as lead trial counsel for government entities experiencing PFAS contamination and was appointed to the Plaintiffs Executive Committee for the *In Re: Aqueous Film-Forming Foams Prods. Liability Litig.*, 18-mn-2873 (D.S.C. 2018) multi-district litigation. Ms. Dickinson has been routinely appointed as lead class counsel in cases including pharmaceutical products, commercial products, ERISA matters and complex insurance cases where amounts at issue routinely exceed $1 billion. Prior to forming CD, Ms. Dickinson worked for a large law firm focusing on complex commercial and intellectual property litigation. She is an experienced trial attorney, who has served as lead trial counsel resulting in favorable jury verdicts for her clients and has represented clients in state and federal courts throughout the United States.

**Charles J. Crueger:** Mr. Crueger is an owner and founding partner of CD, with nearly thirty years of trial and appellate experience across a wide range of complex commercial and intellectual property matters. Mr. Crueger began his career as a trial attorney at the United States Department of Justice before joining a large firm in Wisconsin and ultimately founded CD to focus on high-stakes, complex litigation. His commercial litigation experience spans commercial

conflicts, fiduciary duty and other claims involving the internal affairs of companies, antitrust matters, public nuisance and environmental matters, director and officer lawsuits, misclassification cases, ERISA actions, complex insurance disputes, and federal tax litigation. He has served as lead trial counsel in numerous cases with liabilities exceeding $1 billion and has represented both plaintiffs and defendants. Mr. Crueger has tried cases to verdict in both bench and jury trials and has represented clients in state and federal courts throughout the country, including U.S. Court of Appeals for the Third, Sixth, Seventh, Ninth, and Federal Circuits, the Wisconsin Court of Appeals, and the Wisconsin Supreme Court. Prior to law school, Mr. Crueger served in the U.S. Army with an airborne artillery unit in the 18th Airborne Corps in Fort Bragg, North Carolina.

### c. GG is qualified to serve as interim co-lead counsel.

GG first began investigating potential price fixing in the Fire Trucks market in February 2025. Since that day, GG has expended significant time and effort thoroughly investigating the claims in this action. These efforts included extensive factual, legal, expert work and investigation by the firm. GG reviewed dozens of public earnings calls and presentations, investigated publicly posted complaints on the internet regarding pricing and delivery times for Fire Trucks, met with antitrust economic experts, read through congressional testimony regarding the Fire Truck industry, and more as it prepared the City of Onalaska's complaint.

GG's practice is focused almost exclusively on plaintiff-side complex class action cases, with an emphasis on antitrust litigation. Since its founding in 2003, GG has prevailed against some of the nation's largest companies and law firms, obtaining billions of dollars and critical injunctive relief for millions of class members consisting of both consumers and businesses. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill.) (appointed co-lead counsel for indirect purchaser food preparer class, resulting in settlements of over $145); *In re Pork Antitrust*

*Litig.*, No. 0:18-cv-01776 (D. Minn.) (appointed co-lead counsel with HBSS for consumer class, resulting in settlements of over $200 million to date); *In re Cattle and Beef Antitrust Litig.*, No. 0:22-cv-3031 (D. Minn.) (appointed co-lead counsel for direct purchaser class, resulting in settlements of over $50 million to date); *In re Syngenta Litig.*, No: 27-cv-15-3785 (Minn. Dist. Ct.) (MDL No. 2591) (appointed co-lead counsel in state court action representing a class of Minnesota corn farmers and one of four counsel selected as settlement counsel, resulting in a settlement of $1.51 billion); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 1:08-cv-00042 (E.D.N.Y.) (appointed co-lead counsel in international antitrust class action, resulting in settlements of over $400 million); *In re DRAM Antitrust Litig.*, MDL No. 1486 (N.D. Cal. and multiple state court actions) (appointed co-lead counsel for indirect purchasers, resulting in settlements of $310 million); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal.) (significant role in obtaining settlements of $1.2 billion).

GG has twenty-three attorneys who each bring unique perspectives to vigorously represent their clients and class members. *See* Gustafson Decl., Ex. A. Not only is diversity within the firm important to GG, but so too is being an advocate for the underrepresented. GG was one of the firms that helped found the Minnesota *Pro Se* Project, pairing indigent federal litigants with attorneys. *See id*. The firm was honored with the "Distinguished Pro Bono Service Award" for "rising to the Court's challenge of bringing the idea of the *Pro Se* Project to fruition and nurturing the Project into its current form." *Id*. The following GG attorneys will spearhead this *Fire Apparatus* case for GG: Daniel E. Gustafson, Daniel C. Hedlund, Joshua J. Rissman, and Gabrielle M. Kolb.

**Daniel E. Gustafson**: Dan Gustafson is a founding member and senior partner of GG. Mr. Gustafson was selected as one of *Minnesota Lawyer*'s Attorneys of the Year for 2010, 2011

and 2017.  *See* Gustafson Decl., Ex A. He was also ranked in the Top 100 Minnesota *Super Lawyers* from 2011–2012 and 2014–2024.  *Id*.  In addition, Mr. Gustafson received the Richard S. Arnold Award for Distinguished Service in 2021 and was presented with the *Pro Se* Project Lifetime Achievement Award in 2019.  *Id*.  As a nationally recognized leader in antitrust law, Mr. Gustafson has testified before the House Committee on the Judiciary, Subcommittee on Intellectual Property, Competition and the Internet regarding the proposed merger between Express Scripts and Medco and before the United States Congressional Commission on Antitrust Modernization.  *See id*.

Mr. Gustafson has led or been appointed lead counsel or a member of an executive committee in several antitrust class actions, MDLs and other consumer class actions.  For example, in *In re Syngenta Litig.*, No. 27-cv-15-3785 (MDL No. 2591) (Minn. Dist. Ct.), Mr. Gustafson was one of four settlement counsel who obtained a $1.51 billion settlement on behalf of a class of corn farmers.  Gustafson Decl., Ex A.   Mr. Gustafson was also sole lead counsel in the *In re Medtronic, Inc.*, *Sprint Fidelis Leads Products Liability Litig.*, MDL No. 1905 (D. Minn.), where he negotiated a $268 million settlement on behalf of Plaintiffs.  *See* Gustafson Decl., Ex A. Mr. Gustafson is currently Co-Lead Counsel in the *Beef* and *Pork* antitrust actions pending in this District.  *See* Nos. 0:22-md-03031 (*Beef*) and 0:18-cv-01776 (*Pork*).  *See also* Gustafson Decl., Ex A.

**Daniel C. Hedlund**: Dan Hedlund is a senior partner and co-chair of GG's Antitrust Department.  *See* Gustafson Decl., Ex A. He has practiced in the areas of antitrust and consumer protection for over 25 years, seeking injunctive and monetary relief for classes of small businesses and consumers.  *Id*. Currently, he is Co-Lead Counsel in *In re Deere & Co. Repair Servs. Antitrust Litig.*, MDL No. 3030 (N.D. Ill.); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill.) (indirect purchaser food preparer class, resulting in settlements of over

$145 million), and *In re Passenger Vehicle Replacement Tires Antitrust Litig.* MDL No. 3107 (N.D. Ohio) (Automobile Dealership Plaintiffs). *See* Gustafson Decl., Ex A.

Mr. Hedlund played a key role in several other cases including: *Bhatia v. 3M Co.*, No. 16-cv-1304 (D. Minn) (co-lead counsel recovered $32.5 million for dentist class members); *Kleen Prods. vs. Int'l Paper*, No. 10-cv-5711 (N.D. Ill.) (class action alleging price fixing of containerboard and producing settlements of over $300 million); and *In Re Dealer Mgmt. Sys. Antitrust Litig.*, MDL No. 2817 (N.D. Ill.) (member of Steering Committee where settlements totaled $129.5 million). *See* Gustafson Decl., Ex A.

In addition, Mr. Hedlund recently served as President for the Minnesota Chapter of the Federal Bar Association ("FBA") and has served as the FBA's Co-Vice President for the Eighth Circuit. *Id*. He is a past Chairman for the Antitrust Section of the Minnesota State Bar Association and a past President of the Committee to Support Antitrust Laws. *Id*. In addition, Mr. Hedlund has testified multiple times before the Minnesota Legislature on competition law, and before the Federal Rules Committee. He has consistently been designated as a Minnesota "*Super Lawyer*" in the field of antitrust law (including several rankings in the Top 100) and has been recognized by the lawyer ranking service Chambers and Partners as a top antitrust lawyer. *See id*. He is a recipient of the Minnesota District Court's Distinguished ProBono Service Award in 2011. *Id.*

**Joshua J. Rissman**: Joshua Rissman is a partner at GG, primarily focused on antitrust and civil rights matters. *See* Gustafson Decl., Ex A. Mr. Rissman has played an integral role on several antitrust matters, including *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill.); *In re Cattle and Beef Antitrust Litig.*, No. 0:22-cv-3031 (D. Minn.); *In re Pork Antitrust Litig.*, No. 0:18-cv-01776 (D. Minn.); and *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 1:08-cv-00042 (E.D.N.Y.) Mr. Rissman has also been recognized by Law

& Politics magazine as a "Super Lawyer Rising Star" from 2014-2020 and a "Super Lawyer" from 2021-2025 in Antitrust Litigation. Gustafson Decl., Ex A. He is also the treasurer of the Minnesota State Bar Association Antitrust Council. *See id*.

In addition to antitrust litigation, Mr. Rissman has brought several pieces of important constitutional litigation involving police and corrections brutality. Mr. Rissman achieved a historic injunction with the City of Minneapolis and State Patrol on behalf of a class of protestors who were unlawfully subjected to "less-lethal munitions" during the George Floyd protest. *Samaha v. City of Minneapolis*, No. 20-cv-01715 (D. Minn.). Mr. Rissman defeated qualified immunity and obtained a favorable settlement in a section 1983 constitutional rights action brought on behalf of the family of a man killed by Brooklyn Center police officers in 2015. *Khottavongsa v. City of Brooklyn Center*, No. 16-cv-1031 (D. Minn.). Mr. Rissman represented a former juvenile detainee alleging sexual abuse at the Minnesota Correctional Facility—Red Wing and alleging the warden and other prison officials knowingly failed to protect him. *Doe v. Hanson*, No. 25-cv-19-2297 (Henn. Dist. Ct.).

**Gabrielle M. Kolb**: Gabrielle M. Kolb is a talented associate attorney at GG practicing in a variety of class action areas, including antitrust. *See* Gustafson Decl., Ex A. Ms. Kolb currently serves in significant capacities on multiple antitrust class actions including *In re Pork Antitrust Litig.*, No. 0:18-cv-01776 (D. Minn) and *In re Granulated Sugar Antitrust Litig.*, No. 24-md-0311 (D. Minn). Ms. Kolb began investing potential price fixing in the Fire Trucks market in February 2025 and has been working on this litigation since. Before joining GG, Ms. Kolb clerked for Chief Justice Natalie E. Hudson of the Minnesota Supreme Court. Gustafson Decl., Ex A.

**5. Proposed co-lead counsel have the resources necessary to effectively prosecute this litigation.**

HBSS stands ready to dedicate the resources necessary to represent and protect the interests of the putative indirect purchaser plaintiff class through rigorous motion practice, discovery, class certification, and trial. Berman Decl., ¶ 6.

**6. Proposed co-lead counsel will continue to work cooperatively with all counsel.**

As noted above, the proposed organizational structure is supported by all current indirect purchaser plaintiffs who have filed claims in this district and their counsel. *See* Berman Decl., ¶ 2; Crueger Decl., ¶ 2; Gustafson Decl., ¶ 2. As reflected by its early success in private ordering, proposed interim co-lead class counsel HBSS also has demonstrated an effective management style, which will encourage and efficiently deploy the participation of the other firms in this litigation. *See Baker v. Saint-Gobain Performance Plastics Corp.*, 2016 WL 4028974, at *4 (N.D.N.Y. July 27, 2016) (citing Manual for Complex Litigation, § 10.224) (interim counsel's "ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court" are important considerations). In carrying out this endeavor, proposed interim co-lead class counsel will make every effort to avoid waste and duplication. HBSS's ability to work in a collaborative fashion with other firms is demonstrated by their efforts to date in this case, bringing the first action in this case and coordinating with counsel with each new direct and indirect case, and their decades of experience in antitrust class actions.

## IV.     CONCLUSION

Plaintiff City of La Crosse respectfully request that the Court consolidate the two Related Matters and appoint Hagens Berman Sobol Shapiro LLP, Crueger Dickinson LLC, and Gustafson Gluek PLLC as interim co-lead class counsel to represent the putative class of indirect purchaser plaintiffs in this litigation.

Dated: December 4, 2025

Respectfully Submitted,

By: */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
Moses I. Jehng (*pro hac vice* to be filed)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
        moses.jehng@hbsslaw.com

Abigail D. Pershing (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Email: abigailp@hbsslaw.com

s/ *Charles Crueger*
Erin Dickinson (Bar #1036707)
Charles Crueger (Bar #1029825)
**CRUEGER DICKINSON LLC**
4532 North Oakland Avenue
Milwaukee, WI 53211
Telephone: (414) 210-3868
Email: ekd@cruegerdickinson.com
Email: cjc@cruegerdickinson.com

s/ *Daniel E. Gustafson*
Daniel E. Gustafson (*pro hac vice* to be filed)
Daniel C. Hedlund (*pro hac vice* to be filed)
Joshua J. Rissman (*pro hac vice* to be filed)
Gabrielle M. Kolb (*pro hac vice* to be filed)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 So. Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Fax: (612) 339-6622
Email: dgustafson@gustafsongluek.com
Email: dhedlund@gustafsongluek.com
Email: jrissman@gustafsongluek.com
Email: gkolb@gustafsongluek.com