# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| *In re: Indirect Purchaser Fire Apparatus Antitrust Litigation* | Case No. 1:25-cv-01252 <br><br> Hon. Byron B. Conway |
| CITY OF ARCADIA, individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br> v. <br><br> American Industrial Partners, LLC, *et al.*, <br><br>       Defendants. | Case No. 1:25-cv-02005 <br><br> Hon. Byron B. Conway |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CITY OF ARCADIA'S MOTION TO PARTIALLY MODIFY THE COURT'S APPOINTMENT OF CLASS COUNSEL IN THE IPP ACTIONS**

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION……………………………………………………………………..1

II. RELEVANT BACKGROUND…………………………………………………………..2

  A. The IPP Actions and the Court's Consolidation and Leadership
   Order…………………………………………………………………………………2

  B. The City of Arcadia and Other Municipalities and Political Subdivisions………..3

III. LEGAL STANDARD ......................................................................................... 5

IV. ARGUMENT ..................................................................................................... 6

  A. CPM's Proposed Inclusion in the Leadership Structure for the IPP Actions
   Satisfies All Rule 23(g) Factors…………………………………………………...6

    1. CPM Has Extensive Experience in Complex Antitrust Actions…………..6
    2. CPM Has Performed Extensive Work Thus Far…………………………11
    3. CPM Will Commit the Resources Necessary to Prosecute This Action
     Efficiently……………………………………………………………….......12
    4. Additional Factors Support Inclusion of CPM…………………………..13

V. CONCLUSION ................................................................................................ 14

i

**<u>TABLE OF AUTHORITIES</u>**

**Page No.**

**Cases**

*In re Automotive Parts Antitrust Litigation*,
 No. 2:12-md-02311 (E.D. Mich.) ........................................................................................7

*Baker v. Saint-Gobain Performance Plastics Corp.*,
 No. 116-cv-0220, 2016 WL 4028974 (N.D.N.Y. July 27, 2016) .......................................6

*In re Broiler Chicken Antitrust Litig.*,
 No. 1:16-cv-08637 (N.D. Ill.) ............................................................................................7

*In re Cattle and Beef Antitrust Litigation*,
 No. 0:22-md-03031 (D. Minn.)...........................................................................................7

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ............................................................................................12

*In re Deere & Company Repair Services Antitrust Litigation*,
 No. 3:22-cv-50188 (N.D. Ill.) ............................................................................................7

*In re Fairlife Milk Prod. Mktg. & Sales Pracs. Litig.*,
 No. 19-cv-3924, MDL No. 2909, 2020 WL 362788 (N.D. Ill. Jan. 22,
 2020) .................................................................................................................................13

*In re FICO Antitrust Litig. Related Cases*,
 No. 1:20-CV-02114, 2021 WL 4478042 (N.D. Ill. Sept. 30, 2021) .................................13

*In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*,
 No. 1:21-cv-269, 2022 WL 1494378 (E.D. Va. May 10, 2022).......................................13

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
 No. 12-2358-SLR, 2012 WL 5833604 (D. Del. Nov. 16, 2012) ......................................12

*In re Lithium Batteries Antitrust Litigation*,
 No. 13-md-02420 (N.D. Cal.).............................................................................................7

*Lowery v. Spotify USA Inc.*,
 No. CV 15-09929-BRO, 2016 WL 6818756 (C.D. Cal. May 23, 2016)...........................12

*In re Municipal Derivatives Antitrust Litig.*,
 252 F.R.D. 184 (S.D.N.Y. 2008) .....................................................................................11

*Precision Assocs., Inc. v. Panalpina World Transportation (Holding) Ltd.*,
 No. 1:08-cv-00042 (E.D.N.Y.) ...........................................................................................7

*In re Resistors Antitrust Litigation*,
  No. 3:15-cv-03820 (N.D. Cal.) ........................................................................7

*Smith v. State Farm Mut. Auto Ins. Co.*,
  301 F.R.D. 284 (N.D. Ill. 2014)......................................................................5

*Walker v. Discover Fin. Servs.*,
  No. 10-CV-6994, 2011 WL 2160889 (N.D. Ill. May 26, 2011)......................11

**Other Authorities**

Bolch Judicial Institute, Duke Law School,
  *Guidelines and Best Practices for Large and Mass-Tort MDLs* 38
  (2nd ed. Sept. 2018) ........................................................................................6

Fed. R. Civ. P. 23 ............................................................................... *passim*

Fed. R. Civ. P. 42 ...........................................................................................3

Federal Courtroom Evidence, California Courtroom Evidence ......................11

Jaime Dodge, "Facilitative Judging: Organizational Design in Mass-Multidistrict
  Litig.", 64 Emory L.J. 329, 360 (2014) ........................................................12

## I.     INTRODUCTION

Plaintiff City of Arcadia, an indirect purchaser of fire apparatus and a putative member of the indirect purchaser class, respectfully moves to partially modify the Court's appointment of leadership for class counsel in the Indirect Purchaser Plaintiff ("IPP") actions. The City of Arcadia's counsel, Cotchett, Pitre & McCarthy, LLP ("CPM"), seek inclusion as part of the leadership structure in the above-captioned matter, *In re: Indirect Purchaser Fire Apparatus Antitrust Litigation*, No. 1:25-cv-01252 (the "Action").

This motion is fully consistent with — and expressly contemplated by — the Court's December 29, 2025 Order consolidating the IPP actions and appointing Interim Co-Lead Class Counsel pursuant to Federal Rule of Civil Procedure ("Rule") 23(g). In that Order, the Court recognized its continuing authority to modify the leadership structure and stated that it "may add or replace the appointed firms . . . where circumstances warrant." Order, *In re: Indirect Purchaser Fire Apparatus Antitrust Litigation*, No. 1:25-cv-01252, (Dec. 29, 2025) Dkt. 49 at 4. Plaintiff City of Arcadia and its retained outside counsel, CPM, seek appointment squarely within this framework.

Plaintiff City of Arcadia does not challenge the Court's appointment of Interim Co-Lead Class Counsel, nor does it contend that the existing leadership structure is inadequate. To the contrary, CPM has worked successfully in multiple cases as co-lead class counsel with both the Gustafson Gluek and Hagens Berman firms. *See infra* § IV.A.1. Instead, Plaintiff City of Arcadia respectfully submits that formally including CPM will promote the efficient, coordinated, and vigorous prosecution of the claims IPPs have made — particularly given the critical public safety interests implicated by this litigation and the fact that there are no current California-based class representative to invoke that state's antitrust and consumer protection laws.

1

Fire apparatus are not ordinary goods. For municipalities like the City of Arcadia, which is located in a county (Los Angeles) and state (California) that have experienced unprecedented and catastrophic wildfire destruction and escalating fire risk, access to competitively priced, reliable fire apparatus is essential to public safety. California cities, fire districts, and other political subdivisions operate on constrained public budgets while confronting increasingly frequent and severe fire events. Alleged anticompetitive conduct that inflates the prices of fire apparatus directly impacts public entities' ability to protect lives, property, and critical infrastructure.

The City of Arcadia's participation underscores the importance of ensuring that the interests of California public entities and political subdivisions are adequately represented in the leadership of this case. CPM has extensive experience representing public entities and indirect purchasers in complex antitrust actions. As this application demonstrates, courts routinely appoint CPM to leadership roles.

At this early, pre-certification stage, inclusion of CPM will strengthen IPPs' ability to investigate, plead, and prosecute their claims efficiently, while ensuring that the perspective of municipalities facing pervasive fire-suppression and wildfire-response challenges are fully represented.

For these reasons, and for the reasons set forth below, Plaintiff City of Arcadia respectfully requests that the Court include CPM in the leadership structure for the IPP actions.

## II.    RELEVANT BACKGROUND

### A.    The IPP Actions and the Court's Consolidation and Leadership Order

This Action consists of multiple related antitrust class actions brought by indirect purchasers of fire apparatus alleging that Defendants engaged in anticompetitive conduct that inflated the prices of fire apparatus sold in the United States. Declaration of Elizabeth T. Castillo

2

in Support of Plaintiff City of Arcadia's Motion to Partially Modify the Court's Appointment of Class Counsel in the IPP Actions ("Castillo Decl.") ¶ 3. The IPP class includes municipalities, fire districts, and other public entities that are political subdivisions of the state that purchased fire apparatus indirectly through distributors or other intermediaries. *Id*.

Plaintiff City of Arcadia filed a class action complaint on December 22, 2025. *See Compl., City of Arcadia v. American Industrial Partners, LLC, et al.*, Dkt. 1 ("Arcadia Compl."). A week later, on December 29, 2025, the Court granted the existing IPPs' motion to consolidate the related IPP actions pursuant to Rule 42(a) and consolidated them under Case No. 1:25-cv-01252, styled *In re: Indirect Purchaser Fire Apparatus Antitrust Litigation*. *See* Order, *In re: Indirect Purchaser Fire Apparatus Antitrust Litigation*, No. 1:25-cv-01252 (Dec. 29, 2025) Dkt. 49.

In the same Order, the Court appointed three firms as Interim Co-Lead Class Counsel for the putative indirect purchaser class pursuant to Rule 23(g). *Id*. at 3-4. The Court emphasized that the appointments were interim. *Id*. at 3. The Court further expressly retained authority to modify the leadership structure. *Id*. at 4.

### B.       The City of Arcadia and Other Municipalities and Political Subdivisions

Plaintiff City of Arcadia is a municipal corporation located in Los Angeles County, California. *See* Arcadia Compl. ¶¶ 12-17. Like many California cities, Arcadia relies on fire apparatus to provide essential emergency services, including fire suppression, wildfire response, and public safety operations. *Id*. Arcadia purchased fire apparatus as an indirect purchaser during the relevant period and is a putative member of the proposed indirect purchaser class in this Action. *Id*. ¶¶ 11, 12.

Fire apparatus are critical public-safety assets for municipalities. *Id*. ¶ 17. In California, cities and fire districts operate in an environment characterized by heightened wildfire risk,

3

increasing frequency and severity of fire events, and constrained public budgets.[1] Municipal purchasers must balance the need for reliable, modern fire apparatus against fiscal limitations imposed by reduced budgets and other competing public expenditures.

Alleged anticompetitive conduct that inflates the price of fire apparatus directly affects municipalities' ability to allocate limited resources to fire prevention, emergency response, and infrastructure. Arcadia Compl. ¶ 6. As an IPP, the City of Arcadia alleges that it paid supracompetitive prices for fire apparatus because of Defendants' conduct, resulting in harm shared by similarly situated municipalities and public entities across California and the proposed class. *Id*. *passim*. Accordingly, the City of Arcadia has brought statutory claims under California laws. *Id*. ¶¶ 179, 180. At this juncture, it is the only class representative in this litigation that is California-based. Castillo Decl. ¶ 4.

The City of Arcadia's participation in this Action reflects the interests of California municipalities and other public entities that depend on competitively priced fire apparatus to fulfill core public safety responsibilities. *Id*. ¶ 5. Ensuring that these interests are adequately represented as the litigation proceeds is consistent with the objectives of Rule 23(g) and the Court's oversight of interim class counsel appointments. *Id*.

In addition to representing the City of Arcadia, CPM intends to be retained by additional municipalities and political subdivisions to cover as many of the states that permit indirect

---

[1] For example, in San Francisco, a majority of the city's fire fleet is more than 15 years old, even though a front line piece of fire apparatus is recommended to be no more than 10 years old; the budget constraints are so severe, city legislation was enacted allowing private donor funding to be used for aging fire trucks, engines, and ambulances. *See* https://abc7news.com/post/san-francisco-will-allow-private-funding-help-pay-new-fire-department-fleet/16640557/. Likewise, an additional 0.5% sales tax is being proposed in Los Angeles to help fund the fire department, as it currently operates "with the same number of firefighters as in the 1960s, six fewer stations, and five times the call load." https://laist.com/news/politics/los-angeles-shoppers-new-sales-tax-city-fire-department

4

purchaser recovery as possible. *Id*. ¶ 6. In doing so, CPM is further ensuring that the interests of public entities purchasing fire apparatus are adequately and efficiently represented as this litigation proceeds. *Id*.

## III.    LEGAL STANDARD

CPM's inclusion in the current interim IPP leadership structure is fully warranted and satisfies Fed. R. Civ. P. 23(g)(3). The Court has the discretion to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual Complex Litigation, Fourth, Judicial Center (2016) (the "Manual") § 21.11; *Smith v. State Farm Mut. Auto Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014).

Rule 23(g)(1)(A) identifies four factors to be considered by courts when selecting interim class counsel:

(i)     The work counsel has done in identifying or investigating potential claims in the action;

(ii)    Counsel's experience in handling class action, other complex litigation, and the types of claims asserted in the action;

(iii)   Counsel's knowledge of the applicable law; and

(iv)    The resources that counsel will commit to representing the class.

Rule 23(g)(1)(B) further provides that courts may "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." "The most important [factor] is achieving efficiency and economy without jeopardizing fairness to the parties." Manual § 10.221.

Other factors often considered by courts include the ability of counsel to work professionally and civilly; to fairly represent diverse interests; and their ability "to command the

respect of their colleagues and work cooperatively with opposing counsel and the court." *Baker v. Saint-Gobain Performance Plastics Corp.*, No. 116-cv-0220 (LEK/DJS), 2016 WL 4028974, at *4 (N.D.N.Y. July 27, 2016) (citing Manual § 10.224). The purpose of the Court's review is to ensure that counsel appointed to leading roles are qualified and responsible and that they will fairly and adequately represent all the parties on their side. *See* Manual § 21.22; *see also* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 38 (2nd ed. Sept. 2018).

## IV.    ARGUMENT

### A.    CPM's Proposed Inclusion in the Leadership Structure for the IPP Actions Satisfies All Rule 23(g) Factors

CPM's proposed inclusion as Interim Co-Lead Class Counsel in the IPP actions satisfies all the requirements for appointment by the Court as outlined in Fed. R. Civ. P. 23(g). As illustrated in Exhibit A to the Declaration of Elizabeth T. Castillo, CPM has extensive experience in complex antitrust class actions and has secured significant recoveries for harmed consumers and other victims of antitrust violations. CPM has successfully litigated cases involving price-fixing and anticompetitive conduct, demonstrating the firm's ability to effectively represent the putative indirect purchaser class. Additionally, CPM possesses the necessary resources to prosecute this litigation efficiently and vigorously, ensuring optimal representation of the class.

### 1.    CPM Has Extensive Experience in Complex Antitrust Actions

CPM has the necessary experience in leading complex cases and knowledge of the law to effectively prosecute this action. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii)–(iii). As demonstrated below, CPM, and their attorneys, are highly qualified and possess unique experience and knowledge that will prove invaluable in litigating this case.

Additionally, as noted at the outset, CPM has extensive experience working collaboratively with two of the Court-appointed Interim Co-Lead Class Counsel, Gustafson Gluek PLLC and Hagens Berman Sobol Shapiro LLP, in complex antitrust and class action litigation. In those matters, CPM worked closely with counsel from Gustafson Gluek and Hagens Berman in various leadership structures involving overlapping responsibilities for case strategy, discovery, motion practice, and settlement efforts. *See, e.g.*, *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311 (E.D. Mich.) (CPM serving as co-lead counsel for indirect purchasers with Gustafson Gluek and Hagens Berman on the Plaintiffs' Steering Committee); *In re Deere & Company Repair Services Antitrust Litigation*, No. 3:22-cv-50188 (N.D. Ill.) (CPM serving as co-lead counsel with Gustafson Gluek); *In re Lithium Batteries Antitrust Litigation*, No. 13-md-02420 (N.D. Cal.) (CPM serving as lead counsel for the IPPs with Hagens Berman); *In re Cattle and Beef Antitrust Litigation*, No. 0:22-md-03031 (D. Minn.) (CPM serving as co-lead counsel for the direct purchasers along with Gustafson Gluek); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill.) (serving as co-lead counsel along with Gustafson Gluek for indirect purchasers); *In re Resistors Antitrust Litigation*, No. 3:15-cv-03820 (N.D. Cal.) (CPM serving as lead counsel for the indirect purchasers while Hagens Berman served as lead counsel for the direct purchasers), *Precision Assocs., Inc. v. Panalpina World Transportation (Holding) Ltd.*, No. 1:08-cv-00042 (E.D.N.Y.) (CPM serving as co-lead counsel in international price fixing case along with Gustafson Gluek).

That experience demonstrates CPM's ability to seamlessly integrate into the existing interim leadership structure, to work cooperatively with current Interim Co-Lead Class Counsel, and to advance the putative indirect purchaser class claims efficiently without duplication of effort or disruption.

<u>**Cotchett, Pitre & McCarthy, LLP**</u>

CPM has often been described as a "powerhouse" and has been one of the nation's leading plaintiffs' law firms practicing complex litigation for the last 50 years. *See* Ex. 1 (CPM Antitrust Resume). CPM has built a practice and reputation, nationwide in scope, for prosecuting socially just actions. *Id.* With offices in the San Francisco Bay Area, Los Angeles Area, Seattle, and New York, CPM has substantial resources in-house to devote to cases of national magnitude, such as this litigation. Those resources include over 45 attorneys, with vast experience in class actions, multidistrict litigation, and antitrust litigation, supported by more than fifty professionals, including paralegals, legal assistants, and investigators with extensive multidistrict litigation and class action experience. *Id.*

CPM has been appointed by courts across the country to serve in leadership roles in the most important and complex antitrust litigation. In doing so, CPM has obtained outstanding results. These cases include but are not limited to:

- ***In re Automotive Parts Antitrust Litig*., No. 2:12-md-02311 (E.D. Mich.)**: appointed and served as co-lead counsel for indirect purchaser plaintiffs in price-fixing case, resulting in over $1.2 billion in settlements. This case is considered one of the largest—if not the largest—indirect purchaser cases in U.S. history.

- ***In re Broiler Chicken Antitrust Litig*., No. 1:16-cv-08637 (N.D. Ill.)**: appointed and served as co-lead counsel, along with Gustafson Gluek, for indirect purchasers in price-fixing case resulting in over $145 million in settlements on behalf of the commercial indirect class.

- ***Precision Assocs., Inc. v. Panalpina World Transportation (Holding) Ltd*., No. 1:08-cv-00042 (E.D.N.Y.)**: appointed and served as co-lead counsel in international price fixing case, along with Gustafson Gluek, resulting in $450 million in settlements.

- ***In re Transpacific Passenger Air Transportation Antitrust Litig*., No. 3:07-cv-05634 (N.D. Cal.)**: appointed and served as co-lead counsel in price fixing case, resulting in settlements of over $148 million on behalf of airline consumers.

- ***In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 (N.D. Cal.)**: appointed and served as co-lead counsel in price-fixing case, along with Hagens Berman, resulting in $113 million in settlements on behalf of the indirect purchasers.

- ***In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264 (N.D. Cal.)**: serving as sole lead counsel and recovering over $80 million for indirect purchasers.

- ***In re Resistors Antitrust Litig.*, No. 3:15-cv-03820 (N.D. Cal.)**: serving as sole lead counsel and recovering over $30 million for indirect purchasers.

- ***In re Telescopes Antitrust Litigation*, No. 5:20-cv-03639 (N.D. Cal.)**: serving as co-lead counsel against telescope manufacturers recovering $32 million for indirect purchasers.

- ***In re Domestic Airline Travel Antitrust Litig.*, No. 1:15-mc-01404 (D.D.C.)**: serving as lead counsel in ongoing case where $60 million has been recovered on behalf of airline consumers.

The individual lawyers at CPM who will be working on the case include, but are not limited to: Adam J. Zapala, Elizabeth T. Castillo, Christopher Jeu, Christian S. Ruano, and Lauren Devens. *See* Ex. 1. This team will be further assisted in this litigation by Senior Managing Partner of the firm, Joseph Cotchett. *Id.*

**Mr. Zapala** is the lead attorney in CPM's antitrust and unfair business practices group. *Id*. Mr. Zapala has extensive experience litigating highly complex antitrust, consumer fraud, and other actions before federal district courts across the country. *Id.* He has been repeatedly recognized by the *Daily* Journal as one of the top 20 antitrust attorneys in California, most recently as one of its Top Antitrust Lawyers of 2025, and has served as lead or primary counsel in the prosecution of numerous highly complex antitrust actions, including: *Auto Parts*, *Capacitors*, *Resistors*, *Transpacific*, *Domestic Air*, *Broilers*, *Deere*, *Beef* and *Freight Forwarders*, among many others. *Id*.

**Elizabeth T. Castillo** is a partner in CPM's antitrust and unfair business practices group. Her experience includes litigating direct and indirect purchaser class actions as well as

international and domestic cartel matters. In 2022, she—along with Mr. Zapala—was appointed interim co-lead counsel in *In re Deere & Company Repair Services Antitrust Litig.*, No. 3:22-cv-50188, MDL No. 3030 (N.D. Ill.) and, in 2023, she was appointed to the leadership team in *In re ARC Airbag Inflators Products Liability Litig.*, No. 1:22-md- 03051, MDL No. 3051 (N.D. Ga.). Ms. Castillo was included in the 2024 edition of the Best Lawyers: Ones to Watch® in America for her work in Antitrust Law. *See* Ex. 1. The *Daily Journal* named Ms. Castillo to its "Top Antitrust Lawyers" list in 2022. *Id.* She received the American Antitrust Institute's Outstanding Antitrust Litigation Achievement in Private Law Award in 2019 and Outstanding Antitrust Litigation Achievement by a Young Lawyer Award in 2016 for her work on *In re Automotive Parts Antitrust Litigation*, a multidistrict litigation in the Eastern District of Michigan against 73 defendant groups that settled for over $1.2 billion.

**Christoper Jeu** is Senior Counsel at CPM and focuses on complex litigation, including antitrust and class actions. From 2016 to 2025, Mr. Jeu served as an Assistant United States Attorney, including from 2020 to 2025 in the Northern District of California and from 2016 to 2020 in the District of New Mexico. As an AUSA, he served as lead counsel for the United States in a wide range of civil matters. Mr. Jeu's government service included working with Native American tribes and litigating mass-tort matters arising from a large-scale forest fire. He has prevailed in numerous cases on behalf of the United States and received the U.S. Attorney's Office Award for Excellence in Oral Advocacy for his work before the Ninth Circuit. Prior to his service as an AUSA, Mr. Jeu practiced at Morrison & Foerster LLP, and he clerked for the Honorable Fernando M. Olguin of the Central District of California. *See* Ex. 1.

As stated by The National Law Journal, **Mr. Cotchett** is considered by plaintiffs and defense attorneys alike to be one of the foremost trial lawyers in the country. He is the author of

several books, including Federal Courtroom Evidence, California Courtroom Evidence and others. In 50 years of practice, he has tried over 100 cases to verdict in jurisdictions across the country, while settling hundreds more. He is known nationally as the lead trial lawyer for 23,000 plaintiffs in the *Lincoln Savings & Loan Association/American Continental Corp.* case in 1990 involving Charles Keating, his lawyers, accountants and bankers, winning one of the then-largest jury verdicts in U.S. history, $3.3 billion.

### 2. CPM Has Performed Extensive Work Thus Far

Courts routinely look to whether counsel have expended significant resources in identifying and investigating the potential claims of plaintiffs and class members. *Walker v. Discover Fin. Servs.*, No. 10-CV-6994, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011); *In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (concluding work done by counsel was decisive factor).

CPM has expended significant time and effort thoroughly investigating the claims in the Action. Castillo Decl. ¶ 7. These efforts included extensive factual, legal, expert work, and investigation, including interviewing multiple potential plaintiffs and identifying potential experts. CPM engaged in a significant investigation of Defendants' conduct, including, among other things, reviewing industry articles and publications, research reports, SEC filings, investor presentations concerning both the fire apparatus market and the individual Defendants, and U.S. legislative and executive investigations. *Id*. If appointed as an additional Interim Co-Lead Class Counsel for the IPP actions, CPM will work collaboratively with the other firms already appointed to lead this case. *Id*. ¶ 8.

11

### 3. CPM Will Commit the Resources Necessary to Prosecute This Action Efficiently

The inclusion of CPM alongside the current Interim Co-Lead Class Counsel would further strengthen the leadership structure in a case involving large, well-funded corporate defendants, where the complexity of the litigation, the number of putative class members, and the need to proceed efficiently warrant a robust and appropriately sized leadership slate.[2]

Moreover, in cases such as this one, where a proposed class faces well-capitalized adversaries represented by capable and well-funded counsel, that class likewise should be afforded representation by counsel with similar resources. Not only must the Court satisfy itself that CPM will commit sufficient, attorneys, attorney time, and financial resources to vigorously prosecute the claims at hand, but also a litigation of this magnitude "justifies the pooling of resources and experience." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, No. 12-2358-SLR, 2012 WL 5833604, at *1 (D. Del. Nov. 16, 2012) (citing *In re Exford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y.1998).[3] CPM has the resources needed to prosecute this action in the best interests of the proposed class. Fed. R. Civ. P. 23(g)(1)(A)(iv). As illustrated in the many complex cases discussed above, CPM has clearly demonstrated its dedication and commitment to prosecuting significant, complex cases to resolution and providing whatever resources are necessary to prevail. *Cf. In re Cavanaugh*, 306 F.3d 726, 735 (9th Cir. 2002) ("[A]n aggressive,

---

[2] *See e.g.*, Jaime Dodge, "Facilitative Judging: Organizational Design in Mass-Multidistrict Litig.", 64 Emory L.J. 329, 360 (2014) (providing that judges should consider the ability of a leadership slate to fund the litigation when reviewing plaintiff MDL leadership applications).

[3] *See also Outten v. Wilmington Trust Corp.*, 281 F.R.D. 193, 199 (D. Del. 2012); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02–1486 PJH, 2006 WL 1530166, at *11 (N.D. Cal., June 5, 2006)); *see also Lowery v. Spotify USA Inc.*, No. CV 15-09929-BRO (RAOx), 2016 WL 6818756, at *5 (C.D. Cal. May 23, 2016) (noting the Court "must appoint the applicant best able to represent the interests of the class.") (citation omitted).

competent lawyer can make a substantial difference in the outcome of the case."). CPM brings that same dedication and commitment to ensure the successful prosecution of this case as well.

### 4. Additional Factors Support Inclusion of CPM

Finally, under a district court's authority to consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), "courts have routinely recognized, over the past decade, the value of a legal team that is diverse across axes of gender, race, and other aspects of identity. *In re FICO Antitrust Litig. Related Cases*, No. 1:20-CV-02114, 2021 WL 4478042, at \*3 (N.D. Ill. Sept. 30, 2021); *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269, 2022 WL 1494378, at \*1, \*5 (E.D. Va. May 10, 2022) (noting the court may consider "diversity of proposed counsel"); *In re Fairlife Milk Prod. Mktg. & Sales Pracs. Litig.*, No. 19-cv-3924, MDL No. 2909, 2020 WL 362788, at \*1 (N.D. Ill. Jan. 22, 2020) (noting that Duke Law Bolch Institute's "best practice" manual advises courts to keep "in mind the benefits of diversity of experience, skills, and backgrounds.").

Here, CPM is diverse in all its forms. As described above, CPM includes lawyers from a cross-section of society and experiences. *See, supra,* at 9-11; *see also* Ex. 1. Moreover, CPM is geographically diverse, with offices in California, Washington, and New York. This geographic diversity ensures that CPM can effectively and efficiently staff discovery matters, staff engagement with class representatives, and leverage a national footprint for this multidistrict litigation. Lastly, CPM is also generationally diverse, with attorneys ranging in age from their 20s to 80s. This diversity ensures that various perspectives are considered, leading to more well-rounded decision-making that reflects a broad range of experiences, insights, and approaches to consumer advocacy.

As noted, another factor supporting CPM's appointment to the leadership structure in the IPP cases is that, to date, it is the only firm to be retained by a public entity in California—a major indirect purchaser state with more commerce than many of the indirect purchaser states combined. Because this is an indirect purchaser action, it will proceed under state law. And thus the City of Arcadia is in a prime position to assert those claims. And, the City Council for the City of Arcadia, in its discretion, has chosen CPM to represent it. It thus makes common sense to modify the leadership order to include CPM.

In sum, the combination of highly qualified and diverse attorneys at CPM will promote the effective and efficient prosecution of this action.

## V. CONCLUSION

For the foregoing reasons, Plaintiff City of Arcadia respectfully requests the Court grant the Motion and include Cotchett, Pitre & McCarthy, LLP in the interim leadership structure.

DATED: January 6, 2026

Respectfully submitted,

*/s/ Elizabeth T. Castillo*
Adam J. Zapala (*to be admitted*)
Elizabeth T. Castillo (WIED Bar No. 280502)
Christopher F. Jeu (WIED Bar No. 247865)
Christian S. Ruano (WIED Bar No. 352012)
Lauren A. Devens *(to be admitted)*
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cjeu@cpmlegal.com
cruano@cpmlegal.com
ldevens@cpmlegal.com

14

*Counsel for Plaintiff City of Arcadia and the Proposed Class*

Alex Phillips (WIED Bar No. 1098356)
Brittany Resch
Sam Strauss
Raina Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
aphillips@straussborrelli.com
bresch@straussborrelli.com
sam@straussborrelli.com
raina@straussborrelli.com

*Local Liaison Counsel*

15