## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## (GREEN BAY)

|  |  |
|---|---|
| IN RE INDIRECT PURCHASER FIRE APPARATUS ANTITRUST LITIGATION | Case No. 1:25-cv-01252<br><br>Hon. Byron B. Conway |
| City of Ann Arbor, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>Oshkosh Corporation, *et al.,*<br><br>      Defendants. | Case No. 1:25-cv-01973<br><br>Hon. Byron B. Conway |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CITY OF ANN ARBOR AND PLAINTIFF COMMACK FIRE DISTRICT'S MOTION FOR ESTABLISHMENT OF A PLAINTIFF EXECUTIVE COMMITTEE**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 3

III. ARGUMENT .................................................................................................................. 5

    A. Weitz & Luxenberg and TCL have performed significant work in investigating the claims in this action. ......................................................................................................... 5

    B. Weitz & Luxenberg and TCL are highly qualified to represent the interests of the IPP class and are knowledgeable of the applicable law governing indirect purchaser class action cases. ....................................................................................................................... 6

    C. Weitz & Luxenberg and TCL will dedicate considerable experience and resources. ....... 14

IV. CONCLUSION............................................................................................................... 16

i

# **TABLE OF AUTHORITIES**

**Cases**

*In re Aggrenox Antitrust Litig.*,
    No. 14-md-2516 (D. Conn. June 16, 2014)....................................................................... 4

*In re Lidoderm Antitrust Litig.*,
    No. 14-md-2521 (N.D. Cal. May 23, 2014)....................................................................... 4

*In re Lipitor Antitrust Litig.,*
    No. 12-cv-02389 (D.N.J. Aug. 10, 2012)........................................................................... 4

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    No. 12-md-2409 (D. Mass. Aug. 22, 2012)........................................................................ 4

**Other Authorities**

*Manual for Complex Litigation (Fourth)*............................................................................ 4

**Rules**

Federal Rule of Civil Procedure 23(g)(3) .............................................................. 4, 5, 6, 14

Plaintiffs City of Ann Arbor, Michigan ("Ann Arbor") and Commack Fire District of Commack, New York ("Commack") move this Court for the establishment of a Plaintiff Executive Committee (PEC) to operate under, and at the direction of, the current leadership structure that the Court has already appointed for the consolidated indirect purchaser case. *See* Order Granting Indirect Purchaser Pls.' Mot. to Consolidate & to Appoint Co-Lead Class Counsel *at* 4, *In re Indirect Purchaser Fire Apparatus Antitrust Litig.*, No. 1:25-cv-01252 (E.D. Wis. Dec. 30, 2025), ECF No. 49.

Should the Court elect to establish a PEC, Ann Arbor and Commack respectfully request that the firms of Weitz & Luxenberg, P.C., and Taus, Cebulash & Landau, LLP ("TCL") be appointed as members of the PEC. Establishment of a PEC is a routine and orderly case-management practice in indirect purchaser antitrust litigation. A PEC accomplishes the dual goals of: 1) respecting the efficiency and reduction of duplication that is embodied in appointment of Co-Lead Counsel, whose role is to direct management of the tasks to be performed in the case; and 2) acknowledging the roles of multiple counsel who bring actions and represent proposed class representatives under the laws of multiple states.

## I.     INTRODUCTION

This action consists of claims brought on behalf of municipalities and fire districts across the country that purchased fire trucks, through a network of distributors and intermediaries, that were manufactured by Defendants. The action asserts that the prices paid for these fire trucks were supracompetitive due to the anticompetitive conduct of the Defendant manufacturers as facilitated by their trade association.

In its Order Granting Indirect Purchaser Plaintiffs' Motion to Consolidate and to Appoint Co-Lead Counsel, this Court appointed the following firms as Interim Co-Lead Class Counsel:

1

- Hagens Berman Sobol Shapiro LLP;

- Crueger Dickinson LLC; and

- Gustafson Gluek PLLC

*Id*. at 4. The Court also ordered that "[t]he Court may add or replace the appointed firms upon request of Interim Co-Lead Class Counsel or on the Court's own motion…" *Id.* In the same order, the Court also consolidated, *sua sponte*, three additional indirect purchaser antitrust cases that had been filed by Ann Arbor (1:25-cv-01973), Commack (1:25-cv-02013) and, lastly, the City of Arcadia (1:25-cv-02005). *Id.* at 3. These three additional indirect purchaser plaintiffs are located in Michigan, New York, and California, respectively.

Of all the (currently) five consolidated indirect purchaser cases, none of the plaintiffs have opposed the appointment of the three Interim Co-Lead Counsel appointed by the Court. These firms are all well respected and qualified to serve in that court-appointed capacity. However, the indirect purchaser plaintiffs have differed in how the participation of additional counsel should be reflected in the leadership structure. On the one hand, the City of Arcadia has requested that its counsel be added as an additional Co-Lead Counsel. *See* Pl. City of Arcadia's Mot. to Partially Modify the Ct.'s Appointment of Class Counsel in the IPP Actions, *In re Indirect Purchaser Fire Apparatus Antitrust Litig.*, No. 1:25-cv-01252 (E.D. Wis. Jan. 6, 2026), ECF No. 56. Respectfully, this request was not authorized by, and indeed contradicts, the Court's appointment order. That order provides only two scenarios for adding additional Co-Lead Counsel: either 1) "upon request of Interim Co-Lead Counsel" or 2) "on the Court's own motion…" *See* Order Granting Consolidation *at* 4, ECF No. 49. Neither of these scenarios is presented in the City of Arcadia's motion and adding more firms to the existing Co-Lead Counsel structure approved by the Court simply is not contemplated under the Court's order. *Id.*

2

In contrast with Arcadia, Ann Arbor and Commack suggest a different case management approach that respects the integrity of the Court's existing order, recognizes the efficiency of the leadership structure already appointed by the Court, and contemplates that additional firms representing additional putative class representatives still have a meaningful role to play in the litigation of this case. Specifically, Ann Arbor and Commack request that the Court create a Plaintiff Executive Committee underneath the existing Co-Lead Counsel structure. In advance of filing this motion, Ann Arbor and Commack have conferred with the Court-appointed Co-Lead Counsel in the case and are authorized to report that they do not oppose the current motion.

As further detailed herein, a Plaintiff Executive Committee can accommodate additional firms in the consolidated indirect purchaser action whose clients participate in the action as putative class representatives. At the same time, and recognizing that adding more firms runs the risk of duplication and inefficiency, the role of these additional firms would be subject to the assignments deemed necessary and appropriate by Co-Lead Counsel, and would thereby serve the fiduciary interests of the putative class as a whole.

For these reasons, Ann Arbor and Commack respectfully request that the Court: 1) reject the request of Arcadia to be added as an additional Co-Lead Counsel 2) appoint a Plaintiff Executive Committee under the existing Co-Lead Counsel appointments with the obligations and duties set forth in the attached proposed order and 3) appoint the firms of Weitz & Luxenberg, P.C. and Taus, Cebulash & Landau, LLP ("TCL") as members of the Plaintiff Executive Committee.

## II.     LEGAL STANDARD

In complex litigation involving numerous parties with common interests but separate counsel, the court will often need to institute procedures by which some attorneys, referred to as "designated counsel" are authorized to act on behalf of other counsel and their clients for certain

aspects of the litigation. *Manual for Complex Litigation (Fourth)* § 10.221 (2004). In doing so, the Court will ensure that counsel appointed to leading roles are qualified and responsible, and that they will fairly and adequately represent all of the parties on their side. *Id.* In making appointments and assignments, the most important factor is achieving efficiency and economy without jeopardizing fairness to the parties. *Id.*

Federal Rule of Civil Procedure 23(g)(3) allows the court to designate interim counsel to act on behalf of a putative class before determining whether to certify the class. In its Order Granting Indirect Purchaser Plaintiffs' Motion to Consolidate and to Appoint Co-Lead Class Counsel, the Court has already appointed Interim Co-Lead Counsel following the factors set forth in Rule 23(g). *See* Order Granting Consolidation *at* 4, ECF No. 49.

But as an additional case management practice – particularly in antitrust class actions – courts frequently appoint a Plaintiff Executive Committee underneath the Co-Lead Counsel to further the interests of the putative class. *See In re Lidoderm Antitrust Litig*., No. 14-md-2521 (N.D. Cal. May 23, 2014), ECF No. 63 (appointing three co-leads and a five-member executive committee); *In re Aggrenox Antitrust Litig*., No. 14-md-2516 (D. Conn. June 16, 2014), ECF No. 95 (appointing three co-leads and a four-member executive committee*); In re Nexium (Esomeprazole) Antitrust Litig*., No. 12-md-2409 (D. Mass. Aug. 22, 2012), ECF No. 85 (appointing four co-leads, a liaison, and a six-member executive committee for end-payers); *In re Lipitor Antitrust Litig.,* No. 12-cv-02389 (D.N.J. Aug. 10, 2012), ECF 109 (appointing four co-leads, a liaison, and a six-member executive committee for end-payers).

When appointing a Plaintiff Executive Committee, Ann Arbor and Commack submit that it is appropriate to consider the same factors that courts consider in appointing interim co-lead counsel under Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). Those factors are:

4

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
> (ii)    counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action
> (iii)   counsel's knowledge of the applicable law and
> (iv)    the resources that counsel will commit to representing the class

Evaluation of these factors strongly favors appointment of Weitz & Luxenberg, and TCL as members of a PEC.

## III.   ARGUMENT

Ann Arbor and Commack's request that the Court appoint Weitz & Luxenberg and TCL as members of a PEC is in accordance with the requirements of Fed. R. Civ. P. 23(g)(1)(A). Both firms possess a wealth of prior successful experience with antitrust class actions and other prominent and complex cases. Both firms are highly qualified to represent the interests of the Indirect Purchaser Plaintiffs in this action.

### A. Weitz & Luxenberg and TCL have performed significant work in investigating the claims in this action. FRCP 23(g)(1)(A)(i)

Weitz & Luxenberg and TCL have devoted considerable legal and factual research into the claims in this action. The firms interviewed multiple potential municipal plaintiffs and invested significant effort investigating how Defendants' conduct shifted the landscape of the fire truck apparatus market in a post-recession market, which ultimately caused harm to communities in the proposed IPP class. Significant resources have been allocated to researching evidence of wrongdoing on the part of the Defendants including but not limited to SEC filings, news articles, investor presentations, understanding the ownership structure of Manufacturer Defendants and their distributors, and U.S. Senate Subcommittee Statements. Moreover, the firms exhaustively researched  Defendant FAMA's role in the conspiracy – including but not limited to investigating

5

how its Data and Research Committee and the corresponding bylaws have evolved over time, the extent to which individuals employed by Manufacturer Defendants have served in leadership positions in FAMA, and a close look into the extensive FAMA newsletter and its member communications over the past decade. This work forms the basis of the claims alleged in complaints for Ann Arbor and Commack Fire Department and will serve the proposed IPP class well when proceeding to the next step – the filing of a consolidated class action complaint.

**B. Weitz & Luxenberg and TCL are highly qualified to represent the interests of the IPP class and are knowledgeable of the applicable law governing indirect purchaser class action cases. FRCP 23(g)(1)(A)(ii)–(iii)**

Both Weitz & Luxenberg and TCL propose counsel who are experienced, knowledgeable, and successful in complex class action litigation generally, and indirect purchaser antitrust litigation specifically. *See* Declaration of Paul F. Novak in Support of Plaintiff City of Ann Arbor and Plaintiff Commack Fire District's Motion for Establishment of a Plaintiff Executive Committee ("Novak Decl."), Ex. A (TCL Resume), Ex. B (Paul Novak Bio), Ex. C (Diana Gjonaj Bio), and Ex. D (Gregory Stamatopoulos Bio). Paul Novak is a Partner and Managing Attorney of Weitz & Luxenberg's Detroit office. He has over thirty years of experience prosecuting complex consumer and antitrust class actions and has served in various leadership positions as court-appointed lead counsel or as a member of Plaintiffs' committees. Mr. Novak joined Weitz & Luxenberg after serving eight years as a partner heading the antitrust practice group at Milberg LLP, and 15 years as an Assistant Attorney General in charge of antitrust enforcement for the Michigan Department of Attorney General.

Mr. Novak has a wealth of experience serving in leadership roles for complex litigation, including antitrust indirect purchaser litigation. *See In re Cardizem CD Antitrust Litigation,* 218 F.R.D. 508 (E.D. Mich. 2003) (Judge Nancy Edmunds) (served as court-appointed co-lead counsel

on behalf of all fifty state attorneys general in an indirect purchaser antitrust and consumer class action settlement valued at $80 million); *In re Compuware Corp. Shareholder Litig.,* No. 14-011437-CB (Wayne Cnty. Cir. Ct. 2014) (appointed lead class counsel by Wayne County Circuit Judge Dan Ryan in the shareholder class action case); *Blessing v. Sirius XM Radio Inc*., Case No. 1:09-cv-10035 (S.D.N.Y.) (court-appointed co-lead counsel in a nationwide antitrust and consumer class action with an injunctive relief settlement valued at $180 million); *In re Fresh and Process Potatoes Antitrust Litigation* (D. Idaho, MDL No. 2186) (served as co-lead class counsel for the indirect purchaser antitrust class); *In re Potash Antitrust Litig. No. II*, 683 F.3d 845 (7th Cir. 2012) (en banc) (appointed member of the Plaintiffs' Steering Committee in a consumer antitrust action with a settlement valued at $20 million); *In re Lorazepam & Clorazepate Antitrust Litigation* (D. D.C., MDL No. 1290) (served as lead counsel for the State of Michigan on antitrust and consumer protection claims securing a settlement valued at $100 million); *Solo v. United Parcel Service,* 819 F.3d 788 (6th Cir. 2015) (represented a putative class of consumers in a successful appeal of an adverse class action decision before the Sixth Circuit Court of Appeals); *In re Citizens Republic Bancorp, Inc. Shareholder Litig.,* No. 12-99089-CZ (Mich. Cir. Ct. Genesee Cnty. 2012) (served as co-lead counsel in the securities class action); *Sandhaus v. Bayer AG,* No. 00-CV-6193 (Kan. Dist. Ct. Johnson Cnty. 2000) (served as co-lead class counsel in an antitrust indirect purchaser class action involving the pharmaceutical product Cipro).

Mr. Novak also has extensive experience serving on various Plaintiffs' committees in the context of complex litigations. *See In re Flint Water Cases,* No. 5:16-cv-10444 (E.D. Mich. 2016) (appointed to Plaintiffs' Executive Committee; class certified for $630 million settlement); *In re Wells Fargo Collateral Protection Insurance Litig.*, 8:17-ML-2797-AG-KES (C.D. Cal.) (appointed to Plaintiff Executive Committee in class action settlement valued at $400 million); *In*

7

*re Liquid Aluminum Sulfate Antitrust Litig.,* No. 16-md-2687 (D.N.J. 2016) (appointed to Plaintiff Executive Committee); *Beverly Zimmerman v. 3M Co.,* No. 1:17-cv-1062 (W.D. Mich. 2017) (appointed to Plaintiff Executive Committee with settlement valued at $54 million); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 4:07-cv-05944 (N.D. Cal. 2007) (MDL No. 1917) (appointed to discovery committee with a proposed settlement in excess of $500 million).

Although not class action cases, Mr. Novak also possesses experience in other complex litigation and relevant legal fields. In *In re General Motors LLC Ignition Switch Litig.*, No. 14-md-2543 (S.D.N.Y. 2014), he served as trial counsel in one of the first bellwether trials addressing automotive ignition switch defects. In *CMS Energy Corp. v. Attorney General,* 190 Mich. App. 220 (Mich. Ct. App. 1991), he successfully enjoined the transfer of $1.4 billion of assets between Consumers Power and its parent, CMS Energy, in transactions that were subsequently found to have evaded lawful obligations.

The primary plaintiffs in this litigation will be local governments who purchase fire trucks, and Mr. Novak possesses unique experience representing local governments. He formerly served as the City Attorney of Lansing, Michigan, and he represents over 60 counties and cities including San Francsico, Detroit, Grand Rapids, and Lansing in *In re National Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio). He also represents the interests of multiple local governments in *In re Insulin Pricing Litig.*, No. 2:23-md-03080 (D.N.J. Sept. 5, 2025) and *In re Social Media Adolescent Addiction/Personal. Injury Prods. Liab. Litig.*, No. 4:22-md-03047 (N.D. Cal. Jan. 6, 2026). *See* Novak Decl., Ex. B.

In addition to Mr. Novak, Diana Gjonaj and Gregory Stamatopolous will also provide assistance on this matter. Diana Gjonaj is a partner at Weitz & Luxenberg with significant experience in complex, high-stakes litigation involving coordinated proceedings and sophisticated

liability theories. At the outset of her legal career, Ms. Gjonaj focused exclusively on antitrust litigation, practicing at Milberg LLP on matters involving price-fixing, monopolization, and other anticompetitive conduct. Ms. Gjonaj has represented dozens of municipalities in water contamination cases involving widespread environmental harm and public entity claims. Most recently, she has taken a leading role in representing Marines and their families in the Camp Lejeune Water Litigation, where she works on claims brought on behalf of large groups of plaintiffs in a nationwide proceeding. She also served as a lead attorney on the bellwether trial in *In re General Motors LLC Ignition Switch Litig.* *See* Novak Decl., Ex. C.

Gregory Stamatopolous has been involved in some of the largest and most diverse class actions across the country. A partner at Weitz & Luxenberg, Mr. Stamatopolous has served in every level of complex litigation, including leading discovery committees, deposition teams, and trial teams and has developed significant experience that would be an asset to the leadership of this case. Mr. Stamatopolous represented defrauded investors and consumers and worked on several high-profile class action cases including *In re Oppenheimer Rochester Funds Group Sec. Litig.*, No. 1:09-md-02063 (D. Colo. 2009) (MDL No. 2063) and *In re CRT Antitrust Litig.* Mr. Stamatopolous has litigated cases in both state and federal courts and has represented plaintiffs in a vast array of industries, including health care, pharmaceutical, and defense.

In recent years, Mr. Stamatopolous also worked tirelessly as lead coordinator for defense discovery in the *In re Flint Water Cases* and played a pivotal role in securing a historic $630 million settlement for the plaintiffs in 2021. In 2024, he was appointed to the Plaintiffs' Steering Committee for *In re Insulin Pricing Litig.* Mr. Stamatopolous also serves as a zealous advocate on behalf of individuals who developed Non-Hodgkin's Lymphoma in products liability litigation regarding the weedkiller Roundup. With his vast array of trial experience, Mr. Stamatopolous

brings forth a host of resources to supplement Weitz & Luxenberg's leadership efforts in this case. *See* Novak Decl., Ex. D.

Kevin Landau, a founding partner of TCL, has been engaged in complex class litigation since 1996 and currently represents plaintiffs and class members in various antitrust and consumer class actions in leadership positions, including *In re Passenger Vehicle Replacement Tires Antitrust Litig.* (E.D. Ohio) (Direct Purchaser Plaintiff Steering Committee); *Mach v. Yardi Systems, Inc., et al.* (24CV63117) (Cal. Sup.) (co-lead counsel); *In re Effexor Antitrust Litig.* No. 3:11-cv-05479 (D.N.J.) (executive committee); *Guthart v. Nassau County*, No. 604271/16 (Sup. Ct., Nassau County, N.Y.) (lead counsel); *McGrath v. Suffolk Cnty.,* No. 608155/16 (N.Y. Sup. Ct. Suffolk Cnty.) (lead counsel); and *Hogan v. Amazon.com, Inc.*, 21-cv-3169 (N.D. Ill.), a case challenging Amazon's collection of biometric from Amazon Photos (executive committee). *See* Novak Decl., Ex. A.

In addition to these cases, Mr. Landau has previously represented plaintiffs and class members in various cases which have been successfully resolved, such as, *Marchese v. Cablevision Systems Corp., et al.* (D.N.J.) (providing in excess of $72 million in settlement benefits and significant injunctive relief to Cablevision subscribers who paid inflated prices for their set-top boxes) (lead counsel); *Esslinger, et al. v. HSBC Bank Nevada, N.A.* (E.D. Pa.) ($23.5 million settlement for cardholders in class action) (co-lead counsel); *In re Bank of America Credit Protection Marketing & Sales Practices Litig.* (N.D. Cal.) ($20 million settlement for cardholders in consumer class action) (member of executive committee); *In re Discover Payment Protection Plan Marketing and Sales Practices Litig.*, ($10.5 million settlement for cardholders in consumer class action); *Arnett v. Bank of America*, (D. Or.) ($31 million settlement for class challenging lender placed flood insurance practices); *Casey v. Citibank, N.A.*, (N.D.N.Y.) (settlement providing

for $110 million in benefits to class challenging force-placed insurance practices); *In re Skelaxin Antitrust Litig.* ($73 million settlement for direct purchasers in antitrust class action), *In re Metoprolol Succinate Antitrust Litig.* (settled for $20 million settlement for direct purchasers in antitrust class action); *Giant Eagle, Inc. v. Cephalon, Inc. et al.* (E.D. Pa.) (private settlement in antitrust action alleging that Cephalon paid its generic competitors to stay off the market with their competing generic versions of Provigil); and *Westrope v. Ringler* (D. Ore.) (resolving claim of structured settlement annuitants who suffered cuts to their annuity payments as a result of their structured settlement brokers' alleged negligence). *Id.*

Brett Cebulash, a founding partner of TCL, has been engaged in complex class litigation since 1993. Over the course of his 32-year career, Mr. Cebulash has made substantial contributions to complex class cases in the areas of antitrust law, consumer protection law, employment law, and securities law. Mr. Cebulash is engaged in challenging the improper imposition of fees by Nassau and Suffolk County in *Guthart v. Nassau County* and *McGrath v. Suffolk County* and anticompetitive price fixing of California apartment rentals in *Mach v. Yardi Systems, Inc., et al*. As Lead Counsel, Mr. Cebulash was substantially involved in all aspects of *Marchese v. Cablevision*, a class action challenging Cablevision's tying of subscriptions to interactive services to the rental of set-top boxes exclusively from Cablevision that resulted in a settlement providing in excess of $72 million in settlement benefits and significant injunctive relief to Cablevision subscribers. As Co-Lead Counsel, Mr. Cebulash recently settled on the eve of trial *Hasemann v. Gerber* (E.D.N.Y.) a case challenging infant formula marketing practices.

Mr. Cebulash has litigated many cases that challenge anticompetitive conduct in the healthcare industry. For example, Mr. Cebulash has been involved in development and prosecution of *In re Asacol Antitrust Litig.* (D. Mass.), *In re Effexor XR Direct Purchaser Antitrust Litig.*, and

*In re Glumetza Antitrust Litig.* (N.D. Cal). Other examples in the healthcare area include *Natchitoches Parish Hosp. v. Tyco* (D. Mass.), brought on behalf of a class of direct purchasers of sharps containers who were overcharged as a result of Tyco's exclusive dealing conduct, where Mr. Cebulash was responsible for leading all aspects of the case up to summary judgment, including successfully arguing for class certification, defending the opinions of plaintiffs' economists, deposing and successfully challenging opinions of certain of Defendants' experts, leading all discovery efforts and engaging in economic analyses. In *In re Neurontin Antitrust Litig.* (D.N.J), Mr. Cebulash was responsible for developing the direct purchaser class action that challenged Pfizer's scheme to delay generic competition for Neurontin, including formulating the contours of Pfizer's overarching scheme and successfully arguing against Pfizer's motion to dismiss. Mr. Cebulash successfully led prosecution of *In re Nifedipine Antitrust Litig.* (D.D.C.), which challenged anticompetitive agreements between generic manufacturers of generic Adalat.

In the area of consumer protection, Mr. Cebulash has been prominently involved in cases challenging the practices of banks and insurers in the forced placement of flood insurance. In *Arnett v. Bank of America*, Mr. Cebulash successfully argued in opposition to Bank of America's motion to dismiss, developed the concept of the lender-servicer distinction (to distinguish the actions of loan servicers from those reserved to the lender/owner of the mortgage to counter servicers' arguments that they were entitled to unfettered discretion under the mortgage to set terms for flood insurance) and engaged in all other aspects of the prosecution of the *Arnett* matter, leading to a settlement providing $31 million in cash for the class as well as significant relief from Bank of America's flood insurance practices. Mr. Cebulash was involved in the development and prosecution of *Casey and Skinner v. Citibank*, where the court adopted the lender-servicer distinction in denying Citibank's motion to dismiss and which ultimately settled for $110 million

in value available to the flood, hazard and wind insurance classes as well as changes to Citibank's insurance practices. In C*lements, Scheetz, et. al. v. JP Morgan Chase* (N.D. Cal.)/(S.D.N.Y.) Mr. Cebulash developed concepts that contributed to reaching a settlement that provided $22.1 million in cash to the class and changes to Chase's force placed flood insurance practices.

Mr. Cebulash has successfully litigated numerous actions against credit card issuers challenging their deceptive practices with regard to their credit protection products, including *Spinelli, et al v. Capital One*, (M.D. Fla), *Esslinger v. HSBC*, (E.D. Pa.) (co-lead counsel), *Bank of America Credit Protection Marketing & Sales Practices Litig.* (N.D. Cal.) (executive committee) and *Discover Payment Protection Plan Marketing and Sales Practices Litig.* (N.D. Ill.), successfully providing these classes with over $50 million in total cash relief as well as improvements to credit protection practices. *Id.*

Miles Greaves, a partner at TCL, has been engaged in complex class litigation since 2012 and currently represents consumers in a number of antitrust and consumer-protection class actions throughout the country. He was responsible for the day-to-day case management in *Hasemann v. Gerber Products Co.* (E.D.N.Y.), which alleges that the defendant improperly marketed its infant formula, and recently settled on the eve of trial, and he represents the plaintiffs in *McGrath v. Suffolk County* and *Guthart v. Nassau County*, which challenges the administrative fees associated with red-light camera tickets. Mr. Greaves also represents the class in *Simon & Simon, PC v. Align Tech., Inc.* (N.D. Cal.), which alleges that the defendant illegally monopolized the market for clear dental aligners; he represents a class in *In re Broiler Chicken Antitrust Litig.*, which alleges that the defendants conspired to fix the nationwide price of chicken; and Mr. Greaves plays a role in several antitrust class actions alleging that brand-name pharmaceutical manufacturers inhibited the

13

introduction of generic pharmaceuticals, such as *In re Copaxone Antitrust Litig.* (D.N.J.) and *In re Effexor XR Antitrust Litig.* (D.N.J.). *Id.*

In addition to these ongoing actions, Mr. Greaves has represented plaintiffs and classes in a number of cases that have been successfully resolved. This includes *In re Glumetza Antitrust Litig.,* which resulted in one of the largest settlements of its kind, as well as *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.* (E.D. Pa.); *In re Loestrin 24 FE Antitrust Litig.* (D.R.I.); *In re Lidoderm Antitrust Litig.* (N.D. Cal.); *In re Niaspan Antitrust Litig.* (E.D. Pa.); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.* (E.D.N.Y); *In re Disposable Contact Lens Antitrust Litig.* (M.D. Fla.); *In re Solodyn Antitrust Litig.* (D. Mass.); *In re Celebrex Antitrust Litig.* (E.D. Va.); *Universal Delaware, Inc. v. Ceridian Corp.* (E.D. Pa.); and *In re Prandin Direct Purchasers Antitrust Litig.* (E.D. Mich.); *Arnett v. Bank of America, N.A.* (D. Or.); *Scheetz v. JPMorgan Chase Bank, N.A.* (S.D.N.Y.); *Marchese v. Cablevision Systems Corp.* (D.N.J.); and *Westrope v. Ringler Associates Inc.* (D. Or.). *Id.*

**C. Weitz & Luxenberg and TCL will dedicate considerable experience and resources. FRCP 23(g)(1)(A)(iv)**

Weitz & Luxenberg is AV-rated with headquarters in New York City in addition to its Detroit, Los Angeles, and New Jersey Offices and, since its inception, has recovered over $17 billion on behalf of injured consumers and victims of corporate malfeasance. The firm has more than 100 attorneys and 400 support staff and possess the dedication, human and financial resources, and litigation experience to meet the challenges of this litigation.

The firm's many accomplishments include significant settlements of class action or mass litigation including *Volkswagen "Clean Diesel" Marketing*, MDL No. 2672 (appointed to plaintiff's steering committee); *In re Actos (Pioglitazone) Products Liability Litig.*, MDL No. 2299

14

(co-lead counsel in settlement of $2.4 billion pharmaceutical products liability action); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179 (plaintiff's steering committee participation in excess of $10 billion settlement); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No. 1358 (plaintiffs liaison counsel and lead litigation counsel for a settlement of $423 million); *In re Stryker Rejuvenate Hip Stem Litigation*, MDL No. 296 (plaintiffs liaison counsel and lead counsel negotiating settlement exceeding $1.5 billion).

TCL, located in New York City, was founded in 2009 with a focus on complex antitrust and consumer protection class actions. *See* Novak Decl., Ex. A. TCL is dedicated to providing the highest quality legal representation to clients and class members, while working in an environment that inspires collaboration, inventiveness, and productivity. TCL has extensive experience litigating complex antitrust actions in a variety of industries, including pharmaceutical and medical devices. TCL has been appointed to Executive Committees in multiple cases, including *In re Effexor XR Direct Purchaser Antitrust Litigation,* 11-cv-05479 (D.N.J.) and *In re Niaspan Antitrust Litigation,* 13-md-2460 (E.D. Pa.). TCL has represented classes in recent pharmaceutical antitrust actions that have resulted in substantial recoveries for class members, including *In re Glumetza Antitrust Litigation*, 19-cv-5822 (N.D. Cal.) ($453 million); *In re Lidoderm Antitrust Litig.*, 14-md-2521 (N.D. Cal.) (Executive Committee) ($166 million); *In re Solodyn Antitrust Litig.*, 14-md-2503 (D. Mass.) ($72.5 million); *In re Celebrex Antitrust Litig.*, 14-cv-361 (E.D. Va.) ($94 million); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 18-MD-2819 (E.D.N.Y) (Executive Committee) ($51.2 million); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 13-md-2445 (E.D. Pa.) ($385 million); and *In re Zetia (Ezetimibe) Antitrust Litigation*, 18-md-2836 (E.D. Va.) (Executive Committee). Prior to founding TCL, our

founding members played leadership roles in cases that resulted in hundreds of millions of dollars recovered for class members.

TCL represents or has represented class members in numerous other complex antitrust actions in a range of industries including cable services, auto parts, contact lenses, and food supplies. For instance, as lead counsel in *Marchese v. Cablevision Systems Corp., and CSC Holdings, Inc.*, 10-cv-02190 (D.N.J.), TCL recovered $72 million in settlement benefits for cable subscribers. TCL is a member of the Plaintiffs' Steering Committee in *In re Crop Inputs Antitrust Litig.*, 21-md-2993 (E.D. Mo.), *In re Google Digital Advertising Antitrust Litigation,* 21-md-3010 (S.D.N.Y.) and *In re Passenger Vehicle Replacement Tires Antitrust Litigation*, 24-md-3107 (E.D. Ohio). TCL represents or has represented classes of purchasers subject to anticompetitive practices in numerous cases, including *In re Granulated Sugar Antitrust Litig.*, 24-md-3110 (D. Minn.); *Mach v. Yardi Systems, Inc., et al.* (24CV63117) (Cal. Sup.); *In re Automotive Parts Antitrust Litig.*, 12-md-2311 (E.D. Mich); *In re Disposable Contact Lens Antitrust Litig.*, 15-md-2626 (M.D. Fla.); *In re Broiler Chicken Antitrust Litig.*, 16-cv-08637 (N.D. Ill.); *In re Dealer Management Systems Antitrust Litig.*, 18-cv-864 (N.D. Ill.); *Universal Delaware Inc. v. Ceridian Corp., et al.*, 09-cv-2327 (E.D. Pa.), and *Wallach, et al. v. Eaton, et al.*, 10-cv-260 (D. Del.).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs City of Ann Arbor and Commack Fire Department respectfully move the Court for the establishment of a Plaintiff Executive Committee to operate under and at the direction of the current leadership structure established by the Court. Should the Court elect to establish a PEC, Ann Arbor and Commack respectfully request that Weitz & Luxenberg and TCL be appointed as members of the PEC.

DATED: January 28, 2026

Respectfully Submitted,

/s/ Paul F. Novak
Paul F. Novak
Casey Verville
Milena Lai
**WEITZ & LUXENBERG P.C.**
Fisher Building
3011 West Grand Blvd., 24th Floor
Detroit, MI 48202
Phone: (313) 800-4170
Fax: (646) 293-7992
pnovak@weitzlux.com
cverville@weitzlux.com
mlai@weitzlux.com

*Counsel for City of Ann Arbor and the
Proposed Class*

/s/ Kevin Landau
Kevin Landau
Brett Cebulash
Miles Greaves
**TAUS, CEBULASH & LANDAU, LLP**
123 William Street, Suite 1900A
New York, New York 10038
212-931-0704
klandau@tcllaw.com
bcebulash@tcllaw.com
mgreaves@tcllaw.com

*Counsel for Commack Fire District and the
Proposed Class*

17