# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| *In re: Indirect Purchaser Fire Apparatus Antitrust Litigation* | Case No. 1:25-cv-01252<br><br>Hon. Byron B. Conway |
| CITY OF ARCADIA, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>American Industrial Partners, LLC, *et al.*,<br><br>      Defendants. | Case No. 1:25-cv-02005<br><br>Hon. Byron B. Conway |

**PLAINTIFF CITY OF ARCADIA'S REPLY IN SUPPORT OF THE MOTION TO PARTIALLY MODIFY THE COURT'S APPOINTMENT OF CLASS COUNSEL IN THE IPP ACTIONS**

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ....................................................................................................... 2

    A. CPM is Qualified Under Rule 23(g) to Serve as an Interim Co-Lead Counsel .................................................................................................. 2

    B. Appointing CPM to a Leadership Role Will Not Create Inefficiencies ................. 4

    C. Courts Routinely Appoint an Even Number of Co-Lead Counsel ......................... 5

    D. California Plaintiffs, Whose Communities Face Distinct, Heightened Risks of Catastrophic Wildfires, Have a Major Interest in Ensuring That Its Interests Are Adequately Represented .................................................................................. 7

    E. The Case is in its Early Stages and there is No Prejudice to Any Party in Modifying the Leadership Order .................................................................................. 8

III. CONCLUSION .................................................................................................... 9

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Aberin v. Am. Honda Motor Co., Inc.*,
No. 16-cv-04384-JST, 2017 WL 3641793 (N.D. Cal. Aug. 24, 2017)................................6

*In re Air Cargo Shipping Antitrust Litig.*,
240 F.R.D. 56 (E.D.N.Y. 2006) .........................................................................................5

*In re Automotive Parts Antitrust Litig.*,
No. 2:12-md-02311 (E.D. Mich.) .......................................................................................4

*In re Broiler Chicken Antitrust Litig.*,
No. 1:16-cv-08637 (N.D. Ill.) ..........................................................................................4, 6

*In re Cattle and Beef Antitrust Litigation*,
No. 0:22-md-03031 (D. Minn.).........................................................................................4, 6

*In re: Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ..............................................................................................8

*In re Crude Oil Commodity Futures Litig.*,
No. 11-cv-3600-WHP, 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012) .................................6

*In re Deere & Company Repair Services Antitrust Litig.*,
No. 3:22-cv-50188 (N.D. Ill.) ............................................................................................4

*In re Fairlife Milk Prods. Mktg. & Sales Pracs. Litig.*,
No. 19-cv-3924, 2020 WL 362788 (N.D. Ill. Jan. 22, 2020).............................................7

*Maximilian Klein, et al. v. Facebook, Inc.*
No. 3:20-cv-08570 (N.D. Cal.) ..........................................................................................6

*Nowak v. Ford Motor Co.*,
240 F.R.D. 355 (E.D. Mich. 2006) ....................................................................................4

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
No. 03-MLD-1566, 2007 WL 4150666 (M.D. Pa. Nov. 19, 2007)....................................5

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) ............................................................................................5

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) .............................................................................................5

*Waudby v. Verizon Wireless Serv., LLC*,
    248 F.R.D. 173 (D.N.J. 2008)........................................................................................5

**Statutes**

28 U.S.C. § 1407................................................................................................................9

**Other Authorities**

Bolch Judicial Institute, Duke Law School,
    *Guidelines and Best Practices for Large and Mass-Tort MDLs*
    (2nd ed. Sept. 2018) ..................................................................................................7

Fed. R. Civ. P. 23 ..........................................................................................................2, 3

Case 1:25-cv-01252-WCG    Filed 02/10/26    Page 4 of 14    Document 82

## I.   INTRODUCTION

In the Opposition to Plaintiff City of Arcadia's Motion to Partially Modify the Court's Appointment of Class Counsel in the IPP Actions ("Opp'n") (Dkt. No. 71), Plaintiffs City of La Crosse and City of Onalaska ("La Crosse Plaintiffs") concede that:

- Plaintiff City of Arcadia's counsel, Cotchett, Pitre & McCarthy LLP ("CPM") has extensive experience litigating antitrust class actions and other complex cases.  *See* Opp'n at 5 (arguing a "dream team" of attorneys is unwarranted); Motion (Dkt. No. 57) at 6–11;

- CPM has the knowledge of the applicable law; and as a national law firm with California offices, it is in the prime position to litigate California antitrust claims.  *See* Opp'n at 5–7;

- As a "powerhouse" law firm, CPM has extensive resources that it will commit to representing the class.  *See* Opp'n at 5–7; Motion at 12–13;

- In other complex cases, CPM has worked cooperatively and efficiently with Interim Co-Lead counsel Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Gustafson Glueck PLLC ("Gustafson Gluek") in co-leadership positions.  *See* Motion at 7;

- The Court's IPP Leadership Order contemplates amendment.  *See* Dkt. No. 49;

- The current leadership structure has been in place only since late December 2025.  *See id.*; Opp'n at 1, 3; and

- By any measure, this antitrust class action is "at an early stage of the litigation."  *See* Opp'n at 1.

Nevertheless, the La Crosse Plaintiffs contend that adding CPM as Interim Co-Lead Counsel would "risk[] inefficiencies" at this "early stage."  *See id*. at 1.  But the La Crosse Plaintiffs' argument disregards CPM's productive, cooperative working relationship with all firms currently in this litigation.  In addition, the La Crosse Plaintiffs posit that appointing CPM might suggest

that "separate co-lead counsel could be necessary for each of the thirty-eight states (and Washington D.C.)." *See id*. at 7.  In addition, the La Crosse Plaintiffs posit that the City of Arcadia does not have "distinct" interests from the rest of the class.  *See id*. at 1, 9.  But these arguments disregard the significant, distinct public safety interests at stake:  The appointment of CPM as an Interim Co-Lead Class Counsel would ensure that California's interests are adequately represented, and it would serve the best interests of the class.

## II.  ARGUMENT

### A.  CPM is Qualified Under Rule 23(g) to Serve as an Interim Co-Lead Counsel

In the Opposition, the La Crosse Plaintiffs do not meaningfully dispute that CPM satisfies all the requirements under Federal Rule of Civil Procedure 23(g) to serve as Interim Co-Lead Class Counsel.  Indeed, the La Crosse Plaintiffs concede that CPM has the expertise, knowledge of applicable law, and resources to vigorously prosecute this case.  *See* Opp'n at 1, 5.

***Experience:***  *See* Fed. R. Civ. P. 23(g)(1)(A)(ii).  It is undisputed that CPM has extensive experience in complex antitrust class action litigation, and that it has successfully litigated cases involving price-fixing and anticompetitive conduct, demonstrating the firm's ability to effectively represent the putative indirect purchaser class.  *See* Opp'n at 5 (arguing a "dream team" of attorneys is not warranted).

For instance, Adam Zapala, the lead counsel in CPM's antitrust and unfair business practices group, has been recognized by the *Daily* Journal as one of the top 20 antitrust attorneys in California, and as one of its Top Antitrust Lawyers of 2025.  Mr. Zapala has served as lead or primary counsel in numerous complex antitrust actions, including: *Auto Parts*, *Capacitors*, *Resistors*, *Transpacific*, *Domestic Air*, *Broilers*, *Beef,* and *Deere.  See* Motion at 8–9.

The litigation team will also be assisted by Senior Managing Partner, Joseph Cotchett, who is a nationally-known and respected trial lawyer. Joseph Cotchett has tried over 100 cases to verdict, and he has settled hundreds more. Among numerous other achievements, he was the lead trial lawyer for 23,000 plaintiffs in the *Lincoln Savings & Loan Association/American Continental Corp.* case, winning one of the then-largest jury verdicts in United States history: $3.3 billion. *See id*. at 10–11.

***Work:*** *See* Fed. R. Civ. P. 23(g)(1)(A)(i). CPM has undertaken extensive factual and legal research; and it has been identifying potential experts. Moreover, CPM has been engaged in a broad investigation, which has included interviewing multiple potential plaintiffs and reviewing industry articles and publications, SEC filings, and investor presentations concerning the fire apparatus market and the individual Defendants. Just as CPM has done so with Hagens Berman and Gustafson Gluek in other complex matters cases, CPM intends to work collaboratively and efficiently with the other firms already appointed to lead this case.

***Resources CPM Will Commit to Representing the Class:*** *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). The La Crosse Plaintiffs do not dispute that CPM, which has been recognized as a "powerhouse" law firm, has substantial resources at its disposal to vigorously prosecute this case against the large, well-capitalized defendants. *See* Motion at 8; Opp'n at 6.

***Counsel's Knowledge of Applicable Law:*** *See* Fed. R. Civ. P. 23(g)(1)(A)(iii). CPM's attorneys, who have a broad range of experience in antitrust law, complex civil litigation, and California state law, have extensive knowledge in the applicable law. *See* Motion at 8–11.

***Other Pertinent Factors:*** *See* Fed. R. Civ. P. 23(g)(1)(B). CPM, which represents the City of Arcadia, the only California municipal entity, has a heightened interest in pursuing these claims.

## B. Appointing CPM to a Leadership Role Will Not Create Inefficiencies

The La Crosse Plaintiffs also make the argument that appointing CPM would create "inevitable inefficiency." *See* Opp'n at 6. The La Crosse Plaintiffs posit that the "current leadership consists of nine attorneys" in three law firms, and that "CPM alone lists six attorneys." *See id.*

First, CPM, whose extensive experience in antitrust cases is undisputed, will work cooperatively with co-counsel to avoid inefficiencies. *See Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 362 (E.D. Mich. 2006) ("While there is some concern that having two major firms acting as lead co-counsel may lead to inefficiencies in staffing and communications, it is anticipated that co-lead counsel will be cognizant of this risk and take steps to minimize it."). As a sophisticated firm that routinely works with co-lead counsel, including the very firms already appointed in this litigation in several matters, CPM will take ample steps to maximize efficiencies between law firms.

Second and relatedly, CPM has worked collaboratively and efficiently with two of the Interim Co-Lead Class Counsel, Gustafson Gluek and Hagens Berman, in complex antitrust litigation. In these matters, CPM worked closely and nimbly in leadership structures, which have involved overlapping responsibilities for litigation strategy, discovery, briefing, and settlement negotiations. *See, e.g.*, *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311 (E.D. Mich.) (CPM serving as co-lead counsel for indirect purchasers with Gustafson Gluek and Hagens Berman on the Plaintiffs' Steering Committee); *In re Deere & Company Repair Services Antitrust Litigation*, No. 3:22-cv-50188 (N.D. Ill.) (CPM serving as co-lead counsel with Gustafson Gluek); *In re Cattle and Beef Antitrust Litigation*, No. 0:22-md-03031 (D. Minn.) (CPM serving as co-lead counsel for the direct purchasers along with Gustafson Gluek); *In re Broiler Chicken Antitrust*

*Litig.*, No. 1:16-cv-08637 (N.D. Ill.) (serving as co-lead counsel along with Gustafson Gluek for indirect purchasers). Accordingly, the La Crosse Plaintiffs' assertions about "inevitable inefficiency" are both speculative and counterfactual.

Third, the La Crosse Plaintiffs' "inefficiency" argument does not make sense in this class action context. It has long been settled that "in the common fund case, if a percentage-of-the-fund calculation controls, inefficiently expended hours only serve to reduce the per hour compensation of the attorney expending them." *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993); *see also In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979–80 (7th Cir. 2003) ("if consumer class counsel invested too many hours, dallied when preparing the settlement, or otherwise ran the meter, the loss falls on counsel themselves. . . . . Inefficient conduct of the litigation therefore does not afford any reason to reduce class counsel's percentage of the fund that their work produced.").

Here, CPM's broad experience demonstrates that it can seamlessly integrate into the interim leadership structure, work cooperatively with current Interim Co-Lead Class Counsel, and advance the indirect purchaser class claims without disruption or the duplication of effort.

## C. Courts Routinely Appoint an Even Number of Co-Lead Counsel

In the Opposition, the La Crosse Plaintiffs further argue that the "three-firm co-lead structure strikes the balance of appropriate staffing." Opp'n at 6. The La Crosse Plaintiffs' argument fails for multiple reasons.

First, courts routinely appoint an even number of law firms as co-lead counsel. *See, e.g., Waudby v. Verizon Wireless Serv., LLC,* 248 F.R.D. 173, 174, 177 (D.N.J. 2008) (appointing four firms as interim class counsel); *In re Air Cargo Shipping Antitrust Litig.,* 240 F.R.D. 56, 57–59 (E.D.N.Y. 2006) (appointing four firms as co-lead counsel); *In re Pressure Sensitive Labelstock*

*Antitrust Litig.,* No. 03-MLD-1566, 2007 WL 4150666, at *22–23 (M.D. Pa. Nov. 19, 2007) (appointing four law firms as co-lead class counsel after previously appointing the same four firms as co-lead interim class counsel).

Second and relatedly, the La Crosse Plaintiffs themselves rely on cases appointing an even number of co-lead counsel. *See, e.g., In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600-WHP, 2012 WL 569195, at *1 (S.D.N.Y. Feb. 14, 2012) (appointing interim co-lead class counsel and choosing two law firms); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2017 WL 3641793, at *2 (N.D. Cal. Aug. 24, 2017) (appointing two law firms as interim co-lead class counsel).

Third, despite Co-Leads' contention that the existing three-firm co-lead structure is the best and most balanced, they have litigated cases where they are or were one of an even-number of co-lead firms. For instance, Gustafson Gluek and CPM are co-lead counsel for the commercial and institutional indirect plaintiffs in *In re Broiler Chicken Antitrust Litig.* (N.D. Ill.). Likewise, Gustafson Gluek and CPM are co-lead counsel for the direct purchaser plaintiffs in *In re Cattle and Beef Antitrust Litigation* (D. Minn.) along with two other firms.

Likewise, Hagens Berman is co-lead counsel for the consumer indirect plaintiffs in *In re Cattle and Beef Antitrust Litigation* (D. Minn.) along with one other firm, and co-lead counsel for the consumer plaintiffs in *Maximilian Klein, et al. v. Facebook, Inc.*, No. 3:20-cv-08570 (N.D. Cal.) along with one other firm.

Accordingly, sophisticated plaintiffs firms routinely work in leadership structures with an even number of law firms serving as co-leads.

**D.     California Plaintiffs, Whose Communities Face Distinct, Heightened Risks of Catastrophic Wildfires, Have a Major Interest in Ensuring That Its Interests Are Adequately Represented**

In the Opposition, the La Crosse Plaintiffs do not dispute that California municipalities and public entities, which face increasing risk of catastrophic wildfires, have a strong interest in this litigation, as they depend on competitively-priced fire apparatuses to fulfill their public safety obligations. *See* Opp'n at 9 (acknowledging the "risks faced by Californian plaintiffs and class members"). *See* Motion at 4.

Even so, the La Crosse Plaintiffs posit that the "argument implies separate co-lead counsel could be necessary" for each state. Opp'n at 6–8. In addition, the La Crosse Plaintiffs contend that the City of Arcadia does not represent a "distinct set of interests." *See* Opp'n at 1, 9.

First, the La Crosse Plaintiffs admit that California plaintiffs have a heightened interest in this case, in view of the increased risk of catastrophic wildfires. *See* Opp'n at 9 ("appreciat[ing] the risks faced by California plaintiffs and class members"). California's heightened interests in this case present a substantial distinction here.

In similar contexts, the Bolch Judicial Institute, Duke Law School, has explained that in MDL litigation, "The transferee judge may also ***consider the location of the applicant's clients because creating a leadership group that represents clients*** with claims in a variety of states will ***ensure that the differing interests are adequately represented*** and that unique state law issues are being given the requisite attention." Bolch Judicial Institute, Duke Law School, Guidelines and Best Practices for Large and Mass-Tort MDLs 44 (2nd ed. Sept. 2018) (emphasis added). *See also In re Fairlife Milk Prods. Mktg. & Sales Pracs. Litig.*, No. 19-cv-3924, 2020 WL 362788, at *1 (N.D. Ill. Jan. 22, 2020) (citing Duke Law Bolch Institute's "best practice" manual with approval).

7

Second, California is a major indirect purchaser state with more commerce than many of the other indirect purchaser states combined. *Cf. In re: Cavanaugh*, 306 F.3d 726, 729-40 (9th Cir. 2002) (in PSLRA litigation, the "presumptive lead plaintiff" is "the one who 'has the largest financial interest in the relief sought by the class'"). It is, thus, important for any class to include a class representative from California.

Third, the La Crosse Plaintiffs' concerns about additional states are hypothetical.

By contrast, here, it is undisputed that California Plaintiffs have a strong, distinct, interest in ensuring that their interests are adequately represented, in view of California's public-safety concerns. Plaintiff City of Arcadia is the only California-based plaintiff currently participating in these proceedings. California municipalities operate under distinct, heightened wildfire risk and escalating fire destruction. For communities such as Arcadia, competitively priced and reliable fire apparatus are essential tools for protecting lives, public infrastructure, and other property. Alleged anticompetitive price inflation in this market disproportionately burdens public entities in wildfire-prone states like California. In view of California's strong interests, it would serve the best interests of the class to modify the current leadership structure.

### E. The Case is in its Early Stages and there is No Prejudice to Any Party in Modifying the Leadership Order

Interim Co-Lead Counsel for the IPPs' Opposition to Plaintiff the City of Arcadia's Motion to Partially Modify the Leadership Structure reads as if the leadership group has been in place, and the litigation has been ongoing, for years. *See, e.g.* Opp'n at 8 (arguing that updating the leadership structure would "defeat the 'certainty and stability' that appointment of interim lead counsel is meant to attain").

Here, the litigation remains in its early stages. The first action was filed August 20, 2025. The Court consolidated the IPP actions and appointed leadership for the IPPs on December 30,

2025. The City of Arcadia's motion came only *seven days* after that order.  The Court has not even ruled on Defendants' motion to consolidate the DPP and IPP actions.  The litigation is in its infancy and is stayed through March 12, 2026.  In the great scheme of antitrust class actions, nothing much has happened.

Furthermore, on January 15, 2026, Defendants moved the Judicial Panel on Multidistrict Litigation ("JPML") to transfer all related actions to the United States District Court, Northern District of Illinois, pursuant to 28 U.S.C. § 1407.  The briefing schedule for the motion to transfer will conclude on February 18, 2026, and the next JPML hearing is scheduled for March 26, 2026.  The JPML will likely not decide on centralization and the transferee district until early to mid-April 2026.  Nothing will likely happen in any of the related actions until that decision given the thirteen (13) actions pending in three different district courts and one action pending in state court.

The Court has the discretion to modify the leadership structure, modifying the leadership structure will not disrupt this nascent litigation, and CPM has offered multiple reasons for the Court to appoint it among the co-leads for the IPPs.  The City of Arcadia respectfully requests the Court modify the leadership order to appoint CPM as a co-lead for the IPPs.

## III.     CONCLUSION

For the foregoing reasons and those in the Motion, Plaintiff City of Arcadia respectfully requests the Court grant the Motion and include Cotchett, Pitre & McCarthy, LLP in the interim leadership structure.

DATED: February 10, 2026                    Respectfully submitted,

                                            */s/ Adam J. Zapala*
                                            Adam J. Zapala (WIED Bar No. 245748)
                                            Elizabeth T. Castillo (WIED Bar No. 280502)
                                            Christopher F. Jeu (WIED Bar No. 247865)

9

Christian S. Ruano (WIED Bar No. 352012)
Lauren A. Devens *(*WIED Bar No. 364511)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cjeu@cpmlegal.com
cruano@cpmlegal.com
ldevens@cpmlegal.com

*Counsel for Plaintiff City of Arcadia and the Proposed Class*

Alex Phillips (WIED Bar No. 1098356)
Brittany Resch
Sam Strauss
Raina Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
aphillips@straussborrelli.com
bresch@straussborrelli.com
sam@straussborrelli.com
raina@straussborrelli.com

*Local Liaison Counsel*

10