| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | Case No. 2:26-md-03179-WCG<br>Hon. William C. Griesbach |

### DIRECT PURCHASER CLASS PLAINTIFFS' OBJECTION TO THE PROPOSED ORDER (ECF 47) FILED BY INDIVIDUAL ACTION COORDINATING COUNSEL

The Direct Purchaser Class Plaintiffs ("DPPs") do not object to the consolidation of non-class claims for pretrial coordination under Federal Rule of Civil Procedure 42(a), or to the designation of Simonsen Sussman LLP and Baron & Budd, P.C. as lead counsel for that track ("Individual Action Coordinating Counsel" or "IACC"). (ECF No. 49 (Minute Entry appointing IACC as "lead counsel" for the non-class plaintiffs).) In fact, as the Court noted in ECF 49, there was no objection to IACC playing that role. However, the proposed Order that IACC submitted (ECF 47) goes far beyond the ordinary meaning of "lead counsel" for non-class plaintiffs, especially those that are not presently before the Court. The IACC's Proposed Order would do considerably more than what efficient coordination of the three tracks requires. It would vest Individual Action Coordinating Counsel with sweeping authority over the conduct of that track, regardless of the rights of current or future non-class plaintiff municipalities. Moreover, the Proposed Order contemplates a role for the IACC that would impinge on the duties of class

counsel, affect the rights of absent class member municipalities, and make this case more complicated and less efficient than it would otherwise be.[1]

Accordingly, DPPs respectfully submit the following objections:

**1.     The Proposed Order was submitted without an attempt to meet and confer with class counsel or a supporting motion, brief, or argument.** Following this Court's request for IACC to file a proposed order regarding their leadership, IACC made no attempt to meet and confer with the DPPs' counsel to ensure that their Proposed Order was appropriate and would not interfere with the prosecution of the class cases.[2] Despite using the Proposed Order to carve out a disproportionate role that will likely interfere with the efforts of class counsel, IACC have proposed no solutions to facilitate coordination between class counsel and counsel for individual plaintiffs. On top of all of this, no motion has been filed seeking the relief embodied in the Proposed Order, no brief has been submitted, and no legal authority has been offered to the Court

---

[1] To put this into perspective, according to the U.S. Fire Administration ("USFA"), there are 27,116 fire departments listed with the National Fire Department Registry. *See*: https://apps.usfa.fema.gov/registry/summary. According to USFA, this represents 91% of all fire departments, placing the total number of fire departments in the U.S. somewhere around 29,000. The IACC represents just 16 municipalities. Although it is unknown just how many fire departments are within each of these localities, the number likely does not exceed 290, which would be 1% of the total. Assuming that there is one fire department within each locality represented, the IACC represents roughly .00055% of all fire departments. The IACC complaints seek relief for those municipalities named as plaintiffs, and no more. Thus, a successful outcome for those cases would barely put a dent in the total harm to taxpayers across the Country. By contrast, without a need to file even one more case, a successful outcome for the class(es), if certified, provides nationwide relief. That is the benefit of class action practice. The cases with the greatest ability to impact the greatest number of plaintiffs should be directing the litigation. Here, that impact is represented by the cases in the class tracks.

[2] IACC did conduct a meet and confer *after* filing their Proposed Order, but refused to address any of the issues raised by DPPs' counsel during the call and then raised the prospect of sanctions on DPPs' counsel should they file an objection to the Proposed Order.

justifying the appointment of IACC with the sweeping substantive powers the Proposed Order would confer.

2. **The Proposed Order would violate the rights of plaintiff municipalities not presently before this Court.** Rather than providing for the *coordination* of other parties' actions, the Proposed Order would impose a burden on the Court and effect a *presumption* that other municipalities are bound to the decisions and supervision of IACC—whether they want to be or not. Of course, the Court can order coordination among various municipalities, but the Proposed Order goes far beyond that. It is not up to IACC to decide how a particular city or county or town should pursue or resolve its claims; instead, it is up to the leadership of that municipality, advised by its corporate counsel, with approval as necessary by elected officials.

Specifically, Paragraph 3 grants IACC control of future-filed non-class actions arising from "substantially the same allegations" once the Clerk of Courts provides those new litigants with the Proposed Order unless (a) an objection is filed within 10 days and (b) the objection is sustained by the Court. (ECF 47, ¶ 3.) This provision is unworkable because this case is brought by the purchasers of fire trucks and related apparatus, which in many cases are municipalities or other governmental entities. For these plaintiffs, the decision to retain outside counsel and pursue litigation is made by elected officials, after notice, public meetings, resolutions, and votes. At the very least, the Proposed Order should allow non-class plaintiff municipalities at least 30-days (rather than 10-days) to review, evaluate, and determine whether to object to the terms of the Proposed Order or leadership by IACC.

3. **The Proposed Order would intrude into attorney/client relationships of municipalities that retained counsel other than IACC.** By going far beyond coordination, the Proposed Order takes the extraordinary step of interjecting IACC into attorney/client relationships for which IACC was not engaged. Paragraph 9, for example, authorizes the IACC to assign work,

control attorney compensation, collect time records (which would need to be reviewed and redacted to review privileged material), and ***negotiate and enter into settlement agreements with the Defendants***. Effectively, the Proposed Order vests IACC with carte blanche authority over the claims of municipalities that (i) are not yet before this Court; (ii) have had no opportunity to evaluate or to be heard on a litigation structure that affects their interests; and (iii) may have determined—or may yet determine—that they wish to have their case directed by their own chosen counsel and on terms negotiated with that counsel. And it should go without saying that each municipality that opts out after a class is certified should make its own decisions about whether to settle and, if so, on what terms through its chosen counsel.

The Proposed Order should, but does not, contain safeguards against impairment of the attorney/client relationships or fee arrangements for parties not presently before the Court. It does not, for instance, provide that the bills of attorneys whose work IACC will approve will be audited by a third-party accounting firm, be submitted to it or the Court under seal, or reserve for the Court the administration of any yet-to-be-ordered common benefit funds. The Proposed Order does not offer any mechanism for counsel in later-filed individual actions to *not* participate in the structure it proposes, even to the extent that structure imputes to IACC the authority to settle the claims of non-class plaintiffs represented by other firms. This concern is not limited to potential municipal plaintiffs who have not yet filed. Those that have retained IACC may well decide that their interests diverge with respect to aspects of this litigation. These entities may decide that they would be better served by being part of one of the classes or by changing counsel. They should have the freedom to make those decisions, just as any other litigant could.

**4.        The Proposed Order is in tension with the limited substantive effect of consolidation under Federal Rule of Civil Procedure 42(a)**. Paragraph 2 of the Proposed Order correctly recognizes that consolidation has no substantive effect on the individual claims of the

Individual Action Plaintiffs. But the substantial authority the Proposed Order provides to IACC — *e.g.*, to control discovery and motion practice, allocate fees, and even settle cases—goes beyond Rule 42(a). *See Hall v. Hall*, 584 U.S. 59, 76 (2018) ("[T]hrough consolidation under Rule 42(a) 'one or many or all of the phases of the several actions may be merged. But merger is never so complete in consolidation as to deprive any party of any substantial rights which he may have possessed had the actions proceeded separately.'") (quoting 3 J. Moore & J. Friedman, MOORE'S FEDERAL PRACTICE § 42.01, pp. 3050–3051 (1938)).

5.    **The Proposed Order would import class-action settlement processes and fee mechanics without the judicial oversight that justifies them in the class context**. Critically, the Proposed Order grants the IACC the ability to bind non-class plaintiffs that are not the IACC's own clients to settlement agreements. But unlike in a class action, where class counsel does have authority to bind absent class members, there is no opt-out procedure set forth in the Proposed Order.

Paragraphs 9(h), 9(j), and 9(k), moreover, limit fee eligibility for attorneys representing non-class plaintiffs to "work assigned by" IACC, authorize it to allocate any fee award among the various counsel representing non-class plaintiffs "based on the reasonable judgment of [IACC]," and require monthly time-and-expense reports from each firm representing any non-class plaintiff. These provisions are drawn from the framework typically applied in class actions or where the Court has ordered a common benefit fund. They are out of place for non-class municipal plaintiffs because, as things currently stand, the Court does not exercise the same oversight role over settlement and attorneys' fees in the individual actions that it does in a class action.

In a class case, by contrast, the Court exercises direct oversight over the reasonableness of any class settlement, Fed. R. Civ. P. 23(e)(2), and over the reasonableness of any attorneys' fee

award, Fed. R. Civ. P. 23(h), to protect absent class members. Those protections do not apply on the individual-action track.

All of this is imposed without a notice or an opportunity to be heard by the non-class plaintiffs who will be bound. While it may be appropriate for the Court to enter an order related to fees for the non-class cases, it is premature at this point. Imposing class-action-style fee allocation and time-reporting requirements on individual-action counsel who have not been and will not be afforded an opportunity to be heard, would create a regime that has neither the contractual protections of an ordinary individual action nor the judicial protections of a class action.

6. **The Proposed Order would give counsel for a small group of plaintiffs a disproportionate and improper role in litigation without an obligation to work with class counsel.** Class counsel are fiduciaries for the class. *See Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011) (recognizing that class counsel owe a fiduciary duty to the class). They owe duties of loyalty and adequate representation to every member of the class—not only the named representatives—and they are obligated, under the supervision of the Court, to direct the strategy, prosecution, and disposition of the class claims. *See generally* Federal Rule of Civil Procedure 23.

Counsel for plaintiffs that have not brought a class action occupy a different position. As is the norm for non-class counsel, IACC's duties run solely to their own clients, and nothing in the Proposed Order expands their obligations to non-client individual action plaintiffs. Any order entered by the Court regarding leadership by IACC should include provisions to ensure fair treatment of non-class plaintiffs that have not retained IACC.

The Proposed Order also carves out a role for the IACC that will intrude on the role of lead counsel for the two class tracks. In a multidistrict litigation that proceeds on parallel class and non-class tracks, counsel for individual plaintiffs play an important, but limited, role: they coordinate

scheduling with class counsel and they participate in discovery or motion practice to the extent either affects their individual clients. They do not direct or control the conduct of discovery, motion practice, or settlement on behalf of the classes, and a small group of named municipal plaintiffs cannot be the "tail wagging the dog" of the larger classes for whom class counsel are subject to Rule 23(g).

The Proposed Order inverts these roles. It would vest counsel for sixteen municipal plaintiffs with sole authority to file, present positions, conduct and direct discovery, enter binding stipulations including on settlement matters, control which work by other firms is compensable, and allocate any fees for all other non-class plaintiffs. That structure gives those counsel a role that exceeds the proper role of counsel for individual non-class plaintiffs.

Indeed, the Proposed Order offers no mechanisms for the IACC to coordinate with class counsel in any fashion. For all intents and purposes, the Proposed Order grants IACC to pursue a separate track *independent* from the class tracks, which will not "secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. Of course, while such matters may be addressed in a Case Management Order, such an order would in all likelihood arise from a collaborative process between counsel, not a unilateral order filed without a meet-and-confer or supporting motion.

**7.      DPPs Believe the Court Should Enter an Order Similar to *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, No. 05-CV-7097, MDL No. 1715, 2006 WL 3227883, at \*1 (N.D. Ill. Nov. 7, 2006).** The Court will see various orders entered in hybrid class action/individual cases. It is true that some are similar to what IACC have proposed, but those cases typically involve all parties' agreement to a specific structure. There has been no such agreement here and IACC simply announced without ever seeking consensus the role they would play, possibly to increase their potential fee award later on in the case. It is, however, premature

to address compensation at this time, and DPPs believe the focus should be on fairness, efficiency, and case management. The Northern District of Illinois' order in *Ameriquest Mortgage* offers a roadmap for a case management structure that balances the need for lead counsel to coordinate the litigation of individual actions without impairing the rights of non-class plaintiffs who have retained counsel other than IACC:

### D. Individual Plaintiffs

An Individual Claims Steering Committee should be formed and co-chaired by the NCLC and the CLG. ECLG, the NCLC, and the CLG, as well as any additional firms designated by the Steering Committee, shall represent the individual plaintiffs on the Executive Committee.

The purpose of the Individual Claims Steering Committee is to help coordinate the individual plaintiffs into a cooperative entity that can then enjoy litigation economies of scale, including broader access to discovery and streamlined briefing. The Individual Claims Steering Committee shall be responsible for coordinating to the extent feasible the views of individual plaintiffs and working to present a consensus position of the individual plaintiffs. NCLC and CLG shall not represent individual defendants[3], may not control the litigation of those cases beyond the extent permitted by plaintiffs and their counsel, may not interfere with the individual representation of these plaintiffs, and may not speak for individual plaintiffs except as authorized by the plaintiffs or their counsel.

*Id*. at *4. To facilitate coordination between the class and non-class tracks, the *Ameriquest Mortgage* Court created a committee comprised of a majority of members associated with the class cases and a minority associated with non-class cases. The DPPs submit a structure similar to that ordered in *Ameriquest Mortgage* will facilitate efficient case management that balances the need for IACC to coordinate the individual actions without abrogating the rights of individual plaintiffs they do not represent.

---

[3] The reference to "individual defendants" appears to be a typo in the Court's order.

## **Conclusion**

For these reasons, the Court should reject the Proposed Order (ECF No. 47) submitted by IACC and, instead, enter an order for coordinating—not controlling—litigation of individual claims in this Action that will not interfere with class counsel's ability to prosecute the class claims.

Dated this 21st day of May, 2026.

Respectfully Submitted:

<table>
<tr>
<td>

_____s/ Gregory P. Hansel_____
Gregory P. Hansel (WIED No. 607101)
Michael S. Smith (WIED No. 004986)
Elizabeth F. Quinby (WIED No. 006168)
Michael D. Hanify (WIED No. 010257)
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
Tel: (207)791-3000
Email: ghansel@preti.com
msmith@preti.com
equinby@preti.com
mhanify@preti.com

*Interim Co-Lead Direct*
*Purchaser Class Counsel and Co-Counsel for*
*City of Augusta*

</td>
<td>

_____s/ Beth J. Kushner_____
Beth Kushner, SBN 1008591
Christopher E. Avallone, SBN 1095465
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Tel: (414) 276-1122
Email: beth.kushner@vonbriesen.com
christopher.avallone@vonbriesen.com

*Interim Direct Purchaser Class Liaison*
*Counsel and Co-Counsel for City of Augusta*

</td>
</tr>
<tr>
<td>

_____s/ Michael J. Flannery_____
Michael J. Flannery (WIED No. 110084)
CUNEO GILBERT FLANNERY &
LADUCA, LLP
2 CityPlace Drive
Second Floor
St. Louis, MO 63141
Tel: (314) 226-1015
Email: mflannery@cuneolaw.com

*Interim Co-Lead Direct*
*Purchaser Class Counsel and Counsel for*
*The Newstead Fire Co., Inc., and The*
*Metropolitan Government of Nashville &*
*Davidson County*

</td>
<td>

Evelyn Riley*
Cody McCracken*
CUNEO GILBERT FLANNERY &
LADUCA, LLP
2445 M Street NW, Suite 740
Washington, DC 20037
Tel: (202) 789-3960
Email: evelyn@cuneolaw.com
cmccracken@cuneolaw.com

*Interim Co-Lead Direct*
*Purchaser Class Counsel and Counsel for*
*Counsel for The Newstead Fire Co., Inc., and*
*The Metropolitan Government of Nashville &*
*Davidson County*

</td>
</tr>
</table>

_s/ Danielle M. Weiss_
Jeffrey A. Barrack (WIED No. 78438)
Danielle M. Weiss (WIED No. 033342005)
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-0600
Fax: (215) 963-0838
E-mail: jbarrack@barrack.com
dweiss@barrack.com

_Interim Co-Lead Direct_
_Purchaser Class Counsel and Counsel for_
_City of Philadelphia_


William J. Ban (WIED No. 1870690)
BARRACK, RODOS & BACINE
Eleven Times Square
640 8th Avenue, 10th Floor
New York, New York 10036
Tel.: (212) 688-0782
Fax: (212) 688-0783
E-mail: wban@barrack.com

_Interim Co-Lead Direct_
_Purchaser Class Counsel and Counsel for_
_City of Philadelphia_

Stephen R. Basser (WIED No. 121590)
Samuel M. Ward (WIED No. 216562)
BARRACK, RODOS & BACINE
600 West Broadway, Suite 900
San Diego, CA 92101
Tel.: (619) 230-0800
Fax: (619) 230-1874
E-mail: sbasser@barrack.com
sward@barrack.com


_Interim Co-Lead Direct_
_Purchaser Class Counsel and Counsel for_
_City of Philadelphia_


Joseph R. Saveri (WIED No. 130064)
Ronnie Spiegel (WA State Bar No. 33721)*^
David Seidel (CA State Bar No 307135)*
JOSEPH SAVERI LAW FIRM, LLP
550 California Street, Suite 910
San Francisco, California 94108
Tel: (415) 500-6800
Fax: (415) 395-9940
E-mail: jsaveri@saverilawfirm.com
rspiegel@saverilawfirm.com
dseidel@saverilawfirm.com

_Interim Co-Lead Direct_
_Purchaser Class Counsel and Counsel for_
_City of Revere_

*_Application for Admission to be filed_
^ Located in Washington State

44381720.3.DOCX