# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

IN RE: FIRE APPARATUS ANTITRUST
LITIGATION

Case No. 2:26-md-3179-WCG

Hon. William C. Griesbach

## DIRECT (NON-CLASS) ACTION PLAINTIFFS' RESPONSE TO OBJECTIONS TO PROPOSED LEADERSHIP ORDER

Direct (Non-Class) Action Plaintiffs (DAP) hereby respond to Direct Purchaser Class Plaintiffs' (DPP) and Defendants' Objections (ECF Nos. 57, 60) to DAPs' Proposed Order Appointing Lead Counsel and Establishing a Separate Track for the Direct (Non-Class) Actions (ECF No. 47) ("Proposed DAP Leadership Order"). This Response is supported by the Declaration of Catherine S. Simonsen and the exhibits attached thereto, the points and authorities cited herein, and any further argument and authority entertained by the Court.

**TABLE OF CONTENTS**

I.  Introduction ................................................................................................................. 1

II. The Court Should Overrule the Meritless Objections and Enter DAPs' Proposed
    Leadership Order ......................................................................................................... 7

    A.  DAPs' Proposed Leadership Order —Like DPPs' and IPPs'—Appropriately and
    Necessarily Outlines the Proposed Contours of the Leadership Appointment ............... 7

    B.  DAPs Were Not Required to Meet and Confer or File a Motion ................................... 8

    C.  The Proposed Leadership Order Gives Lead DAP Counsel Duties and Responsibilities
    that Courts Routinely Give Non-Class Counsel ........................................................... 10

    D.  DAPs' Proposed Order Facilitates Coordination Across the Tracks ............................ 19

    E.  DPPs Have Made No Showing that DAPs' Proposed Leadership Order "Interferes"
    with the Prosecution of the Class Cases; But DPPs Have Demonstrated that, Without
    DAPs' Proposed Leadership Order, DPPs Will Interfere with the Prosecution of the
    Direct Actions ............................................................................................................. 20

    F.  The Proposed Leadership Order Does Not "Violate" the Rights of Future Potential
    Direct Action Plaintiffs ............................................................................................... 24

III. Defendants' Alternative Proposal—to "Reject" DAPs' Proposed Leadership Order,
    Presumably Vacate Judge Conway's DPP Leadership Order Which the Court Already
    Confirmed, and Order All Parties to Meet and Confer on a Global CMO—Is a Delay
    Tactic, Not a Solution ................................................................................................. 26

IV. Conclusion ................................................................................................................. 27

i

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Superior Court*,
  9 Cal. 5th 642 (2020) ................................................................................................ 24

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .............................................................................................. 23

*Graham v. Peltz (In re Wendy's Co. Shareholder Derivative Action*),
  44 F.4th 527 (6th Cir. 2022) ..................................................................................... 13

*In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, Nos. 1715,
  05-CV-7097, 2006 U.S. Dist. LEXIS 81498 (N.D. Ill. Nov. 7, 2006) ............... 1, 17, 18, 19, 24

*In re Forefront Data Breach Litig.*, No. 21-cv-887,
  2022 U.S. Dist. LEXIS 245951 (E.D. Wis. Jan. 27, 2022) ........................................ 7

*In Re: Air Crash Disaster at Florida Everglades*,
  549 F.2d 1006 (5th Cir. 1977) ............................................................................. 13, 14

*People v. Maplebear Inc.*,
  81 Cal. App. 5th 923 (2022) ...................................................................................... 24

*Rincon Band of Luiseño Mission Indians etc. v. Flynt*,
  70 Cal. App. 5th 1059 (2021) .................................................................................... 23

**Statutes**

Cal. Bus. & Prof. Code § 17203 .................................................................................... 5

Interim Lead DPP Class Counsel are determined to relegate Direct (Non-Class) Action Plaintiffs (DAPs) to the sidelines of this MDL. DPP Class Counsel have a general feeling that only class counsel gets true leadership authority, and non-class cases must be treated as the "tail" wagged by the class-cases "dog." ECF No. 57 at 7. But they cite virtually no authority for this self-interested preference, and have no response to the mountain of precedents Lead DAP Counsel provided them in advance of their filing, cited herein. In fact, the only authority DPPs do cite makes clear that non-class cases cannot be "subject to the control of the same attorneys responsible for class actions." *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, Nos. 1715, 05-CV-7097, 2006 U.S. Dist. LEXIS 81498, at *11 (N.D. Ill. Nov. 7, 2006). This Court has already recognized a separate DAP Track and has appointed the undersigned Lead Counsel for that track. The Proposed Order DAPs submitted at the Court's invitation merely outlines the contours of that leadership appointment—a routine but necessary means of giving counsel true leadership authority, and not just an empty title. Based on Lead DAP Counsel's experience as lead counsel in MDLs with class and non-class tracks, DAPs understand that the way this Court will manage this multi-track, complex MDL is by creating order and structure. The Court does so by creating tracks; appointing leadership for each track; providing a mechanism for consolidation of any future-filed case into the appropriate track; and clearly setting forth each lead counsel's leadership authority. Only then do order, efficiency, and forward movement take the place of sprawl, chaos, disorder, and delay. That is precisely what DAPs' Proposed Order facilitates. DAPs request the Court enter it without further delay.

## I. Introduction

On May 13, 2026, the Court recognized the Direct (Non-Class) Action Track as a separate track from the two class action tracks, and the Court appointed Simonsen Sussman LLP

and Baron & Budd, P.C. as Lead DAP Counsel.[1] The Court solicited input from all parties in attendance before entering this order. DPP Counsel expressed agreement with the three tracks, and the Court overruled DPP Counsel's objection to appointing Lead DAP Counsel.[2] The Court *further* ordered DAPs to submit a proposed order in which—as Lead DAP Counsel understood— they were to outline the proposed contours of that appointment.[3] DAPs followed the Court's direction and submitted their Proposed DAP Leadership Order later that day. ECF No. 47.

This is largely the same thing Interim Lead *DPP* Class Counsel had done when they asked Judge Conway on November 20, 2025, and this Court on May 1, 2026, to appoint them leaders for their track. They did not confer with DAP (Non-Class) Counsel. They did not confer with Defendants. They submitted a four-page proposed order specifying their proposed roles and responsibilities as DPP leadership.[4] Those proposed orders go far beyond merely appointing Interim Lead DPP Class Counsel as such. The orders give them the duty and authority to "coordinat[e] pre-trial activities on behalf of all [DPPs]," "[d]etermine and present to the Court and Defendants, [DPPs'] position on all matters," "[c]oordinate, direct, and monitor the work of

---

[1] *See* ECF No. 49 at 1 ("The Court appoints Simonsen Sussman LLP and Baron & Budd, P.C. as lead counsel as to the direct (non-class) individual plaintiffs action."); Tr. of Tel. Conf. (May 13, 2026) (Simonsen Decl. Ex. 2) at 18:13–15 ("Simonsen Sussman and Baron & Budd, I'll appoint them lead counsel on the track of the direct purchaser plaintiff nonclass action.").

[2] *See* ECF No. 49 at 1 ("Catherine Simonsen, Michael Flannery, and Steve Berman agree with the proposal for 3 separate tracks. . . . The Court notes there is an agreement to lead counsel for the direct (non-class) individual plaintiffs action . . . . Mr. Flannery addresses concern as to the track of the individual cases if the class is certified. The Court notes that the class has not yet been certified."); Tr. of Tel. Conf. (May 13, 2026) (Simonsen Decl. Ex. 2) at 7:19–9:1.

[3] ECF No. 49 at 1 ("Counsel may submit a proposed order for appointment of lead counsel as to the direct (non-class) individual plaintiffs action."); Tr. of Tel. Conf. (May 13, 2026) (Simonsen Decl. Ex. 2) at 18:16–17 ("If you want to submit a proposed order for that, I'll go ahead and enter it.").

[4] *See* ECF No. 18-1; [Proposed] Order on Consolidation and Appointment of Interim Co-Lead Class Counsel and Interim Liaison Class Counsel, *City of Augusta v. Oshkosh Corp., et al.*, No. 25-cv-01543, ECF No. 14-1 (Nov. 20, 2025).

all [DPP] counsel," "[a]llocate among [DPP] counsel any award of attorney's fees and expenses," and a host of other responsibilities that give substance to the label "Lead Counsel."[5]

Interim Lead IPP Class Counsel proposed the same "meat on the bones" of their leadership authority when they submitted to Judge Conway on December 4, 2025, and this Court on May 22, 2026, a proposed order appointing them leaders over the IPP Class Track.[6] IPP Class Counsel did not consult with Lead DAP Counsel before submitting their proposed order. Yet they seek, for example, to "[e]nter into stipulations with opposing counsel and any non-party counsel for the conduct of the litigation," "[p]repare and distribute periodic status reports to the parties as needed," "[m]aintain adequate time and disbursement records covering services for [IPPs'] counsel," and the other *same* authority that Lead DAP Counsel and Interim Lead DPP Class Counsel sought for their respective tracks.[7]

DAPs do not object to any of these orders outlining lead counsel responsibilities for *other* tracks. DAPs in fact welcome these orders, as they impose structure and organization over the two other tracks with which DAPs will need to coordinate throughout this litigation.

But it must go both ways. Just as DAPs have had no say in leadership over other tracks,

---

[5] ECF No. 18-1 at 3–4 ¶ 4; *see* [Proposed] Order on Consolidation And Appointment of Interim Co-Lead Class Counsel and Interim Liaison Class Counsel at 2 ¶ 1, *City of Augusta v. Oshkosh Corp., et al.*, No. 25-cv-01543, ECF No. 14-1 (Nov. 20, 2025) (same, and ordering "[a]ny later filed actions related to the Direct Purchaser Antitrust Actions will be subject to consolidation with the Direct Purchaser Antitrust Actions").

[6] *See* ECF No. 62-1; [Proposed] Order Granting Indirect Purchaser Plaintiffs' Motion to Consolidate and to Appoint Co-Lead Class Counsel, *City of La Crosse v. Oshkosh Corp., et al.*, No. 25-cv-01252, ECF No. 42-5 (Dec. 4, 2025).

[7] *See* ECF No. 62-1 at 2–4 ¶¶ 2–5; [Proposed] Order Granting Indirect Purchaser Plaintiffs' Motion to Consolidate and to Appoint Co-Lead Class Counsel at 2 ¶ 1, *City of La Crosse v. Oshkosh Corp., et al.*, No. 25-cv-1252, ECF No. 42-5 (Dec. 4, 2025) (same, and ordering "[a]ny later filed actions related to the Indirect Purchaser Antitrust Actions will be subject to consolidation with the Indirect Purchaser Antitrust Actions").

3

and the roles and responsibilities those other counsel will have within their respective tracks, so DPPs do not have a say in the organizational and leadership structure of the DAP Track. Indeed, it is telling that IPPs have lodged no similar objection to DAPs' Proposed Order.

Putting standing aside, DPPs have pointed to no authority or precedent that calls into question the appropriateness—indeed, necessity—of the leadership order DAPs have proposed. To the contrary, they are forced to admit: "The Court will see various orders entered in hybrid class action/individual cases. *It is true that some are similar to what [Lead DAP Counsel] have proposed*." ECF No. 57 at 7 (emphasis added). To be clear, DAPs' Proposed Order was motivated by a single purpose—not to control or dictate future direct-action plaintiffs' or their counsel's cases, not to "impinge on the duties of class counsel," and not, as DPPs speculate, "to increase their potential fee award later on in the case" (ECF No. 57 at 1–2, 7)—but to help the Court bring order to a litigation that continues to grow with each passing day.[8]

As discussed more fully below, time and time again, in cases involving no class tracks, or class and non-class tracks—*Insulin*, *Opioids*, *PFAS*, *Dealership Management Systems*, *Aqueous Film-Forming Foams Products*, and many more—courts have given precisely the kinds of responsibilities and authority to lead counsel outlined in DAPs' Proposed Order. "Lead counsel" is simply not a concept confined to class cases. Instead, it is a common, crucial tool MDL courts use to prevent the disorder that results from leadership vacuums, with dozens or even hundreds of plaintiffs filing complaints, serving discovery requests, arguing motions, and communicating with defendants and the court. Giving Lead DAP Counsel the actual authority to lead their track—and not just an empty title—will be crucial to prevent the "splinter[ing]" that will

---

[8] Lead DAP Counsel have now filed 19 separate cases and have been retained or authorized to file numerous additional cases in the near term.

4

otherwise occur as additional Direct Actions are inevitably filed by other law firms.[9]

DAPs are not a rounding error in this litigation. Each DAP seeks nationwide injunctive relief under the federal Clayton Act—"the unwinding of each of [Defendants'] unlawful combinations" and "such divestitures as are necessary or proper to restore distinct, separate, independent, and viable businesses." DAP Consolidated Amended Complaint (CAC) ¶¶ 385, 1098(c), ECF No. 53 (May 20, 2026). Moreover, as DAPs already apprised the Court, three DAP complaints assert claims under the California Unfair Competition Law (UCL) in the name of the People of the State of California for nationwide injunctive relief, restitution, and penalties. *Id.* ¶¶ 23, 1065–79, 1098(d). DPPs are simply wrong when they say that "[t]he [DAP] complaints seek relief for those municipalities named as plaintiffs, and no more." ECF No. 57 at 2 n.1. To the contrary, the Direct Actions include law enforcement claims akin to State Attorney General actions seeking to restore *all* of Defendants' ill-gotten gains to those from whom they were taken, and to restore competition to the relevant markets. No class need be certified for the Court to order this widescale relief.[10]

If any case introduces complexity and inefficiency into this litigation, it is the DPP class case, whose Interim Lead Counsel have refused, at every turn, to work cooperatively with DAP Counsel, from failing to engage with the draft case management order that DAP Counsel

---

[9] Tr. of Tel. Conf. (May 13, 2026) (Simonsen Decl. Ex. 2) at 17:22 ("I don't want to see it splintered."). Interim Lead DAP Counsel have already heard from a law firm that is considering filing one or more direct, non-class actions. This law firm supports Lead DAP Counsel and has already sought input from them about their potential filings. *See* Simonsen Decl. ¶ 32.

[10] *See* Cal. Bus. & Prof. Code § 17203 ("Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure [concerning class actions], but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.").

circulated to all parties, to refusing to work with DAPs on a joint status report, to now wasting the parties' and the Court's time and resources by objecting to the entry of a routine administrative order to streamline this litigation. *See* Simonsen Decl. ¶¶ 8–29 & Ex. 1.

DAPs will have little chance of obtaining the relief they urgently need if their counsel are Lead Counsel in name only. They need a recognized, Court-ordered seat at the leadership table, or else DPP Counsel will continue to seek to minimize and sideline them. DPP Counsel have already expressly admonished Lead DAP Counsel that their "class cases are the drivers of the litigation" and instructed Lead DAP Counsel not to "file any more cases." Simonsen Decl. ¶¶ 9, 11 & Ex. 1. Their May 21 Objection is just their most recent tactic to marginalize the Direct Actions. Indeed, despite the Court ordering Simonsen Sussman and Baron & Budd as Lead Counsel for the DAP Track during the Telephone Conference, overruling DPP Counsel's objection at the conference that they should have only a "coordinating or some other title," and confirming that leadership appointment in a written order two days later,[11] DPPs still refuse to acknowledge the Court's order, referring to Lead DAP Counsel throughout their Objection by the made-up title "Individual Action Coordinating Counsel." ECF No. 57 (*passim*).[12]

DAPs respectfully request the Court put an end to this disregard for the Court's order and

---

[11] *See supra*, notes 1–2.

[12] Lead DAP Counsel have been surprised and disappointed by DPP Class Counsel's hostile reception. Lead DAP Counsel have come to understand that DPP Class Counsel seek to stop Lead DAP Counsel from filing cases because each new direct action belies paragraph 273 of DPPs' First Amended Consolidated Class Action Complaint and undermines their grounds for class certification. *See* ECF No. 59 ¶ 273 ("A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the Class is impractical and *Class Members do not have interest in individually controlling the prosecution of separate actions*. . . . The damages suffered by individual members of the Class compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would *not be feasible for members of the Class to seek redress* for the violations of law herein alleged.") (emphases added).

campaign against the Direct Actions. The Court should overrule DPPs' meritless and hypocritical objections and enter DAPs' Proposed Leadership Order without further delay.

## II. The Court Should Overrule the Meritless Objections and Enter DAPs' Proposed Leadership Order

### A. DAPs' Proposed Leadership Order —Like DPPs' and IPPs'—Appropriately and Necessarily Outlines the Proposed Contours of the Leadership Appointment

Defendants' only objection to DAPs' Proposed Leadership Order is that it "goes well beyond that issue" of appointment of lead counsel. ECF No. 60 at 1. DPPs also object on this basis. ECF No. 57 at 1, 3. This ground for their objections fails. The Court did not invite DAPs to submit a proposed leadership order until *after* it had appointed Lead DAP Counsel. *See* ECF No. 49 at 1. There was no need for the Court to order DAPs to submit a proposed order for the sole purpose of confirming Lead DAP Counsel's appointment to that title. The Court had already ordered that appointment. As DAPs understood it, in inviting DAPs to submit a proposed order, the Court was seeking the same kind of order that DPPs had already submitted—and that the Court had already confirmed—namely, a multi-page proposed order that "went well beyond" the mere appointment, and set forth the actual duties and responsibilities of Lead DAP Counsel. This is what courts do when they appoint lead counsel. *See, e.g.*, *In re Forefront Data Breach Litig.*, No. 21-cv-887, 2022 U.S. Dist. LEXIS 245951, at *10 (E.D. Wis. Jan. 27, 2022) ("IT IS ORDERED that the motion for appointment of interim class counsel filed by the Klinger-Wolfson Group (ECF No. 18) is GRANTED. The court will separately enter the Group's proposed order, which identifies interim counsel's responsibilities . . . .").

The entirety of the DAP Proposed Leadership Order tracks the elements of DPPs' and IPPs' proposed leadership orders. It establishes that Lead DAP Counsel will be the spokespersons for the Direct Actions, will be responsible for discovery strategy, will argue and present motions and other documents to the Court, will assign out common-benefit work and

7

track time spent on such work, and will lead settlement negotiations with Defendants. It also sets forth a procedure for new direct actions to be consolidated into the DAP Track and for new direct-action plaintiffs to object if they do not wish to be consolidated. DPPs and IPPs proposed largely the same roles, responsibilities, and procedures for their respective tracks.[13] This is what a leadership order is for. Without it, numerous questions arise about who speaks for the track and whether new plaintiffs can enter the litigation and start doing work on their own without coordinating with the track to which they belong. A leadership appointment without an order confirming lead counsel's authority is no appointment at all. Which—it is beyond evident—is exactly why DPPs wish for the Court not to enter one for DAPs.[14]

### B. DAPs Were Not Required to Meet and Confer or File a Motion

DPPs and Defendants take issue with the fact that DAPs did not confer with them before submitting their Proposed Order. But the Court expressly ordered that "Counsel may submit a proposed order for appointment of lead counsel as to the direct (non-class) individual plaintiffs action." ECF No. 49 at 1. The Court did not order Lead DAP Counsel to meet and confer. DAPs had no obligation to do so, when DPPs and IPPs did not meet and confer with anyone before submitting *their* proposed leadership orders.

DPPs appear to object on the additional grounds that "[t]he Proposed Order was

---

[13] *Compare* ECF No. 47 (Proposed DAP Leadership Order), *with* DPPs' and IPPs' proposed leadership orders cited *supra*, notes 4–7.

[14] Defendants assert that the Proposed DAP Leadership Order "address[es] an array of other case management issues that should be addressed in a case management order pertaining to all actions," but does not further explain this assertion or identify a single provision in the Proposed Order that does not relate to the separate DAP Track and leadership for that track that the Court has already ordered. ECF No. 60 at 1. They also fail to explain why, if they believe the Proposed DAP Leadership Order goes beyond leadership-related items, they have not objected to the virtually identical leadership orders that DPPs and IPPs submitted, both before and after the MDL was formed.

8

submitted without . . . a supporting motion, brief, or argument." ECF No. 57 at 2. But the Court did not require a motion or a brief. On April 10, the Court ordered the parties to submit status reports on the status of leadership. ECF No. 2. DAPs complied and filed a status report on May 8, apprising the Court that all DAPs supported the appointment of Simonsen Sussman and Baron & Budd. ECF No. 31. DAP Counsel included pertinent information about their qualifications: Simonsen Sussman's collective decades of experience prosecuting the federal and state antitrust laws for federal and state antitrust enforcement agencies, including in senior director roles and the firm's current service as outside counsel for the State of California in the high-profile multi-state challenge to the merger of broadcast television station behemoths Nexstar and TEGNA, *see* Simonsen Decl. ¶ 2; and Baron & Budd's decades-long track record representing public entities, including as lead counsel in MDLs with both class and non-class tracks, and other complex litigation throughout the United States, *see id.* ¶ 3.

At the Telephone Conference, the Court solicited input from DPPs, IPPs, and Defendants. All parties agreed with the establishment of three tracks, including the DAP Track, and all parties had the opportunity to object to the Lead DAP Counsel appointment. Indeed, DPP Counsel had alerted the court in their status report that "a disagreement exists as to whether to appoint counsel for the [Direct] Actions as lead counsel for their individual cases or provide some other title," ECF No. 33 at 2, and at the conference, DPP Counsel Michael Flannery explicitly raised their objection that giving Lead DAP Counsel the title of "lead" would create "confusion." The Court allowed Mr. Flannery to make his argument and overruled DPPs' objection.[15] Having heard the parties' positions and knowing all DAPs supported the appointment, the Court appointed Lead

---

[15] *See supra*, note 2.

9

Case 1:25-cv-01252-WCG    Filed 05/26/26    Page 12 of 32    Document 141

DAP Counsel.[16] All that was left was an order outlining the contours of that appointment—just as DPPs had already submitted. That is precisely what the Court invited—a proposed order.[17] Nothing more. That is all Lead DAP Counsel was required to submit.

### C. The Proposed Leadership Order Gives Lead DAP Counsel Duties and Responsibilities that Courts Routinely Give Non-Class Counsel

DPPs' primary grounds for objecting to the Proposed DAP Leadership Order is their general sense—unsupported by authority—that true leadership roles and responsibilities only belong in class tracks, while the most that "lead counsel" for direct actions should be able to do is to "coordinate" with the class tracks. Indeed, they even go so far as to disregard this Court's May 13 order and insist on referring to Lead DAP Counsel as "Individual Action Coordinating Counsel." ECF No. 57 (*passim*).

DPPs are wrong. Courts routinely appoint lead counsel for direct (non-class) actions and routinely give them the same roles and responsibilities given to lead class counsel.

For example, in *In Re: Insulin Pricing Litigation*, an MDL pending in the District of New Jersey, the court ordered three tracks: (1) a Self-Funded Payer Track, (2) a State Attorney General Track, and (3) a Third-Party Payer Class Track, because—analogous to this case—:

> While the cases in this MDL share common core factual allegations, these cases nevertheless diverge in certain respects, including as to: (a) the specific claims asserted; (b) the named Defendants against whom those claims are asserted . . .; (c) whether those claims are asserted on an individual or class basis; and (d) the type of Plaintiffs asserting claims against these Defendants (e.g., payers, local governments, or states).[18]

---

[16] *See supra*, notes 1–2.

[17] *See supra*, note 3.

[18] Case Management Order #3 at 2, § 1, ¶ 5, *In Re: Insulin Pricing Litigation*, No. 2:23-md-03080, ECF No. 34 (D.N.J. Dec. 6, 2023), attached as Ex. 3 to Simonsen Decl.; *see id.* at 5, § 2, ¶ 3(a) ("The TPP [Third-Party Payer] Class Track shall not include any individual action within the Self-Funded Payer Track.").

The Court appointed separate lead counsel for each of the three tracks—including appointing a Baron & Budd attorney as Co-Lead Counsel for the Self-Funded Payer Track and another Baron & Budd attorney as Co-Lead Counsel for the State Attorney General Track.[19]

The Court further ordered that "Plaintiffs' Co-Lead Counsel in each MDL litigation track shall have *ultimate responsibility* for managing and directing the litigation . . . in such track."[20] The court continued:

> Such duties include *conducting the litigation* and coordinating and directing the efforts of any committees [ordered] above or which Plaintiffs' Co-Lead Counsel form (in their sole discretion) to assist them in prosecuting their clients' claims within their tracks. . . .
>
> In addition, Co-Lead Counsel in each MDL litigation track shall work to efficiently *coordinate discovery among these tracks* . . . .
>
> Plaintiffs' Co-Lead Counsel within each litigation track shall maintain responsibility to:
>
>> [a.i.] Initiate, coordinate, and conduct all pretrial discovery *on behalf of all Plaintiffs in their respective MDL litigation track who file actions* in this Court or whose actions are transferred to this Court pursuant to 28 U.S.C. § 1407 as related to this *In re Insulin Pricing Litigation* MDL. . . .
>>
>> [b.i.] Submit any motions presented to the Court *on behalf of all Plaintiffs* as well as oppose, when necessary, any motions submitted by the Defendants or third parties. . . .
>>
>> [c.i.] Initiate, coordinate, and conduct requisite meet and confers with Defendants, confer with Defendants regarding procedural matters, and negotiate and enter stipulations with Defendants regarding this litigation. . . .
>>
>> [c.ii.] Explore or designate other counsel to explore, develop, and pursue *settlement options with Defendants on behalf of Plaintiffs on behalf of their*

---

[19] *Id.* at 3–4, § 2, ¶¶ 1–3; *see id.* at 4, § 2, ¶ 1(b) (appointing Baron & Budd attorney Co-Lead Counsel for the Self-Funded Payer Track); *id.* at 4, § 2, ¶ 2(b) (appointing Baron & Budd attorney Co-Lead Counsel for the State Attorney General Track).
[20] *Id.* at 6, § 4, ¶ 1 (emphasis added).

11

*track. . . .*[21]

In later CMOs, the court further ordered "the creation and maintenance of a litigation fund for shared expenses incurred for the common benefit of the Self-Funded Payer Track" and ordered "Co-Lead Counsel for the Self-Funded Payer Track" to "establish and administer an account at a financial institution of their choosing to receive funds that are sufficient to cover Plaintiffs' expenses for the prosecution of the Self-Funded Payer Track (the 'SFP Litigation Fund')."[22]

As another example, in another "hybrid" MDL involving class and non-class tracks, *In Re: Dealership Management Systems Antitrust Litigation*, pending in the Northern District of Illinois, the court appointed counsel for a direct-action plaintiff, Authenticom, Inc., as Plaintiffs' Co-Lead Counsel, alongside counsel for the Dealership Class, to lead the litigation together.[23] "Responsibilities of Plaintiffs' Co-Lead Counsel" (which, again, included counsel for the direct-action plaintiff) included "coordinat[ing] the activities of Plaintiffs in conducting this litigation toward final resolution" and "tak[ing] the lead in litigating these matters on behalf of all Plaintiffs, namely, they shall play the lead role in making strategic, tactical, and procedural decisions on behalf of the Plaintiffs' counsel."[24] The court further ordered that Co-Lead Counsel were to have similar duties and responsibilities as the *In Re: Insulin Pricing Litigation* court gave to Co-Lead Counsel for the class and non-class tracks in that litigation, including to:

> Conduct all discovery in a coordinated and consolidated manner on behalf of and for the benefit of all Plaintiffs, and bind Plaintiffs and all putative class members in the resolution of any discovery disputes; . . .

---

[21] *Id.* at 6–8, § 4, ¶ 1 (emphases added).

[22] Case Management Order #8 at 1, *In Re: Insulin Pricing Litigation*, No. 2:23-md-03080, ECF No. 149 (D.N.J. April 16, 2024), attached as Ex. 7 to Simonsen Decl.

[23] Order at 1, *In Re: Dealership Management Systems Antitrust Litigation*, No. 1:18-cv-00864, ECF No. 123 (April 16, 2018 N.D. Ill.), attached as Ex. 8 to the Simonsen Decl.

[24] *Id.* at 3.

Submit any motions presented to the Court on behalf of all Plaintiffs . . . ;

Examine or designate other counsel to examine witnesses and introduce evidence at hearings on behalf of Plaintiffs; . . .

Explore or designate other counsel to explore, develop, and pursue settlement options with Defendants on behalf of Plaintiffs. . . . ;

Assign litigation-related tasks to Plaintiffs' counsel who communicate their willingness to work for the common benefit of all Plaintiffs, taking into consideration the particular strengths and weaknesses of counsel requesting such assignments;

Monitor the activities of the PSC and other co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided.

*Id.* at 3–4. These are precisely the kinds of responsibilities included in the Proposed DAP Leadership Order.

DPP Counsel appear to believe that these kinds of leadership roles are only appropriate in class cases, where class counsel owe a duty to absent class members under Rule 23 of the Federal Rules of Civil Procedure. But as the above examples make plain, lead counsel orders are necessary and appropriate outside of and regardless of Rule 23. "[T]he selection of lead counsel is one of the means by which a district court, through its inherent power, manages proceedings." *Graham v. Peltz (In re Wendy's Co. Shareholder Derivative Action)*, 44 F.4th 527, 532 (6th Cir. 2022). As the Manual for Complex Litigation explains in the context of mass tort litigation:

Early organization of the counsel who have filed the various cases transferred or consolidated for pretrial purposes is a critical case-management task. The judge will often need to appoint lead counsel or a committee of counsel to coordinate discovery and other pretrial preparation. Lead counsel and committees of counsel for the plaintiffs . . . perform a host of functions.

Manual for Complex Litigation (Fourth) § 22.62 (2004); *see also In Re: Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977) (MDL court has inherent authority "to bring management power to bear upon massive and complex litigation to prevent it from monopolizing the services of the court"). DPP Counsel's argument that the Proposed Order "goes

13

beyond Rule 42(a)" (ECF No. 57 at 5) misses the point: it is "not open to serious question that a federal court in a complex, consolidated case may designate one attorney or set of attorneys to handle pre-trial activity on aspects of the case where the interests of all co-parties coincide." *In Re: Air Crash Disaster*, 549 F.2d at 1014. That power is not diminished or abrogated in any way by Rule 42(a).

Indeed, while hybrid class/non-class cases are less common, examples abound of MDLs involving no class tracks at all, in which courts routinely and uncontroversially appoint lead counsel for various tracks of direct-action plaintiffs and give them the same leadership authority outlined in the Proposed DAP Leadership Order. Lead DAP Counsel knows, because Baron & Budd has served as lead counsel for various tracks in numerous of these MDLs.

For example, in *AFFF*—involving no putative class actions at all—the court appointed a Plaintiffs' Executive Committee, chaired by Co-Lead Counsel, and gave them the responsibility to, among other things, "[i]nitiate, coordinate and conduct all pretrial discovery on behalf of plaintiffs in the MDL," "[c]ause to be issued in the name of all plaintiffs the necessary discovery requests, motions and subpoenas," "[e]xamine witnesses on behalf of plaintiffs," "[s]ubmit and argue any . . . motions . . . as well as oppose . . . any motions," and "[n]egotiate and enter into stipulations with defendants."[25]  If anything, leadership orders are even more essential in cases with non-class tracks, as any number of direct actions can be filed by any number of counsel at any time.

DPP Counsel object in particular to paragraphs 9(h), 9(j), and 9(k) of the Proposed DAP

---

[25] Organization of Plaintiffs' Counsel at 6–9 ¶¶ 13, 19, 42, *In Re: Aqueous Film-Forming Foams Products Liability Litigation (AFFF)*, MDL No. 2:18-mn-2873-RMG (D. S.C. March 20, 2019), attached as Ex. 4 to Simonsen Decl.

Leadership Order, which provide that Lead Counsel will have the responsibility for:

> h. Identifying and assigning work and tasks that are eligible for attorneys' fees to counsel for Direct Action Plaintiffs; coordinating, directing, and monitoring the work of all Direct Action Plaintiffs' counsel to ensure the efficient, orderly, non-duplicative, and cost-effective prosecution of Direct Action Plaintiffs' claims; . . .
>
> j. Allocating any attorneys' fees or expenses that the Court may award in this matter amongst the various Direct Action Plaintiffs' counsel participating in the case based on the reasonable judgment of Lead Counsel as to the contributions of each respective firm to the success of the case; [and]
>
> k. On a monthly basis, collecting reports of contemporaneously prepared attorney and paralegal time and expense records from each firm representing any Direct Action Plaintiff. . . .

ECF No. 47 at 4–6 ¶ 9. DPP Counsel claim "[t]hese provisions . . . are out of place for non-class municipal plaintiffs" (ECF No. 57 at 5).

Again, DPP Counsel are wrong. These provisions are common in non-class MDLs, including those cases with "non-class municipal plaintiffs" (ECF No. 57 at 5). Without them, dozens if not more attorneys could unilaterally decide to devote time and resources to a duplicative issue or project, or to work that does not actually serve the common interests of the plaintiffs, leading to wasted resources and unwarranted depletion of the common-benefit fund. This would not serve the public entity plaintiffs in this litigation. The Court needs a mechanism for identifying compensable common-benefit work and costs and the share of any settlement or judgment payable to the common benefit fund by all plaintiffs in the MDL. That is exactly what the Proposed DAP Leadership Order does, consistent with a host of CMOs in other MDLs.

For example, in *In AFFF*—a non-class action MDL—the Court ordered "[t]he following Time and Expense Guidelines are to be utilized by any counsel seeking fees and/or expense reimbursement":

> a. All time and expenses submitted must be incurred only for work authorized by Plaintiffs' Co-Lead Counsel or Liaison Counsel. Such authorization should be memorialized in writing contemporaneous to the current time and expense

15

submission. . . .

c. Time and expense submissions must be submitted via the forms that may be obtained from Plaintiffs' Liaison Counsel. . . .

f. Time and expense submissions must be submitted timely, every six weeks . . . to Plaintiffs' Liaison Counsel. . . .

g. Failure to submit time and expense submissions, following a two-week grace period and a once-only thirty-day extension that may be granted only by Liaison Counsel, shall preclude further common benefit work and shall exclude that month's time from proper submission, absent written approval of the Co-Lead Counsel and/or by order of the Court.

h. An attorney's failure to secure authority to incur common benefit time and expenses, or failure to maintain and timely provide such records or to provide sufficient description of the activity, may be grounds to deny the recovery of attorney's fees or expenses in whole or part. [26]

With respect to common-benefit costs, the court ordered: "Shared Costs are costs incurred for the common benefit of the MDL as a whole. . . . All Shared Costs must be approved by Plaintiffs' Liaison Counsel prior to payment."[27]

As another example, in the Social Media Addiction cases, which involved both individual personal injury claims and claims by various public entities, including school districts, the court set "specific guidelines and rules for work done and expenses incurred for the common benefit of all Plaintiffs" in the MDL, and specifically stated that "Common-Benefit Counsel shall keep contemporaneous billing records of the time spent in connection with Common Benefit Work on this MDL, indicating with specificity the hours (in tenth-of-an-hour increments) and billing rate, along with a description of the particular activity."[28]

---

[26] Applicability and Scope of Order at 5 ¶¶ 11–12, *AFFF*, MDL No. 2:18-mn-2873-RMG (D. S.C. Apr. 26, 2019), attached as Ex. 5 to Simonsen Decl.
[27] *Id.* at 8–9 ¶ 14(c).
[28] Common Benefit Order at 1, 8 § B, *In Re: Social Media Adolescent Additions/Personal Injury Products Liability Litigation*, No. 4:22-MD-03047-YGR, ECF No. 169 (March 6, 2023), attached as Ex. 6 to Simonsen Decl.

16

As the foregoing precedents make clear—and as DPP Counsel implicitly concede in arguing that these time-and-expense-reporting procedures are only appropriate in class cases—nothing about these commonplace processes invades the attorney-client privilege. Common-benefit work is work undertaken pursuant to the common interest of all plaintiffs jointly prosecuting the cases; the limited disclosure of time and expense reports to Lead Counsel who share this common interest does not waive or invade the privilege and is necessary to ensure the efficient and effective prosecution of common issues and to facilitate appropriate compensation at the end of the litigation. It is common, necessary, and appropriate for a court to give non-class plaintiffs' lead counsel the authority and responsibility to authorize common-benefit work and determine what work, by whom, is compensable.[29] This case is no exception.

DPPs offer a single, cherry-picked example of a case management order they think this Court should follow, on which they have not met and conferred with any other parties: the November 2006 CMO entered in the *Ameriquest* lending fraud MDL in the Northern District of Illinois. *See* Simonsen Decl. ¶ 25, 28. In that case, the court recognized "three distinct types of cases: (1) borrower class actions, (2) non-borrower class actions under the Fair Credit Reporting Act (FCRA), and (3) individual, non-class suits," and held that "given the probability that discreet substantive issues will arise in each type of case, *lead plaintiffs' counsel will be determined for each category* and substantive motions may vary by category." *Ameriquest*, 2006 U.S. Dist. LEXIS 81498, at *5–6 (emphasis added). The court proceeded to do just that. It

---

[29] DPPs quibble that DAPs should have "provide[d] that the bills of attorneys whose work [Lead DAP Counsel] will approve will be audited by a third-party accounting firm" and "be submitted to it or the Court under seal," and should have "reserve[d] for the Court the administration of any yet-to-be-ordered common benefit funds." ECF No. 57 at 4. Lead DAP Counsel have no objection to the Court modifying their Proposed Order to include these additional provisions— which are notably absent from DPPs' and IPPs' proposed leadership orders.

appeared two law firms co-lead counsel for the class cases, and a separate "Individual Claims Steering Committee" for the non-class cases. *Id.* at *9, *12. The court went out of its way to clarify that the "individual [non-class] plaintiffs . . . would bear the risk of potential conflicts of interest if they were to be represented by or otherwise subject to the control of the same attorneys responsible for class actions seeking damages," and "[t]he individual plaintiffs . . . are entitled to as independent a prosecution of their cases as is practicable," and "[f]or that reason, we hold that the . . . firms serving as lead class counsel are not to represent or in any way direct the litigation of any non-class cases." *Id.* at *11.

It is worth pausing to observe that this order—DPPs' only cited authority—directly contradicts their repeated assertions that their "class cases are the drivers of the litigation" and that the Direct Actions are nothing more than the "tail" of the class-cases "dog." DPPs' own cited case makes clear that they have no right to dictate the prosecution of the Direct Actions—and indeed, that it would create a conflict of interest to allow them to do so.

The *Ameriquest* court did go on to order more limited leadership roles for the non-class cases than DAPs have *unanimously* requested here. *See id.* at *11–12. But in *Ameriquest*, that was the role that the individual (non-class) action plaintiffs requested, because, in their words, the "non-class cases . . . involve individual issues, often based on discussions arising between the individual plaintiff and local (branch-based) employees of Ameriquest. The necessary localized discovery is best handled by the individual plaintiffs' counsel, under the supervision of this Court."[30] No DAP has identified a remotely similar need in this case. This is not a mortgage

---

[30] Plaintiffs' Joint and Agreed Organization and Case Management Plan at 7, *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, Nos. 1715, 05-CV-7097, ECF No. 162 (N.D. Ill. June 13, 2006).

fraud case; it is an antitrust case, based on anticompetitive mergers and exclusionary dealing. There are no localized issues; every alleged relevant market is nationwide in scope. It requires counsel with substantial antitrust knowledge and merger experience and deep familiarity with the facts and issues to manage and prosecute—namely, Lead DAP Counsel. All DAPs believe Lead DAP Counsel should have full leadership authority.

Moreover, it appears that in *Ameriquest*, there was no request by defendants for a consolidated amended direct-action complaint—all parties appear to have agreed that those individual complaints would remain as fractured, one-off actions. Here, Defendants requested, the Court ordered, and DAPs have already filed their CAC, and the Court has already appointed Lead DAP Counsel and expressed its preference that this MDL not become "splintered." The relevant precedents are *Insulin* and the numerous other CMOs giving true leadership authority over non-class tracks—not a procedurally aberrational mortgage fraud case from 20 years ago.

It would be one thing if any direct-action plaintiff had voiced objection to the leadership roles proposed. But none has. And at least one law firm contemplating filing additional direct actions has expressed support for Lead DAP Counsel's role. *See* Simonsen Decl. ¶ 32. The only objections come from class counsel who have no standing to make them, and whose self-interest in getting the largest damages class certified is threatened by the Direct Actions.

### D. DAPs' Proposed Order Facilitates Coordination Across the Tracks

DPPs next complain that "the Proposed Order offers no mechanisms for [Lead DAP Counsel] to coordinate with class counsel in any fashion." ECF No. 57 at 7. As an initial matter, DPPs overlook the explicit provision in the Proposed Order that "[t]he Direct Actions shall be coordinated with the Direct Purchaser Class Actions and the Indirect Purchaser Class Actions proceeding on parallel tracks in this litigation." ECF No. 47 at 2 ¶ 2. But more fundamentally, they misunderstand that the *appointment* of Lead DAP Counsel itself—with the concomitant

authorities outlined in the Proposed Order—is what enables coordination with the class tracks. The class tracks will not be able to effectively coordinate with what Lead DAP Counsel believes is likely to become dozens of direct actions filed by multiple law firms. They—as much as DAPs—need true lead counsel authority for the DAP Track to facilitate coordination. Finally, and once again, whatever provisions for "coordinating" with lead counsel for other tracks DPPs believe should have been included in DAPs' Proposed Order, are tellingly missing from their own proposed leadership order. *See supra*, note 4.

### E. DPPs Have Made No Showing that DAPs' Proposed Leadership Order "Interferes" with the Prosecution of the Class Cases; But DPPs Have Demonstrated that, Without DAPs' Proposed Leadership Order, DPPs Will Interfere with the Prosecution of the Direct Actions

In their Objection, DPPs assert that "the Proposed Order contemplates a role for [Lead DAP Counsel] that would impinge on the duties of class counsel" and "will likely interfere with the efforts of class counsel." ECF No. 57 at 1–2. Nowhere do DPPs provide any explanation for this assertion, nor were they able to articulate any in Lead DAP Counsel's meet and confer with them in advance of their filing. *See* Simonsen Decl. ¶¶ 24–29.

What *is* clear, however, is that if the Court does not empower Lead DAP Counsel with lead counsel authority, Interim Lead DPP Class Counsel will use their leadership appointment to interfere with DAPs' prosecution of their cases. As discussed, DPP Class Counsel have already admonished Lead DAP Counsel that their "class cases are the drivers of the litigation" and not to "file any more cases." Simonsen Decl. ¶¶ 9, 11 & Ex. 1. They have also repeatedly and deliberately omitted DAP counsel from (while including IPP class counsel in) case management planning, and repeatedly ignored and disregarded the basic rights and interests of DAPs. *See id.* ¶¶ 9–20. As one of many examples, in the proposed CMO that Interim Lead DPP Class Counsel circulated to Defendants after having only conferred with IPP counsel (and not DAP counsel),

20

they omitted a date for DAPs to file their consolidated amended complaint—after DAP counsel

had informed them in writing that Defendants had requested, and they intended to file, one—and

included in their proposed case schedule five months during which nothing but class certification

briefing (which does not apply to the Direct Actions) would occur, before any party could file a

motion for summary judgment in any of the tracks. *See id.* ¶¶ 18–19.

Indeed, in their Objection, they come right out and say it:

> In a multidistrict litigation that proceeds on parallel class and nonclass tracks,
> counsel for individual plaintiffs play an important, but limited, role: they coordinate
> scheduling with class counsel and they participate in discovery or motion practice
> to the extent either affects their individual clients. They do not direct or control the
> conduct of discovery, motion practice, or settlement on behalf of the classes.

ECF No. 57 at 6–7. This is a breathtaking assertion for which DPPs cite not a single authority. It

is inconsistent with the numerous examples discussed above, of cases in which courts recognized

that where substantial differences between class and non-class tracks exist, the non-class track(s)

must be recognized as independent tracks with independent interests, and they must have

separate leadership appointed to advance those interests.

Even after an oral order at the May 13 Telephone Conference and a written order

thereafter confirming Lead DAP Counsel's appointment, Interim Lead DPP Class Counsel still

refuse to recognize the Direct Actions as a separate track that stands on its own, with separate

leadership. Fundamentally, they object not to DAPs' Proposed Order, but rather to the order the

*Court* already entered, after having given DPP Counsel the opportunity to voice any objections.

That Telephone Conference is over. The DAP Track exists. The DAPs have Court-appointed

Lead Counsel. It is time for the Court to enter an order putting meat on the bones of that

appointment—just like Interim Lead DPP Class Counsel have.[31] Only then can DAPs hope for the incessant mistreatment from DPP Counsel to end and can all plaintiffs move on to prosecuting their cases.

The Direct Actions are not "a small group of named municipal plaintiffs" or "the 'tail wagging the dog' of the larger classes." ECF No. 57 at 7. As discussed, DAPs seek nationwide injunctive relief under the Clayton Act, and the California UCL claims brought in the name of the People of the State of California by the Los Angeles and San Diego County Counsel and the San Diego City Attorney's Office in their law enforcement capacities seek similar injunctive relief and the restoration of *all* of Defendants' ill-gotten gains to those from whom they were taken. If DPPs fail to get their putative class certified, they will be left with claims on behalf of *six* municipalities as small as a borough with a population of 6,000. By contrast, the populations served by the fire departments of DAPs include the over 4 million people served by the Los Angeles County Fire Department; over 3 million people served by the San Diego County Fire Protection District and City of San Diego Fire-Rescue Department; and the many millions more served collectively by the other 16 Direct Action Plaintiffs.

Moreover, there are numerous, fundamental differences between the Direct Actions and the class actions. Most apparent, the class actions focus the vast majority of their allegations on an alleged *conspiracy* between REV Group, Oshkosh, and Rosenbauer entities, mentioning certain defendants' mergers and acquisitions only in passing, and mistakenly construing Clayton

---

[31] *See* ECF No. 49 at 1 ("The Court confirms the appointment of interim-lead counsel for the direct purchaser plaintiffs class action as previously ordered by Judge Conway."); Order on Consolidation and Appointment of Interim Co-Lead Class Counsel and Interim Liaison Class Counsel, *City of Augusta v. Oshkosh Corp., et al.*, No. 25-cv-01543, ECF No. 19 (Nov. 25, 2025) (Judge Conway's order appointing Interim Lead DPP Class Counsel and outlining contours of leadership duties and authority).

Act Section 7 as outlawing "restraints of trade" (which are the domain of Sherman Act Section 1). *See, e.g.*, ECF No. 59 (DPPs' First Amended Consolidated Class Action Complaint); *id.* at ¶¶ 282–86 (asserting "Restraint of Trade in Violation of Section 7" claim). By contrast, no Rosenbauer entity is a defendant in the Direct Actions. And instead of a conspiracy, the Direct Actions allege that the acquisitions of (1) REV Group and its private equity backer AIP, (2) Oshkosh and its subsidiary Pierce, and (3) Boise Mobile Equipment and its subsidiary BME Fire Trucks (in which Pierce holds a 25% interest) lessened competition in violation of Clayton Act Section 7 and constituted attempted monopolization under Sherman Act Section 2 and corresponding state antitrust laws. *See* ECF No. 53 (DAP CAC) ¶¶ 285–339. Also, unlike the class actions, the Direct Actions allege that Pierce's conduct in the replacement parts markets violated Sherman Act Section 2, Clayton Act Section 3, and state monopolization laws. *Id.* ¶¶ 340–77. These are very different sets of cases.

Moreover, because of case law holding that cities and counties do not have private standing to bring California UCL claims, the only viable UCL claims in this MDL are those by the Los Angeles and San Diego County Counsel and San Diego City Attorney's Office in the name of the People of the State of California.[32] "[T]he unfair competition law's scope is broad." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). It is an equitable statute, which makes illegal any business practice that violates any other law, or otherwise constitutes unfair competition, including because it violates the policy and spirit of the antitrust laws. *Id.* at 180–81, 186–87. These County and City Counsel are required to actively supervise and direct the litigation of these claims, which are akin to State Attorney General actions.

---

[32] *See, e.g.*, *Rincon Band of Luiseño Mission Indians etc. v. Flynt*, 70 Cal. App. 5th 1059, 1089–93 (2021) (collecting cases).

Again—a very different set of cases.[33]

None of the DAPs' claims are or can be subsumed within or otherwise covered by class counsel's prosecution of the class actions. As in *Insulin*—and as this Court has already held—they deserve their own track with their own leadership, both in name and in practice.

### F. The Proposed Leadership Order Does Not "Violate" the Rights of Future Potential Direct Action Plaintiffs

Having no grounds for their empty assertion that the Proposed DAP Leadership Order "impinges" on class counsel, the DPPs spend the majority of their Objection making arguments they have no standing to make, on behalf of potential future direct-action plaintiffs their counsel does not represent. These arguments fare no better.

For example, DPPs argue, "[t]he Proposed Order does not offer any mechanism for counsel in later-filed individual actions to *not* participate in the structure it proposes." ECF No. 57 at 4. Not true. As DPPs later concede, the Proposed Order gives all newly filed DAPs 10 days to object to being assigned to the DAP Track.[34]

DPPs also object that DAPs' Proposed Order, in "authoriz[ing] [Lead DAP Counsel] to assign work, control attorney compensation, collect time records (which would need to be reviewed and redacted to review privileged material), and negotiate and enter into settlement

---

[33] *See, e.g.*, *Abbott Labs. v. Superior Court*, 9 Cal. 5th 642, 658 (2020) ("[T]he text of the UCL grants broad civil enforcement authority to district attorneys [and county and city counsel], and this broad grant of authority is consistent with the statute's purpose and history."); *People v. Maplebear Inc.*, 81 Cal. App. 5th 923, 934–35 (2022) ("[T]he City of San Diego is acting in its own law enforcement capacity to seek civil penalties for . . . violations traditionally prosecuted by the state . . . within the state's historic police power. . . . [T]he [purchasers] are not the real party in interest in this case, the People are.") (quotation marks and alterations omitted).

[34] DPPs argue a 10-day objection period is not sufficient. But in the single case they cite in their Objection, the Northern District of Illinois ordered the same process and timing. *See Ameriquest*, 2006 U.S. Dist. LEXIS 81498, at *7. In any event, the Court is free to lengthen the objection period if it is so inclined.

agreements with the Defendants," "[e]ffectively . . . vests [Lead DAP Counsel] with carte blanche authority over the claims of municipalities" they do not represent. ECF No. 57 at 3–4. This is of course not the case. The common-benefit fee-and-expense provisions in the Proposed Order related only to *common-benefit work* that benefits all DAPs, not for work that a specific DAP's counsel does just for that DAP. And again, to the extent a new DAP files a case with material differences from the DAP CAC and successfully objects to assignment to the DAP Track, Lead DAP Counsel will have no leadership authority over that case.

That said, this Court has already made clear: "I don't want to see it splintered . . . . I want to see to the extent we can make this . . . a three track case, keep it together so that the defendants aren't faced with fighting on all kinds of different -- different tracks."[35] The way the Court accomplishes this is by presumptively limiting this MDL to the three tracks and requiring new plaintiffs—whether they be DAPs, Class DPPs, or Class IPPs—to allow track leadership to steer their track's ship.[36] Whether DPPs like it or not, this is just the way leadership works—where class and non-class actions are concerned—in complex, multi-track MDLs. This is the way it works because it enables the Court to efficiently and effectively manage the litigation.

Towards the end of their Objection, DPPs brazenly argue that this Court should not give Lead DAP Counsel real leadership authority because "[t]hose that have retained [Lead DAP Counsel] may well decide that . . . they would be better served by being part of one of the classes

---

[35] Tr. of Tel. Conf. at 17:22–18:1 (May 13, 2026), attached as Ex. 2 to Simonsen Decl.
[36] *See, e.g.*, Applicability and Scope of Order at 2 ¶ 2, *AFFF*, MDL No. 2:18-mn-2873-RMG (D. S.C. Apr. 26, 2019), attached as Ex. 5 to Simonsen Decl. ("This Order and all subsequent pretrial orders or CMOs shall be binding on all parties and their counsel in all cases currently pending, or subsequently transferred to, removed to, or pending in the MDL proceedings and shall govern each case in the MDL proceedings unless this Order explicitly states that it relates only to specific cases.").

25

or by changing counsel." ECF No. 57 at 4. Of course, the same is equally true of the Class DPPs: any one of them may decide to change counsel, and yet they would still be subject to Interim Lead DPP Class Counsel's decisions for the DPP Track. Regardless, each DAP has the full freedom to decide at any moment to drop its Direct Action, in which case it would remain a member of one or more of the classes to the extent it fits the class definition. Delineating the contours of Lead DAP Counsel's leadership authority does nothing to change this.

### III. Defendants' Alternative Proposal—to "Reject" DAPs' Proposed Leadership Order, Presumably Vacate Judge Conway's DPP Leadership Order Which the Court Already Confirmed, and Order All Parties to Meet and Confer on a Global CMO—Is a Delay Tactic, Not a Solution

Defendants assert that, "[f]or now, the Court should reject the Proposed Order with an understanding that the Non-Class Plaintiffs will either provide a new proposed order consistent with the Court's directive or confer with class counsel and Defendants regarding any additional terms that should be included." ECF No. 60 at 2. As DAPs understand Defendants, Defendants must also believe that Judge Conway's four-page order outlining the contours of Interim Lead DPP Class Counsel's roles and responsibilities—which also goes "well beyond" the Court's May 13 order merely appointing Interim Lead DPP Class Counsel—either was not confirmed by this Court on May 13, or should also be "rejected." But it cannot both be the case that Interim Lead DPP Class Counsel's four-page proposed leadership order that Judge Conway issued still stands, but Lead DAP Counsel's Proposed Order giving it parallel leadership authority over the DAP Track must be "rejected." Either they both go beyond the strict issue of leadership appointments and should be accordingly struck, or they are both permissible elaborations on what that leadership appointment means in practice.

To be clear, DAPs are eager to meet and confer with Defendants and class counsel on a CMO or, more likely, numerous CMOs that will be necessary to effectively steer this MDL.

26

DAPs tried numerous times in the weeks leading up to the May 13 Telephone Conference to solicit feedback from Defendants on their proposed CMO. *See* Simonsen Decl. ¶¶ 10–20. Defendants refused, asserting that discussions regarding a CMO should not occur until the Court resolved lead counsel appointments. *Id.* ¶ 12. Now that the Court has resolved lead counsel appointments, opening the door to substantive CMO discussions, Defendants conveniently seek to close it again by piggybacking on a manufactured issue by DPPs about the proper scope of those appointments.

DAPs should have been allowed to spend the last two weeks pushing their cases forward. Instead, they have been forced to engage in meet and confers and letter-writing campaigns with DPPs over the appropriate scope of their leadership appointment, among other unnecessary issues. They have been forced to expend substantial time and resources explaining in painstaking detail what has been, up until this MDL, so obviously appropriate by way of direct (non-class) action leadership authority that it has been routinely stipulated to by defendants, class counsel, and non-class counsel alike, and approved by courts, in case after case after case.

## IV. Conclusion

When class counsel make this much noise about a separate group of cases in an MDL, it is usually for a reason: they are worried. Class counsel are worried that class members will hire DAP Counsel to prosecute their claims. Defendants are worried the Direct Actions have alleged serious antitrust claims. That class counsel and Defendants have cause to worry should only reinforce the Court's decision to recognize the DAP Track as a separate track and give Lead DAP Counsel the authority to run it. The Court should enter the Proposed DAP Leadership Order and further order DAPs, DPPs, IPPs, and Defendants—as Defendants invited in their Objection, ECF No. 60—to meet and confer on a case management order "to secure the just, speedy, and inexpensive determination of the cases." ECF No. 2 (Order Setting Telephone Conference) at 1.

Dated May 26, 2026    Respectfully Submitted,

By: /s/ Catherine S. Simonsen
Catherine S. Simonsen (CA SBN 307325)
Thomas G. Mattes (CA SBN 355010)
**SIMONSEN SUSSMAN LLP**
418 Bamboo Lane, Suite C-18
Los Angeles, CA 90012
Tel: (917) 747-5196
Fax: (646) 357-8447
Email: catherine@simonsensussman.com
E-mail: thomas.mattes@simonsensussman.com

Shaoul Sussman (NY SBN 5820782)
Nico Gurian (NY SBN 5590591)
Braden Fain (NY SBN 6198287)
**SIMONSEN SUSSMAN LLP**
307 West 38th Street, 16th Floor
New York, NY 10018
Tel: (646) 693-3929
Fax: (646) 357-8447
Email: shaoul@simonsensussman.com
Email: nico.gurian@simonsensussman.com
Email: braden.fain@simonsensussman.com

Nicolas A. Stebinger (DC SBN 984080)
Victoria R. Sims (DC SBN 1006974)
**SIMONSEN SUSSMAN LLP**
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (202) 384-3130
Fax: (646) 357-8447
Email: nicolas@simonsensussman.com
Email: victoria.sims@simonsensussman.com

John P. Fiske (CA SBN 249256)
Lindsay R. Stevens (CA SBN 256811)
Jason J. Julius (CA SBN 249036)
**BARON & BUDD, P.C.**
11440 West Bernardo Court, Suite 265
San Diego, CA 92127
Tel: (858) 251-7424
Fax: (214) 523-6600
Email: jfiske@baronbudd.com
Email: lstevens@baronbudd.com
Email: jjulius@baronbudd.com

28

*Lead Counsel for Direct Action Plaintiffs People of the State of California, acting by and through the Los Angeles County Counsel, County of Los Angeles, and Consolidated Fire Protection District of Los Angeles County; People of the State of California, acting by and through the Office of County Counsel, County of San Diego, County of San Diego, and San Diego County Fire Protection District; People of the State of California, acting by and through the San Diego City Attorney's Office, and City of San Diego; Ebbetts Pass Fire Protection District; City of Santa Barbara; County of Butte; County of Shasta; City of Oakland; City of Santa Clara; Unified Fire Authority; City of Hartford; City of Portland, Oregon; City of Allentown; City of Portsmouth; City of Green Bay; City of Yonkers; City of Tucson; City of Albuquerque; City of Emeryville*

29