| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | Case No. 2:26-md-3179-WCG |
| | Hon. William C. Griesbach |

### DECLARATION OF CATHERINE S. SIMONSEN IN SUPPORT OF DIRECT (NON-CLASS) ACTION PLAINTIFFS' RESPONSE TO OBJECTIONS TO PROPOSED LEADERSHIP ORDER

I, Catherine S. Simonsen, declare:

1. I am a founding partner and the Chair of the law firm Simonsen Sussman LLP, Co-Lead Counsel with Baron & Budd, P.C. for the Direct (Non-Class) Action Plaintiffs in the above-captioned litigation. I am duly licensed to practice law in the States of California and Washington, and have been authorized to practice in this Court in the above-captioned proceeding. I have personal knowledge of the facts stated herein and could testify competently thereto if called to do so.

2. I am the former Assistant Regional Director for the Western Competition Group (WCG) in the Bureau of Competition in the Federal Trade Commission (FTC). In that role, I supervised all of the competition attorneys on the West Coast in all of the WCG's merger and conduct investigations. Before the FTC, I served as a Deputy Attorney General in the Antitrust Section of the California Department of Justice. Before government service, I practiced antitrust law in private practice for nearly a decade. I founded Simonsen Sussman LLP with colleagues who served with me as senior directors at the FTC, including Shaoul Sussman, former Associate Director for Litigation in the Bureau of Competition, and Nicolas Stebinger, former Senior Trial

1

Counsel in the Bureau of Competition. Among other litigation matters, Simonsen Sussman currently represents the State of California as outside counsel in the multi-state challenge to Nexstar Media Group's acquisition of TEGNA. *See In re Nexstar-TEGNA Merger Litigation*, No. 2:26-cv-00976-TLN-CKD (E.D. Cal.)

3. My co-counsel and Co-Lead DAP Counsel, Baron & Budd, P.C., has represented and currently represents hundreds of public entities throughout the country in environmental and other mass tort litigation, including serving as lead counsel in numerous MDLs with both class and non-class tracks, and other complex litigation throughout the United States.

4. Simonsen Sussman and Baron & Budd worked alongside the Los Angeles County Counsel to conduct a thorough pre-complaint investigation and economic analysis of the claims we filed against Defendants for unlawful mergers and acquisitions (Clayton Act Section 7), attempted monopolization (Sherman Act Section 2), and other claims, including violations of state law. Our first complaint was filed on behalf of the People of the State of California, acting by and through the Los Angeles County Counsel, the County of Los Angeles, and the Consolidated Fire Protection District of Los Angeles County on February 12, 2026.

5. Simonsen Sussman and Baron & Budd represent dozens of public entities that have filed or authorized us to file direct-action (i.e., non-class) complaints against Defendants. All of the Direct (Non-Class) Action complaints we have filed for our clients focus on Defendants' merger-and-acquisition conduct, as well as Defendant Pierce Manufacturing, Inc.'s conduct in the alleged markets for replacement parts.

6. Unlike nearly all of the putative class action complaints filed to date—including the operative DPP and IPP Consolidated Amended Class Action Complaints—none of our Direct

2

(Non-Class) Action complaints allege a conspiracy among manufacturers, orchestrated by the Fire Apparatus Manufacturers' Association, to reduce output and fix prices.

7.      Other major differences between our Direct (Non-Class Action) complaints and the DPP and/or IPP Consolidated Amended Class Action Complaints include:

a.  The IPP Consolidated Amended Class Action Complaint does not allege a Clayton Act Section 7 claim. The DPP Consolidated Amended Class Action Complaint includes a claim entitled "Restraint of Trade" that is purportedly brought under Clayton Act Section 7, but the complaint does not allege the elements of a Clayton Act Section 7 claim;

b.  The DPP Consolidated Amended Class Action Complaint alleges only violations of federal law; it does not allege the violations of state antitrust and unfair competition laws in the DAP complaints;

c.  The DPP and IPP Consolidated Amended Class Action Complaints do not allege any claims against Pierce for conduct in the Pierce replacement parts markets; and

d.  The DAP Consolidated Amended Complaint names several defendants who are not named in the DPP and IPP Consolidated Amended Class Action Complaints.

8.      In April 2026, after the Judicial Panel on Multidistrict Litigation had ordered the instant MDL, I sought a meeting with counsel for the DPPs to discuss preliminary matters. On April 15, 2026, my partner Nico Gurian and I participated in a videoconference with Interim Lead DPP Class Counsel David Seidel of the Joseph Saveri Law Firm, Steven Basser and Jeffrey

Barrack of Barrack, Rodos & Bacine, Greg Hansel of Preti, Flaherty, Beliveau & Pachios, Chartered, LLP, and Michael Flannery of Cuneo, Gilbert, Flannery & LaDuca, LLP.

9. During this videoconference, Interim Lead DPP Class Counsel stated they were "concerned" that Simonsen Sussman and Baron & Budd were discussing the litigation with public entities who may be members of their putative class. They further stated that they did not believe it was "necessary or appropriate" for the Court to appoint lead counsel for the Direct Action Plaintiffs. When pressed, Interim Lead DPP Class Counsel were unable to articulate the basis for their view, other than to say, "We're frankly concerned about you marketing yourselves as lead counsel." Mr. Hansel directly stated to Mr. Gurian and me: "We don't think you should file any more cases."

10. On April 29, 2026, I sent an email to counsel for all defendants and plaintiffs seeking to "start the conversation about an initial CMO for the Court to enter." I attached a draft proposed case management order (CMO) and asked for counsel's availability for a meet and confer to discuss the issues the Court had stated it wished to discuss at the then-upcoming Telephone Conference on May 13, 2026. The proposed CMO set forth three tracks—DPP Class Actions, IPP Class Actions, and Direct (Non-Class) Actions.

11. On May 1, 2026, Joseph Saveri, one of the Interim Lead DPP Class Counsel, responded: "Setting aside the issue of timing, we've reviewed your draft and are of the view that it doesn't properly reflect the way that a multidistrict matter like this one should be structured, and because of that, we would not recommend it to the Court. We are working on a draft, which we believe more appropriately reflects the general rule that class cases are the drivers of the litigation, as those matters encompass the widest array of claims and broadest number of parties

4

affected by the underlying conduct." A true and correct copy of this email is attached hereto as **Exhibit 1** (page 2).

12. On May 4, 2026, Sean Stefanik, counsel for AIP Defendants, replied-all to Mr. Saveri's email and advised that "Defendants believe it would be inefficient to meet and confer on these issues piecemeal without plaintiffs' organizational structure in place. This is especially true given the apparent lack of consensus among plaintiffs' counsel on these case management issues so far. It would not be productive for defendants to agree with certain sets of plaintiffs on an issue only to have that upended by a different view of the to-be-appointed leadership. While we believe a meet and confer on case schedule would be premature and that the parties will be unable to make any decisions at this stage, we are willing to have a discussion."

13. Having received no responses from counsel in time to hold the original meet and confer I had requested, on May 5, 2026, I sent a follow-up email to counsel for all defendants and plaintiffs, seeking revised availability for a meet and confer in advance of the Court-ordered Telephone Conference.

14. That same day, May 5, 2026, Mr. Saveri elected not to respond to my email of the same day and instead replied-all to the email he had sent on May 1, 2026 in which he had asserted that "class cases are the drivers of the litigation." Mr. Saveri wrote: "We will be sending you a litigation schedule and CMO in short order," and "[w]e have some questions we hope you can answer in the interest of preparing a feasible litigation plan: 1. Your proposal contemplates the filing of a Consolidated Amended Complaint. Can you elaborate on that?" and "2. Do you plan to file additional complaints in disparate jurisdictions?"

15. I responded to Mr. Saveri that same day, May 5, 2026, asking him to "[p]lease respond to my email from this morning . . . with times that work on Thursday or Friday" and

5

informing him that "Defendants asked us (counsel for the non-class actions) to file a consolidated amended complaint on behalf of all of our clients . . . . This will help streamline case management and motion-to-dismiss briefing and is common in MDLs. . . . We agree that this is appropriate and we intend to file a consolidated amended complaint for the non-class plaintiffs, all of whom we represent." I further explained that Mr. Saveri's second question was not relevant but that "[w]e think there should be an agreed-upon process for any newly filed actions to be incorporated into this litigation to the extent they are filed. The case management order we proposed included a provision for the parties to meet and confer and submit a proposal for this, which we continue to believe is appropriate."

16. On May 6, 2026, I was informed by a plaintiff's counsel in this litigation that Interim Lead DPP Class Counsel had prepared and circulated to counsel for the IPPs—but not Counsel for the Direct Actions—a draft CMO, protective order, and ESI stipulation. The email I was forwarded (but on which DAP Counsel was not included), written by Dan Hedlund, whose firm Gustafson Gluek PLLC was appointed Co-Lead Interim IPP Class Counsel by Judge Conway, stated: "DPPs have prepared these draft documents and have asked IPPs for comments by the end of today. . . . After they receive input, they plan to circulate to DAPs and defendants." Thus, Interim Lead DPP Class Counsel intentionally omitted DAP Counsel from plaintiff-side planning of foundational documents to be presented to Defendants in advance of the Court-ordered Telephone Conference.

17. On May 8, 2026, Michael Flannery, one of the Interim Lead DPP Class Counsel, sent an email to counsel for all defendants and plaintiffs, attaching a proposed CMO. In the email, Mr. Flannery stated, "we attach a draft CMO No. 1, which we circulated earlier this week on the Plaintiff side, to both the Indirect Purchaser Plaintiffs and the Individual Action

6

Plaintiffs." This statement was inaccurate, as no DPP attorney had sent this draft CMO to DAP Counsel prior to circulating it to counsel for all defendants and plaintiffs.

18. The CMO proposed by Interim Lead DPP Class Counsel without consulting with Counsel for the Direct Actions contained a Section XI, entitled "Consolidated Amended Complaints," which provided only the following:

## XI.     CONSOLIDATED COMPLAINTS

17.     As previously agreed, on March 11, 2026, the Direct Purchaser Plaintiffs ("DPPs") filed an amended consolidated complaint, which shall not count as an amended complaint under Rule 15(a);

18.     As previously agreed, on March 23, 2026, the Indirect Purchaser Plaintiffs ("IPPs") filed an amended consolidated complaint, which shall not count as an amended complaint under Rule 15(a);

In other words, the CMO proposed by Interim Lead DPP Counsel contained no provision for the filing of a consolidated amended direct-action complaint by the DAPs, despite my having informed counsel, in writing, that Defendants had requested, and Direct Action Plaintiffs intended to file, one.

19. Consistent with this omission, the schedule in the CMO proposed by Interim Lead DPP Class Counsel contained no date by which DAPs would file a consolidated amended complaint. Interim Lead DPP Class Counsel also included in this schedule a proposed five months during which nothing but class certification briefing—which does not apply to the Direct Actions—would occur, before any party could file a motion for summary judgment in any of the tracks.

7

20.     In the days leading up to May 8, 2026, the Court's deadline for submitting a status report regarding leadership issues, I contacted multiple attorneys for class plaintiffs to attempt to coordinate a joint status report to be filed on behalf of counsel for all three tracks of this case. After counsel for one of the IPPs circulated a proposed joint status report and I inserted edits for DAPs, I was told by counsel that "the DPP class is having issues with your insert. They are hung up on the phrasing of 'lead' counsel for DAPs." I asked counsel whether I could make any edits to the DAP insert that would mollify DPPs. Counsel told me that, so far as they could tell, the "issue is with the label 'lead.'" In response, I explained that lead counsel for non-class tracks are commonly appointed, and pointed them to the *Insulin* case management orders. I explained that DAP Counsel expect that the court will want the structure and leadership for each track. I asked if a further conversation with counsel for the DPPs and IPPs would be helpful. Counsel informed me in response that DAPs should file their own status report.

21.     Attached hereto as **Exhibit 2** is a true and correct copy of the transcript of the May 13, 2026 Telephone Conference.

22.     The morning after DAPs filed their Proposed DAP Leadership Order, on May 14, 2026, Beth Kushner, one of the Interim Lead DPP Class Counsel, sent an email directly to the Court, at wied_clerks_gb@wied.uscourts.gov, copying all counsel for all defendants and all plaintiffs. Ms. Kushner asserted that Lead DAP Counsel's proposed order "did not comply with the Court's Preferred Procedures and General Information," but did not explain the basis for that assertion. Ms. Kushner further asserted that Lead DAP Counsel's proposed order "went beyond what the Court indicated it would entertain from non-class counsel. We also believe it is legally flawed." Ms. Kushner, "ask[ed] the Court's direction on how it would like us to submit objections, i.e., via email and/or ECF." She further "ask[ed] whether the Court would like

8

[Interim Lead DPP Counsel] to submit a proposed order for non-class counsel that we believe complies with Rule 23 and the due process rights of municipalities not currently represented by non-class counsel," This email had the intended effect of stalling the Court's entry of DAPs' proposed order.

23.     Less than an hour later, Mary Fisher, Judicial Assistant to Judge Griesbach, responded to Ms. Kushner's email, explaining that "objections to the submission of a proposed order are to be e-filed on the docket and linked to the docket entry that you are opposing (i.e. Opposition to [47] Proposed Order Appointing Lead Counsel and Establishing a Separate Track for the Direct (Non-Class) Actions). Only in this way is there an appropriate record of your opposition." Ms. Fisher continued, "The proposed order mailbox is not to be utilized as a communication tool but is instead intended only for submission of Proposed Orders in Word format that have been docketed (typically as an attachment to a motion or stipulation). . . . Please e-file your objection in an appropriate format on the docket. No further action will occur in response to this email."

24.     Upon receiving this email from the Court, I requested a meet and confer with Interim Lead DPP Class Counsel to discuss their purported objections to DAPs' proposed order. This meet and confer took place on May 18, 2026. Participating for DAPs were myself along with Co-Lead DAP Counsel Jason Julius of Baron & Budd and Victoria Sims and Nico Gurian of Simonsen Sussman. During the meet and confer, Ms. Kushner insisted—contrary to the Court's oral orders during the May 13 Telephone Conference and written May 15 Minute Entry—that the Court did not in fact create three tracks and did not in fact appoint Simonsen Sussman and Baron & Budd as Lead DAP Counsel. Rather, she stated, she believed the Court had merely ordered Simonsen Sussman and Baron & Budd lead counsel over the 17 actions they had filed then-to-

9

date and any future actions they file, but that the Court did not intend for Simonsen Sussman and Baron & Budd to have a leadership role with respect to any direct action filed by any other law firm.

25. Mr. Julius and I explained our disagreement with this interpretation of the Court's statements and orders and further explained why—even in an MDL with no class action tracks—it is common for the court to appoint leadership to create structure and order and prevent wasteful duplication of resources. Ms. Kushner spent most of the meet and confer speaking at a high level of generality, stating her opinion that the roles and responsibilities we had set forth in our proposed order for Lead DAP Counsel were only appropriate for lead *class* counsel. We asked Ms. Kushner to send us an itemized list of Interim Lead DPP Class Counsel's objections to our proposed order. At no time during this meet and confer did Ms. Kushner raise the *Ameriquest* case cited in DPPs' Objection.

26. Later, on May 18, Ms. Kushner sent us an email stating: "As a starting point, the Court did not appoint your firms Lead Counsel for all non-class cases, for all purposes." She continued, "To the contrary, the Court's minute order (ECF 49) speaks of you being Lead 'for the direct (non-class) individual plaintiffs' **action**.' (emphasis supplied). That singular phrase was used several times in the minute order." She further stated, "In other words, you represent 16 plaintiffs. You have indicated you will be filing on behalf of another 9 plaintiffs (ECF 31). Obviously, it makes sense to have a single operative Complaint for those 25 entities, and makes no sense for you to be separately treated 25 times for everything that happens in the case."

27. Ms. Kushner continued: "Your Proposed Order raises the following concerns," after she listed a series of alleged flaws with Lead DAP Counsel's proposed order. For example, Ms. Kushner stated that "Paragraph 7 goes beyond your own clients to appoint your firms as lead

10

counsel 'for the Direct Action Plaintiffs.' That is contrary to Judge Griesbach's view, as expressed in ECF 49, that you are lead counsel for the plaintiffs in (or added to) your CAC."

28. Ms. Kushner concluded: "We believe that an appropriate Order would . . . [a]ddress your role as counsel for the clients you represent that are identified in (or added to) the CAC you will be filing." Ms. Kushner "ask[ed] that you withdraw ECF 47 and provide an appropriately limited one by the close of business on Wednesday, May 20." Again, Ms. Kusher did not raise the *Ameriquest* case in her email or any subsequent email.

29. On May 20, 2026, Mr. Julius sent an email responding to Ms. Kushner's email by the deadline she had announced. Mr. Julius noted Interim Lead DPP Class Counsel's repeated refusal to engage with the examples and precedents we had provided on numerous occasions—including in the status report we filed with the Court on May 8, 2026—of MDL courts appointing lead counsel for non-class tracks of MDLs and giving them the same authority and responsibilities outlined in DAPs' proposed leadership order. Mr. Julius attached:

- Case Management Order #3, *In Re: Insulin Pricing Litigation*, No. 2:23-md-03080, ECF No. 34 (D.N.J. Dec. 6, 2023), a true and correct copy of which is attached hereto as **Exhibit 3**;

- Organization of Plaintiffs' Counsel, *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG (D. S.C. March 20, 2019), a true and correct copy of which is attached hereto as **Exhibit 4**;

- Applicability and Scope of Order, *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG (D. S.C. Apr. 26, 2019), a true and correct copy of which is attached hereto as **Exhibit 5**; and

- Common Benefit Order, *In Re: Social Media Adolescent Additions/Personal Injury Products Liability Litigation*, No. 4:22-MD-03047-YGR, ECF No. 169 (March 6, 2023), a true and correct copy of which is attached hereto as **Exhibit 6**.

Mr. Julius explained that, based on our experience and case precedents, we expected the Court to actively want to give these roles and responsibilities to Lead DAP Counsel: inevitably, new direct-action plaintiffs whom Lead DAP Class Counsel do not represent will file complaints, and we expect the Court will want an organizational structure and leadership to manage and coordinate those cases, avoid duplication of resources and effort, and present a united front to the Court. Mr. Julius urged Interim Lead DPP Class Counsel not to consume the Court's resources with a filing and asked them to confirm they would not file an Objection.

30. Attached hereto as **Exhibit 7** is Case Management Order #8, *In Re: Insulin Pricing Litigation*, No. 2:23-md-03080, ECF No. 34 (D.N.J. April 16, 2024).

31. Attached hereto as **Exhibit 8** is Order, *In Re: Dealership Management Systems Antitrust Litigation*, No. 1:18-cv-00864, ECF No. 123 (April 16, 2018 N.D. Ill.).

32. I have been contacted by a lawyer who represents a number of political subdivisions, who informed me that he supports a separate DAP track, believes Lead DAP Counsel are pursuing claims in direct actions that best serve his clients, and is interested in exploring a mechanism for adopting DAPs' consolidated amended complaint.

33. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of May, 2026, at Los Angeles, California.

/s/ Catherine S. Simonsen
Catherine S. Simonsen

12