# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

IN RE: FIRE APPARATUS ANTITRUST LIGTIGATION

Case No. 2:26-md-03179-WCG

Hon. William C. Griesbach

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF DIRECT PURCHASER CLASS PLAINTIFFS FOR CURATIVE
COMMUNICATION TO ALL SOLICITED POTENTIAL CLASS MEMBERS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………..……ii

I.  INTRODUCTION ......................................................................................................................1

II. RELEVANT FACTS ................................................................................................................4

    A.  Relevant Procedural History ..........................................................................................4

    B.  Putative Class Members Are Being Solicited to File Individual Actions Through Incomplete, Potentially Misleading, and Confusing Marketing Materials ...........................6

III. ARGUMENT ..........................................................................................................................7

    A.  The Salutary Goals and Purposes of Fed. R. Civ. P. 23 Warrant the Court Acting for the Protection of Absent Class Members .......................................................................7

    B.  The Solicitations Are Incomplete, Potentially Misleading, and May Create Confusion Among Absent Class Members ............................................................................9

    C.  A Curative Communication is a Necessary Remedy and Will Protect the Class Action Process .....................................................................................................................14

IV. CONCLUSION ......................................................................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538 (1974) ................................................................. 3, 11

*Braswell v. Bow Plumbing Grp., Inc.*, 2024 WL 2401782 (M.D. Ala. May 23, 2024)................ 12

*Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014) ................................................................. 12

*Cnty. of Santa Clara v. Astra USA, Inc*., 2010 U.S. Dist. LEXIS 78312
(N.D. Cal. Jul. 8, 2010) ....................................................................................................... 8, 10, 14

*Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc*., 214 F.R.D. 696 (S.D. Ala. 2003) ................. 8

*Fox v. Cnty. of Saginaw,* 2021 U.S. Dist. LEXIS 192576 (E.D. Mich. Oct. 5, 2021)................ 2, 9

*Fox v. Saginaw Cnty.,* 35 F.4th 1042, 1048 (6th Cir. 2022) .................................................. passim

*Gulf Oil v. Bernard,* 452 U.S. 89 (1981) ................................................................................... 7, 14

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005)................ 8

*In re Lupron Mktg. and Sales Practices Litig.*, 2004 WL 3049754 (D. Mass. 2004).................... 14

*In re McKesson HBOC, Inc. Secs. Litig.,* 126 F. Supp. 2d 1239 (N.D. Cal. 2000) ............... passim

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 2014 WL 4966072
(E.D.N.Y. Oct. 3, 2014) ................................................................................................................. 8

*In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* 2026 U.S. Dist.
LEXIS 101635 (E.D.N.Y. May 7, 2026) .................................................................................... 14

*Jones v. Jeld-Wen, Inc.,* 250 F.R.D. 554 (S.D. Fla. 2008)............................................................. 8

*Masonek v. Wells Fargo Bank*, 2009 WL 10672345 (C.D. Cal. Dec. 21, 2009).......................... 11

*Matson v. NIBCO Inc.*, 2021 WL 2374312 (W.D. Tex. June 10, 2021)................................. 11, 12

*McWilliams v. Advanced Recovery Sys., Inc.,* 176 F. Supp. 3d 635 (S.D. Miss. 2016) ............... 10

*Mitchell v. CoreLogic, Inc.,* 2019 U.S. Dist. LEXIS 221927 (C.D. Cal. Jul. 19, 2019)..... 8, 10, 14

*Riley v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 4249849 (W.D.N.C. July 13, 2015)12

*Scott v. Chipotle Mexican Grill, Inc.,* 2014 WL 4852063 (S.D.N.Y. Sept. 29, 2014) ................... 8

*Slamon v. Carrizo (Marcellus) LLC*, 2018 WL 3615989 (M.D. Pa. July 27, 2018) .................... 11

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.12.......................................................................... 8

Manual for Complex Litig. (Fourth) § 21.33 ................................................................................ 7

**Rules**

Fed. R. Civ. P. 23(d) ...................................................................................................................... 7

Case 2:26-md-03179-WCG    Filed 05/29/26    Page 3 of 20    Document 90

## I.      INTRODUCTION

This class action litigation concerns a matter of significant public interest: the alleged conspiracy to fix the price of fire apparatus and the attempt to consolidate and monopolize the fire apparatus manufacturing industry in violation of Federal Antitrust Laws.  Generally, two groups of Rule 23 class actions have been filed. One class seeks damages and injunctive relief under federal law on behalf of all direct purchasers of fire apparatus in the United States.  The other seeks damages under state law and injunctive relief on behalf of indirect purchasers of fire apparatus -- that is, those who purchased through a distributor or other independent intermediary. Those class actions cover all of the fire apparatus commerce in the country, including all municipalities that have an antitrust claim for the asserted conduct. In addition, there are at least sixteen individual lawsuits that have been filed on behalf of municipalities, all represented by the same law firms: Simonsen Sussman, LLP and Baron & Budd, P.C. ("Individual Action Coordinating Counsel" or "IACC").

The Direct Purchaser Plaintiffs ("DPPs" or "Movants") bring this motion to protect and reinforce the salutary goals of the Rule 23 class action process from the dissemination and use of incomplete, confusing and potentially misleading advertising and marketing materials that are being used to solicit putative class members to file redundant, individual actions. It has come to Movants' attention that the IACC firms are soliciting putative class members to file individual actions through, among potentially other methods, a marketing brochure (collectively with cover emails, "Solicitation").  The full extent of the Solicitation campaign is unknown, both in terms of the form of the soliciting communication and in the breadth of potential plaintiffs contacted. However, it is likely that IACC has sent the Solicitation to countless municipalities and public entities across the country, all of which are members of one of the two classes in this MDL. The Solicitation invites the filing of individual, non-class action antitrust complaints through IACC

1

without disclosing the existence of the pending class actions seeking the same relief for the same claims, or other key details necessary to provide the recipient of the brochure with sufficient information to make an informed decision about how to participate actively in this litigation. Such other important details necessary for completeness, as described more fully below, include: the identity of court appointed interim lead class counsel; the financial terms of the representation; and that in a class action, the Court is charged with overseeing litigation fees and expenses.[1] These facts are omitted from the Solicitation.

Under the circumstances, the Solicitation is materially incomplete, potentially misleading, and may cause confusion in several material ways. First, each targeted municipality is an absent class member in at least one of the putative class actions, but the Solicitation fails to inform recipients that there are already pending class actions asserting claims on behalf of all direct and indirect purchasers of fire apparatus for violations of federal and state antitrust laws.[2] The brochure states, "public entities are stepping forward. Now your community can too." But, because the targeted potential plaintiff's claims are already encompassed by the pending class cases, the municipality or other public entity is not required to file a separate lawsuit to recover damages or obtain other non-economic relief. Thus, the Solicitation conveys a misimpression that the only way to assert one's rights is to file an individual complaint.

In addition, the Solicitation creates a false sense of urgency to filing an individual complaint, when under *American Pipe*, any applicable statute of limitations is tolled during the

---

[1] *E.g., Fox v. Saginaw Cnty.,* 35 F.4th 1042, 1048 (6th Cir. 2022) (finding that solicitation communication was misleading where soliciting firm "undermined 'the goal of informed consent'").

[2] *See, e.g., Fox v. Cnty. of Saginaw,* 2021 U.S. Dist. LEXIS 192576, at *13-14 (E.D. Mich. Oct. 5, 2021), *aff'd in relevant part, Fox,* 35 F.4th at 1049-50; *see also, In re McKesson HBOC, Inc. Secs. Litig.,* 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000).

pendency of the class actions. *See Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538, 554 (1974).  As putative class members, the timeliness of any claim covered by the class actions is a non-issue. This, too, is a key fact necessary for a municipality to make an informed decision about representation.[3]

Next, the Solicitation fails to mention that the Eastern District of Wisconsin had already vetted and appointed leadership counsel for the class actions before any non-class action was ever filed, even if leadership could be subject to change.[4]  Omitting such information inhibits a municipality's ability to communicate about the case with appointed class counsel, and hides that court-appointed class counsel is well-positioned to advise about the scope of the class, the claims being brought, and the litigation generally, and who, unlike soliciting counsel, are not motivated by generating additional fees when communicating with absent class members.

Indeed, the Solicitation is seeking to encourage municipalities to engage IACC on a per plaintiff contingency fee basis.  But the brochure does not address the cost or obligations that absent class members may avoid through the class action, including that in a class action, any legal fees and litigation expenses are paid out of a common fund shared class-wide, and are subject to court approval.[5]  By failing to address this, the recipients of the Solicitation may not have sufficient facts to understand the consequence of having to bear the expense of their own individual discovery by filing an individual action, rather than remaining an absent class member.

---

[3] *McKesson*, 126 F. Supp. 2d at 1245 (finding solicitation to be misleading where it did not advise recipients that during the pendency of a class action, the statute of limitations is tolled).

[4] *Infra,* n.11.

[5] *E.g., McKesson*, 126 F. Supp. 2d at 1243-44 (finding that when solicitations were disseminated under similar circumstances, the prospects for abuse were great. According to the court, this is particularly so when the soliciting attorneys are seeking an engagement on a contingency fee basis and without providing the potential absent class member with the benefit of an understanding of the class action process and the court's supervision of fees in class actions.).

Accordingly, when the Solicitation presents the filing of an individual action as the only option to seek redress for any harm without comparing the potentially significant difference in cost and expense, the Solicitation is likely to confuse putative class members about their available options and precludes informed consent about whether to hire counsel to file an individual lawsuit. Putative class members should be able to meaningfully consider all of their options before making a decision to give IACC a share of their damages. *Fox.,* 35 F.4th at 1048.

For all of these reasons, and as more fully discussed below, to best ensure the integrity and administration of the Rule 23 class action proceedings, and to prevent absent class members from being misled or confused by the Solicitation, Movants respectfully request that the Court (1) approve a curative communication for DPPs to provide to the targeted municipalities that includes complete information; and (2) an Order requiring IACC to disclose the names and contact information of all putative class members who have been solicited by IACC to facilitate dissemination of the approved curative communication.[6]

## II.     RELEVANT FACTS

### A.     Relevant Procedural History

The *In re: Fire Apparatus Antitrust Litigation* was initiated in this Court on August 20, 2025, when the City of La Crosse[7] filed a class action complaint for itself and all similarly situated indirect purchasers of fire apparatus.  That was roughly six months before the first non-class action complaint, *People of the State of California, acting by and through the Los Angeles City Counsel;*

---

[6] In accordance with ethical rules, DPP co-lead counsel are prevented from communicating with municipalities that are currently represented by the IACC and thus need Court approval to send a Court-approved curative communication to them. Those solicited absent putative class members who have filed individual actions are ascertainable, but there are an unknown number of other municipalities and public entities who may have retained IACC. The true scope of the Solicitation campaign is likely broad, but wholly unknown.

[7] *City of La Crosse v. Oshkosh Corp., et al.,* 1:25-cv-01252 (E.D. Wis.).

4

*County of Los Angeles; and the Consolidated Fire Protection District of Los Angeles v. REV Group, Inc., et al.,* 2:26-cv-01468 (the "LA Complaint") was filed by IACC in the Central District of California.[8] Before the LA Complaint was filed, there were a total of thirteen class actions filed across multiple federal district courts asserting similar claims against similar defendants arising from a substantially similar nucleus of operative fact.[9] This Court had also appointed co-lead counsel for the DPP class well before the LA Complaint was filed. *See* 1:25-cv-01543 (E.D. Wis.)(ECF 19)(Order dated Nov. 25, 2025); *see also,* (ECF 49) ("**The Court confirms the appointment of interim-lead counsel for the direct purchaser plaintiffs class action as previously ordered by Judge Conway.**")(emphasis in original). The process to coordinate these matters into this MDL was initiated on January 15, 2026, also before the LA Complaint was filed. The Panel on Multidistrict Litigation coordinated *In re: Fire Apparatus Antitrust Litigation* before this Court on April 3, 2026.

---

[8] The first individual action was filed on February 12, 2026. *See People of the State of California, acting by and through the Los Angeles City Counsel; County of Los Angeles; and the Consolidated Fire Protection District of Los Angeles v. REV Group, Inc., et al.,* 2:26-cv-01468 (C.D. Cal.) (ECF 1).

[9] *City of La Crosse v. Oshkosh Corp., et al.,* 1:25-cv-01252 (E.D. Wis.)(Aug. 20, 2025); *City of Augusta v. Oshkosh Corp., et al.,* 1:25-cv-01543 (E.D. Wis.) (Oct. 4, 2025); *The Newstead Fire Co., Inc. v. Oshkosh Corp., et al.,* 1:25-cv-01693 (E.D. Wis.) (Oct. 31, 2025); *City of Onalaska v. Oshkosh Corp., et al.,* 1:25-cv-01717 (E.D. Wis.) (Nov. 4, 2025); *City of Philadelphia v. Oshkosh Corp., et al.,* 1:25-cv-01801 (E.D. Wis.) (Nov. 14, 2025); *City of Revere v. AIP, LLC, et al.,* 1:25-cv-13461 (D. Mass.) (Nov. 19, 2025); *City of Chelsea v. Oshkosh Corp., et al.,* 1:25-cv-13643 (D. Mass.) (Dec. 2, 2025); *Borough of Roseland v. Fire Apparatus Manufacturers' Association, et al.,* 2:25-cv-18312 (D.N.J.) (Dec. 9, 2025); *City of Ann Arbor v. Oshkosh Corp., et al.,* 1:25-cv-01973 (E.D. Wis.) (Dec. 16, 2025); *City of Liberty, Missouri v. Oshkosh Corp., et al.,* 1:25-cv-02002 (E.D. Wis.) (Dec. 19, 2025); *City of Arcadia v. Oshkosh Corp., et al.,* 1:25-cv-02005 (E.D. Wis.) (Dec. 22, 2025); *Commack Fire District v. Oshkosh Corp., et al.,* 1:25-cv-02013 (E.D. Wis.) (Dec. 22, 2025); *Unified Government of Wyandotte County and Kansas City, Kansas,* 2:26-cv-02057 (D. Kan.) (Jan. 29, 2026).

**B.** **Putative Class Members Are Being Solicited to File Individual Actions Through Incomplete, Potentially Misleading, and Confusing Marketing Materials**

The IACC firms that filed the LA Complaint represent all other individual (non-class action) plaintiffs who have filed complaints that are part of this MDL. These firms, either directly or through agents, have solicited (and continue to solicit) an unknown number of putative class member municipalities and public entities using the brochure. *See*, Joint Declaration of Direct Purchaser Class Interim Co-Lead Counsel (the "Joint Decl."), at ¶ 8. The brochure purports to describe the benefits of filing an individual lawsuit through IACC, and another law firm, Young & Partners, LLC, ostensibly IACC's lead generation agent. *See*, Joint Decl., at ¶ 13 and Ex. 1. However, the Brochure omits crucial facts necessary for the targeted municipalities to reach an informed decision: that class actions are already pending for which they are putative class members and that class counsel have already been appointed under Rule 23(g) to represent absent class members.

Movants are aware of the contents (or lack thereof) of a small sample of the Solicitation effort because *a Solicitation was sent directly to City of Philadelphia,* a class action plaintiff of record in this Court, through its Law Department, without copying its outside counsel of record. *See*, Joint Decl., at ¶ 9. In other instances, IACC and/or Young & Partners attempted to reach potential plaintiffs by sending a Solicitation to attorneys at Preti, Flaherty, Beliveau & Pachios, LLP, Court appointed interim co-lead counsel for the DPP class, offering, among other things, to share attorneys' fees with the recipient attorney for recruiting municipalities to file an individual lawsuit through IACC. *See*, Joint Decl., at ¶ 10.

Within the sample set, the email component of the Solicitation varies slightly in content, but all provide a link to the brochure. *See*, Joint Decl., at ¶ 10. Critically, no Solicitation in the sample: (1) identifies that there are prior pending class actions arising out of substantially similar

6

operative facts; (2) informs the recipient that a potential plaintiff may benefit from any successful resolution of these prior pending class actions without having to file an individual action; or (3) clarifies that upon favorable resolution to the class, all litigation expenses and fees for class counsel will be court-approved and shared class-wide. *Id.*

## III. ARGUMENT

### A. The Salutary Goals and Purposes of Fed. R. Civ. P. 23 Warrant the Court Acting for the Protection of Absent Class Members

This Court has authority, both under Federal Rule of Civil Procedure 23(d), and in its inherent powers, to protect absent class members by addressing misleading and abusive solicitation efforts and to safeguard the efficient administration of this litigation. "[A] district court has both a duty and the broad authority to exercise control of a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil v. Bernard,* 452 U.S. 89, 99-100 (1981). When exercising this power, including through the issuance of reasonable orders, the Court must demonstrate that the resulting order is "carefully drawn" to "limit[] speech as little as possible" and "should be based on a clear record and specific findings" showing a "likelihood of serious abuses." *Fox,* 35 F.4th at 1047 (quoting *Gulf Oil,* 452 U.S. at 102, 104).

As the Supreme Court has emphasized, class actions serve an important function in the legal system, allowing matters with common interests or common questions of law or fact to be disposed of, where feasible, in a single lawsuit. *See, e.g., Gulf Oil*, 452 U.S. at 99 & n.11. Rule 23(d) gives the Court the important authority to manage class actions in the interest of advancing due process and in the interests of justice. A key aspect of the equitable roots embodied in Rule 23 is providing the Court with the authority to control communications to class members or their representatives. *See* Manual for Complex Litig. (Fourth) § 21.33 ("The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the

7

subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) ("The proper exercise of judicial authority in this context may have either a procedural basis, under Federal Rule of Civil Procedure 23(d), or an equitable basis, under the All Writs Act"); *see also Scott v. Chipotle Mexican Grill, Inc.,* 2014 WL 4852063, at *2 (S.D.N.Y. Sept. 29, 2014) ("A district court's authority to control lawyers' conduct is particularly broad in the context of class actions").

The Court's authority to control communications, including requiring a curative communication, can apply even before a class is certified and a true attorney-client relationship is created between class counsel and putative class members. *See, e.g., Cnty. of Santa Clara v. Astra USA, Inc.*, 2010 U.S. Dist. LEXIS 78312, at *14 (N.D. Cal. Jul. 8, 2010) (court required a curative notice to address a misleading communication to *putative* class members); *Mitchell v. CoreLogic, Inc.,* 2019 U.S. Dist. LEXIS 221927 (C.D. Cal. Jul. 19, 2019) (ordering curative communication to remedy misleading communication with *potential* class members).

When even putative class members are being misled by a solicitation, the Court appropriately intervenes to order a curative communication upon a specific showing by the moving party that the solicitations are "abusive in that '[they] threaten[] the proper functioning of the litigation." *Jones v. Jeld-Wen, Inc.,* 250 F.R.D. 554, 563 (S.D. Fla. 2008). Abusive communications are those that are false or misleading, contain material omissions, or are coercive or intimidating. *Id.* at 561; *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc*., 214 F.R.D. 696, 698 (S.D. Ala. 2003); Manual for Complex Litigation (Fourth) § 21.12 (explaining that a party may not "give

false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class").

### B. The Solicitations Are Incomplete, Potentially Misleading, and May Create Confusion Among Absent Class Members

Solicitations to absent class members, regardless of whether a class has yet been certified, are misleading when they misstate the facts or fail to disclose material information such as: (1) the existence of a class action arising from similar facts and asserting the same or a similar claim; (2) that counsel has been appointed for the class; and (3) that the Court has the ultimate authority under Rule 23 to oversee the proper conduct of the attorney's and the administration of the litigation. *Fox,* 2021 U.S. Dist. LEXIS 192576, at *13-14, *aff'd in relevant part, Fox,* 35 F.4th at 1049-50.

For example, *McKesson*, 126 F. Supp. 2d at 1240, concerned a putative securities class action. After counsel was appointed, and before a class was certified, "two firms . . . initiated a solicitation campaign to recruit individual McKesson shareholders to assert non-class claims based on Section 14(a) of the Securities Act." *Id*. The solicitations "consisted of a massive mailing campaign" and "made no reference whatsoever to the court's selection of a lead plaintiff or lead counsel." *Id*. at 1241. Class counsel moved to enjoin the solicitations and prohibit the soliciting attorneys from contacting the putative class. There, the court recognized that it "has a duty to ensure that all putative class members have a *genuine choice* whether or not 'to intervene and present claims or defenses, or otherwise come into the action.'" *Id.* at 1243. Upon review of the solicitation, the court determined that it deprived putative class members of such "genuine choice" because it: (1) failed to identify the court-appointed lead counsel or the procedures safeguarding the appropriateness of the class action process; (2) did not provide adequate disclosure of the comparative costs and benefits of participating in a class action as opposed to filing an independent

9

action (including the relative economic benefit that legal fees and litigation costs are subject to court approval in a class action); and (3) gave off a "gratuitous air of urgency, both by failing to provide any information regarding the timetable for a class action (including that the statute of limitations is tolled during the pendency of a putative class action)…" *Id.* at 1245. Ultimately, among other relief, the court directed the soliciting attorney to issue a curative communication to every putative class member to whom that attorney had directed the misleading solicitation materials. *Id.*[10]

The Solicitation here is misleading for reasons similar to those addressed by the court in *McKesson*. First, it makes no mention of the pending class actions brought on behalf of both direct and indirect purchasers. Second, it omits that, if certified, those existing classes would include each municipality or governmental entity targeted by the Solicitations. Third, the Solicitation fails to disclose that, at all relevant times, this Court had already appointed interim co-lead counsel for the classes pending in the Eastern District of Wisconsin.[11] Fourth, the Solicitation does not disclose

---

[10] Courts continue to rely on *McKesson* both to analyze whether a communication to a putative class member is misleading or abusive and for the proposition that a curative communication is a proper remedy when a misleading communication is directed to putative class members, not only when the class action seeks relief under federal securities fraud laws. *See, e.g., McWilliams v. Advanced Recovery Sys., Inc.,* 176 F. Supp. 3d 635, 641 (S.D. Miss. 2016) (finding solicitations to absent class members to be misleading based on *McKesson* for reasons not dependent on the fact that a class had already been certified); *Cnty. of Santa Clara*, 2010 U.S. Dist. LEXIS 78312, at *14 (court required a curative notice to address a misleading communication to putative class members in a drug pricing class action based, in part, on *McKesson*); *Mitchell,* 2019 U.S. Dist. LEXIS 221927 at *9 (relying on, *inter alia, McKesson and Santa Clara* to find certain communications with *potential* class members in an ERISA action were misleading and ordering curative communication).

[11] Since November 25, 2025, several *months* before any non-class action plaintiff filed a complaint in any court, leadership of the putative direct purchaser plaintiff class has been *undisputed*, even as additional direct purchaser plaintiffs filed complaints in other federal districts. That leadership of the indirect purchaser class is presently disputed does not change the following facts: (1) many indirect purchaser class action complaints were filed in this Court and in other districts long before the first non-class complaint was filed; and (2) this Court previously appointed interim co-lead

that the absent class members may choose not to file any lawsuit in its own name, remain in the class, and may still receive any benefit achieved by any resolution favorable to the class. Fifth, the Solicitation omits to disclose class members may receive such benefits without additional expense or effort, including additional attorneys' fees and costs. Finally, the Solicitation gives the false impression that the statute of limitations may be running and did not advise that the statute of limitations is tolled while the class actions are pending and will begin to run again only if a class is *not* certified. *Am. Pipe & Const.,* 414 U.S. at 554 ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action").

Courts have routinely held that a solicitation of a putative class member, like the brochure, that does not inform the recipient of a pending class action is misleading. *See, e.g.*, *Masonek v. Wells Fargo Bank*, 2009 WL 10672345, at *3 (C.D. Cal. Dec. 21, 2009) (solicitation that "encouraged absent class members to pursue individual actions . . . without properly explaining the nature of a class action" was "clearly misleading and confusing"); *Slamon v. Carrizo (Marcellus) LLC*, 2018 WL 3615989, at *3 (M.D. Pa. July 27, 2018) (failure to disclose to putative class members the existence of pending class action was "patently misleading"). In *Matson v. NIBCO Inc.*,for example, the court held that communications are "misleading and coercive" when they imply that the only way to obtain a remedy is through litigation other than the relevant class action. 2021 WL 2374312, at *5–6 (W.D. Tex. June 10, 2021). The *Matson* court also found pre-notice communications "inherently misleading, coercive, and factually inaccurate" where they, among other things, failed to disclose counsel's financial motivation for the solicitation and

---

counsel for the putative indirect purchaser class and that Order was on record before the first non-class case was ever filed.

suggested that class members were unrepresented when, as is the case here, class counsel had already been appointed. *Id.* The *Matson* court further noted that the solicitations caused confusion regarding the role and identity of class counsel, underscoring the "inherently misleading (and actually misleading)" nature of the communications. *Id.* at *7.

Several courts have specifically held that misleading communications to absent class members undermine the basic integrity of the class action process and undercut Rule 23. *See, e.g.*, *Braswell v. Bow Plumbing Grp., Inc.*, 2024 WL 2401782, at *2 (M.D. Ala. May 23, 2024) (holding that counsel representing individual plaintiffs in related state and federal court litigation "undermined . . . the integrity of the class settlement process by providing incomplete, misleading, and coercive information to potential class members"); *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) (holding that "[t]he critical question is whether there is a realistic danger that the communications will chill participation in the class action") (citation and quotation marks omitted); *Riley v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 4249849, at *2 (W.D.N.C. July 13, 2015) (collecting cases) ("misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation proceedings and violate the principle of informed consent, and the Federal Rules allow the courts to protect class members and putative class members from such communications"). A close examination of the brochure leads to the necessary conclusion that, like in the foregoing cases, the solicitation is so incomplete that it has the potential to mislead recipients.

For example, the brochure's discussion of "a nationwide antitrust action to protect public safety & restore competition," without ever mentioning the prior pending class actions, is confusing. *See*, Joint Decl. at Ex. 1. This statement appears to trade on the communal benefit of the class actions and the claims the class actions assert, without disclosing their existence.

Significantly, the only nationwide damage claims are those at issue in the class actions. An individual action can only recover for the particularized plaintiff(s) who filed the complaint. The brochure also fails to disclose that any injunctive relief being sought is duplicative of remedies the direct purchaser class action is seeking, making the filing of additional lawsuits seeking the same injunctive relief claims virtually meaningless, and wholly duplicative (once any acquisition in violation of federal antitrust laws is unwound, it is done for all time, not on a per plaintiff basis).

Further, on page 5, the brochure urges recipients that, "Public entities are stepping forward. Now your community can too." The brochure also advises, "The conduct of these companies gives rise to several legal claims, and that "[a]s we have done for many public entity clients, we would bring claims on your behalf…" *Id.* These statements make it seem as though the recipient cannot recover for its losses collectively, or without bringing its own individual claim. The brochure never mentions that the class actions already cover every recipient of the Solicitation, who is a putative class member, or its legal representative. These omissions are misleading and undermine the class process.

Finally, the brochure undermines the efficiency of the class action process, touting that the IACC will work "on a contingency basis" and "you are not responsible for expenses unless or until we recover money for you." Joint Decl. Ex. 1, at 7. But the brochure does not mention the fact that the class actions are already proceeding on a class basis, and that fees and expenses are shared by all class members, rather than having to pay a fixed percentage of any individual recovery, plus expenses to litigate an individual claim. Accordingly, the Solicitation omitted information necessary to provide the recipient with full and complete information necessary to make an informed decision about whether to remain an absent class member or to bring an individual lawsuit.

13

To protect the salutary benefits of class action practice, particularly in a case, like this, with thousands of absent putative class members, this kind of confusion should be avoided. *Gulf Oil,* 452 U.S. at 99-100, 104.

### C.    A Curative Communication is a Necessary Remedy and Will Protect the Class Action Process

Given the importance of ensuring the orderly and fair process of Rule 23 class actions, courts routinely order curative communications at all stages of the litigation process to ensure that misinformed class members receive accurate and complete information and correcting misleading or coercive communications. *See In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* 2026 U.S. Dist. LEXIS 101635 (E.D.N.Y. May 7, 2026) (denying objections to order compelling notification to clients of the potential misinformation and to allow for any such clients to be made whole); *Fox*, 35 F.4th at 1050*; McKesson,* 126 F. Supp. 2d at 1245 ("'giving solicited…clients the option of rescinding any retention agreement'" induced by misleading communications and requiring a curative communication to be sent to all previously solicited clients); *see also*, *In re Lupron Mktg. and Sales Practices Litig.*, 2004 WL 3049754, at *1-2 (D. Mass. 2004) (ordering counsel for intervenors to remove website content found to be "blatantly misleading and deliberately intended to deceive potential plaintiffs into believing that the websites are either court-sanctioned or sponsored by the MDL plaintiffs" and to provide corrective notice); *Cnty. of Santa Clara*, 2010 U.S. Dist. LEXIS 78312, at *14; *Mitchell,* 2019 U.S. Dist. LEXIS 221927 at *7-*8.

Because the Solicitations sent to putative class members are misleading as explained above, *supra* at III.B, the Court should permit DPPs' counsel to issue a curative communication to all recipients of the Solicitation, with language approved by the Court. Interim Co-Lead Counsel, therefore, requests the Court to issue an Order permitting them to disseminate a communication

14

by email (the same manner in which the Solicitation was transmitted) to all recipients of the Solicitation.[12] The proposed curative notice is attached as Exhibit A. In addition to providing recipients with the full picture, the proposed communication will also prevent further harm and mitigate future efforts to thwart the inherent efficiency of the class action process.

To facilitate this process, Movants also respectfully request that the Court enter an order requiring IACC to produce a list of all recipients of the Solicitation, regardless of whether receipt of the Solicitation was ever acknowledged, to interim co-lead class counsel within 10 days of entry of the Order. IACC has not disclosed the full scope of their solicitation campaign; without the production of their mailing list, with contact information, there will be no way to ensure that the curative communication will reaches every recipient. All of this is necessary, in the interests of justice and efficiency, to protect absent class members and the class action process.

## IV.    CONCLUSION

For the foregoing reasons, Movants seek an Order (1) approving the proposed corrective notice to all recipients of the Solicitation to be sent by interim co-lead counsel for the direct purchaser class; (2) directing Simonsen Sussman and Baron & Budd, LP and/or their lead generator agent(s) to produce within 10 days a mailing list of all putative class members they solicited to file individual actions; and (3) an instruction governing any future solicitation efforts by IACC.[13]

---

[12] The proposed language is also included in the proposed order filed concurrently with this Motion. Consistent with the Court's practices and procedures, it has been submitted in a word processing-ready format to allow the Court to tailor this language to its own preferences and in its discretion.

[13] Movants recognize that IACC have a free speech right to solicit clients, but not to mislead potential plaintiffs with any solicitation. The requested instruction is not meant as an injunction against solicitation efforts generally and this request should not be so construed. The Court's guidance is requested to guard against any future confusion or misleading of potential plaintiffs. The instruction will correct inaccurate solicitations made to date, and will provide guidance related to IACC's future solicitations and will hopefully identify those facts necessary to allow the potential plaintiff to make an informed decision about whether to hire IACC to file an individual action including: (1) that there are pending class actions that cover the claims of the municipality

15

Dated: May 29, 2026                          Respectfully submitted:

s/ Gregory P. Hansel
Gregory P. Hansel (WIED No. 607101)
Michael S. Smith (WIED No. 004986)
Elizabeth F. Quinby (WIED No. 006168)
Michael D. Hanify (WIED No. 010257)
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
Tel: (207)791-3000
ghansel@preti.com
msmith@preti.com
equinby@preti.com
mhanify@preti.com

*Interim Co-Lead Direct Purchaser Class Counsel*

s/ Beth J. Kushner
Beth J. Kushner, SBN 1008591
Christopher E. Avallone, SBN 1095465
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Tel: (414) 276-1122
beth.kushner@vonbriesen.com
christopher.avallone@vonbriesen.com

*Interim Direct Purchaser Class Liaison Counsel*

s/ Michael J. Flannery
Michael J. Flannery (WIED No. 110084)
CUNEO GILBERT FLANNERY &
LADUCA, LLP
2 CityPlace Drive
Second Floor
St. Louis, MO 63141
Telephone: (314) 226-1015
mflannery@cuneolaw.com

*Interim Co-Lead Direct Purchaser Class Counsel*

Evelyn Riley*
Cody McCracken*
CUNEO GILBERT FLANNERY &
LADUCA, LLP
2445 M Street NW
Suite 740
Washington, DC 20037
Telephone: (202) 789-3960
evelyn@cuneolaw.com
cmccracken@cuneolaw.com

*Interim Co-Lead Direct Purchaser Class Counsel*

---

or public entity being solicited; (2) that identifies court-appointed co-lead counsel for the classes; and (3) information sufficient for the party being solicited to understand the financial consequences of filing an individual action, balanced against expense that may be avoided by remaining a passive class member.

16

*s/ Jeffrey A. Barrack*
Jeffrey A. Barrack (WIED No. 78438)
Danielle M. Weiss (WIED No. 033342005)
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-0600
Fax: (215) 963-0838
E-mail: jbarrack@barrack.com
E-mail: dweiss@barrack.com
*Interim Co-Lead Direct Purchaser Class Counsel*

Stephen R. Basser (WIED No. 121590)
Samuel M. Ward (WIED No. 216562)
BARRACK, RODOS & BACINE
600 West Broadway, Suite 900
San Diego, CA 92101
Tel.: (619) 230-0800
Fax: (619) 230-1874
E-mail: sbasser@barrack.com
E-mail: sward@barrack.com
*Interim Co-Lead Direct Purchaser Class Counsel*

William J. Ban (WIED No. 1870690)
BARRACK, RODOS & BACINE
Eleven Times Square
640 8th Avenue, 10th Floor
New York, New York 10036
Tel.: (212) 688-0782
Fax: (212) 688-0783
E-mail: wban@barrack.com

*Interim Co-Lead Direct Purchaser Class Counsel*

*s/ Joseph R. Saveri*
Joseph R. Saveri (WIED No. 130064)
Ronnie Spiegel (WA State Bar No. 33721)*^
David Seidel (CA State Bar No 307135)*
SAVERI LAW FIRM, LLP
550 California Street, Suite 910
San Francisco, California 94108
Tel: (415) 500-6800
Fax: (415) 395-9940
E-mail: jsaveri@saverilawfirm.com
        rspiegel@saverilawfirm.com
        dseidel@saverilawfirm.com

*Application for Admission to be filed
^ Located in Washington State

17