IN RE: FIRE APPARATUS
ANTITRUST LITIGATION

Case No. 26-MD-3179

Hon. William C. Griesbach

**DECLARATION OF CATHERINE S. SIMONSEN IN SUPPORT OF NON-CLASS ACTION PLAINTIFFS' OPPOSITION TO CLASS COUNSEL'S MOTION FOR "CURATIVE COMMUNICATION"**

I, Catherine S. Simonsen, declare:

1.      I am a founding partner and the Chair of the law firm Simonsen Sussman LLP, Co-Lead Counsel with Baron & Budd, P.C. for the Non-Class Action Plaintiffs ("NCAPs") in the above-captioned litigation. I am duly licensed to practice law in the States of California and Washington, and have been authorized to practice in this Court in the above-captioned proceeding. I have personal knowledge of the facts stated herein and could testify competently thereto if called to do so.

2.      I am the former Assistant Regional Director for the Western Competition Group (WCG) in the Bureau of Competition in the Federal Trade Commission (FTC). In that role, I supervised all of the competition attorneys on the West Coast in all of the WCG's merger and conduct investigations. Before the FTC, I served as a Deputy Attorney General in the Antitrust Section of the California Department of Justice. Before government service, I practiced antitrust law in private practice for nearly a decade. I founded Simonsen Sussman LLP with colleagues who served with me as senior directors at the FTC, including Shaoul Sussman, former Associate Director for Litigation in the Bureau of Competition, and Nicolas Stebinger, former Senior Trial Counsel in the Bureau of Competition. Among other litigation matters, Simonsen Sussman

1

currently represents the State of California as outside counsel in the multi-state challenge to Nexstar Media Group's acquisition of TEGNA. *See In re Nexstar-TEGNA Merger Litigation*, No. 2:26-cv-00976-TLN-CKD (E.D. Cal.)

3.      Simonsen Sussman and Baron & Budd worked alongside the Los Angeles County Counsel to conduct a thorough pre-complaint investigation and economic analysis of the claims we filed against Defendants for unlawful mergers and acquisitions (Clayton Act Section 7), attempted monopolization (Sherman Act Section 2), and other claims, including violations of state law. Our first complaint was filed on behalf of the People of the State of California, acting by and through the Los Angeles County Counsel, the County of Los Angeles, and the Consolidated Fire Protection District of Los Angeles County on February 12, 2026.

4.      Simonsen Sussman and Baron & Budd represent dozens of public entities that have filed or authorized us to file individual (i.e., non-class) complaints against Defendants. All of the Non-Class Action complaints we have filed for our clients focus on Defendants' merger-and-acquisition conduct, as well as Defendant Pierce Manufacturing, Inc.'s conduct in the alleged markets for replacement parts.

5.      In April 2026, after the Judicial Panel on Multidistrict Litigation had ordered the instant MDL, I sought a meeting with counsel for the DPPs to discuss preliminary matters. On April 15, 2026, my partner Nico Gurian and I participated in a videoconference with Interim Lead DPP Class Counsel David Seidel of the Joseph Saveri Law Firm, Steven Basser and Jeffrey Barrack of Barrack, Rodos & Bacine, Greg Hansel of Preti, Flaherty, Beliveau & Pachios, Chartered, LLP, and Michael Flannery of Cuneo, Gilbert, Flannery & LaDuca, LLP.

6.      During this videoconference, Interim Lead DPP Class Counsel stated they had seen Simonsen Sussman and Baron & Budd's informational brochure about the litigation, and

stated they were "concerned" that Simonsen Sussman and Baron & Budd were discussing the litigation with public entities who may be members of their putative class. They further stated that they did not believe it was "necessary or appropriate" for the Court to appoint lead counsel for the Non-Class Action Plaintiffs. When pressed, Interim Lead DPP Class Counsel were unable to articulate the basis for their view, other than to say, "We're frankly concerned about you marketing yourselves as lead counsel." Mr. Hansel directly stated to Mr. Gurian and me: "We don't think you should file any more cases."

7. At the May 13, 2026 Telephone Conference, Interim Lead IPP Class Counsel Steve Berman had the following exchange with the Court:

> MR. BERMAN: This is Steve Berman, Your Honor. The consolidated complaint is on file pursuant to Judge Conway's order. The facts and the legal theories are very similar to what the directs have filed. Again, the only difference is where the plaintiffs bought from. So there is great commonality in the facts.
>
> THE COURT: Are you saying there's commonality as to both the monopolization and the price fixing claims?
>
> MR. BERMAN: There is commonality as to the price fixing claims. I believe we're not bringing a claim that -- I mean, that other counsel have suggested.
>
> THE COURT: Yeah.
>
> MR. BERMAN: We researched it and don't agree with it.
>
> THE COURT: So there really is a dispute among the indirect purchaser group over whether or not the monopolization claims should be a part of their -- their consolidated complaint; is that right?
>
> MS. HACKETT: Yes, Your Honor.
>
> MR. BERMAN: Yes. That's not unusual, Your Honor. I mean, I hate to say this, but it often happens that when there's been a court -- in [indiscernible] -- that other lawyers wanting to get a role as lead counsel come in and assert claims that they claim weren't asserted, that they can say, look, Your Honor, you need us. I was lead counsel in a very large MDL called the GM ignition switch case, and the exact thing happened. Other lawyers came in and said, look, Mr. Berman didn't bring a

3

RICO claim, and as I explained to Judge Furman in the Southern District of New York, you know, if you, like Judge Conway, looked at the qualifications and decided we were adequate to represent the class, we have to have the authority to decide what claims we should be bringing and the Court has to trust that. And we can't have a situation where throughout the litigation other lawyers say, oh, this -- this lead counsel didn't do this and therefore you need to appoint me.

Tr. of Tel. Conf. at 16-17 (May 13, 2026). NCAPs previously filed this transcript on the docket at ECF No. 68-1.

8.     At the May 13, 2026 Telephone Conference, the Court appointed Simonsen Sussman and Baron & Budd Lead Counsel for the Non-Class Actions and directed us to file a proposed order regarding the leadership appointment. Later on May 13, 2026, pursuant to the Court's order, I filed NCAPs' proposed leadership order.

9.     On May 13, 2026 at 10:45 p.m., an attorney at Preti Flaherty, Michael Smith, sent an email to Lead NCAP Counsel in which he opened with the line, "We write to you this evening about an issue of great concern. Please consider this email an attempt to resolve these issues amicably and without court intervention. Absent a full explanation and appropriate resolution, which we hope to reach with you, we may be required to take further action." The email went on to identify two subjects for discussion: (1) in February 2026, Young & Partners, failing to appreciate that the City of Philadelphia had filed a putative class action, contacted counsel for the City of Philadelphia about the litigation, and more recently emailed Mr. Smith about an unspecified litigation related to public entities; and (2) Simonsen Sussman and Baron & Budd's informational brochure.

10.     Mr. Smith continued: "There are remedies available to address misleading client solicitations like these, even at this early, pre-class certification stage, such as court-ordered curative communications. We hope it doesn't come to that and that we can avoid bringing this

issue to the Court." Mr. Smith further stated: "We intend to ensure that in the very near term, your clients and all those class members you solicited are, at a minimum, made aware of the pending class actions in the In re: Fire Apparatus Antitrust Litigation." Mr. Smith demanded a meet and confer "on or before May 18"—three business days later.

11. On May 18, 2026, I, along with Co-Lead NCAP Counsel Jason Julius of Baron & Budd and Victoria Sims and Nico Gurian of Simonsen Sussman, met and conferred with Interim Lead DPP Class Counsel about Mr. Smith's May 13 email.

12. Mr. Smith opened the meet and confer by listing a number of demands, including "immediate cessation of outreach" by Lead NCAP Counsel to actual and potential clients. During the meet and confer, Mr. Julius and I requested on multiple occasions that Interim Lead DPP Class Counsel provide authority for their position that Lead NCAP Counsel's informational brochure and outreach emails to attorneys for sophisticated public entities must contain information about the pending putative class actions. Mr. Basser, one of the Interim Lead DPP Class Counsel, responded that he had authority but that he would not provide it and, "You'll see it when we file our motion." Mr. Julius, Ms. Sims, and I explained that we were aware of no authority requiring counsel for non-class plaintiffs to inform attorneys for their actual and prospective clients that a putative class action filed by a different law firm asserting different claims against different defendants is pending. We concluded our discussion with an agreement that Interim Lead DPP Class Counsel would send Lead NCAP Counsel a written list of their demands to "cure" the alleged "omissions."

13. Later that day, Mr. Smith sent us an email stating, "here is what we are requesting:

- "Immediate cessation of outreach to potential plaintiffs until this issue is resolved.

5

- "Disclosure to us of the list of governmental entities that Simonsen Sussman LLP and Baron & Budd, P.C. have directly or indirectly solicited (including solicitations through Young & Partners or any other firm; via an individual contact at a governmental entity; and/or through any association of governmental entities).

- "The issuance of a written curative notification to (1) clients that have actually retained your firms in this case; (2) all prospective plaintiffs that your firms have previously directly or indirectly contacted about this case; (3) all potential referring counsel that your firms have previously directly or indirectly contacted with respect to this case; and (4) all associations of municipalities or other government entities that your firms have directly or indirectly contacted about this case (e.g., the Municipal Management Association of Northern California, the Pennsylvania Municipal Authorities Association), that notifies the recipient(s) of:

  a. the pending class actions;

  b. the fact that absent class members may take no action and still participate in any benefit achieved by such class actions, without the need to devote time and resources to participating directly in the case;

  c. the fact that attorney fees in class actions are subject to court approval and therefore may be less than a plaintiff would pay to a firm representing it directly; and

  d. contact information for court-appointed co-lead counsel [this subpart excludes clients that have actually retained your firms].

6

- "Provide us with the opportunity to review and comment upon the curative notice before it is disseminated.

- "Provide us with documentation establishing that the notice has been disseminated appropriately.

"Given the urgency of this matter, please respond by 1:00 Eastern on Wednesday, 5/20." Interim Lead NCAP Counsel provided no authority for their demands in this email.

14. Mr. Julius sent an email response to Mr. Smith's email by the deadline he provided. We noted Interim Lead DPP Class Counsel's repeated refusal to provide any authority for the "curative" communications they demanded and again asked them to provide it. In the absence of any authority, we explained that we would not accede to their demands.

15. Interim Lead DPP Counsel did not respond to Mr. Julius's email. They waited 10 days and filed their Motion for "Curative Communication" after the close of business on Friday, May 29.

16. At the May 13, 2026 Telephone Conference, Interim Lead DPP Class Counsel Michael Flannery had the following exchange with the Court:

> THE COURT: Okay. Let me ask you, Mr. Flannery, you filed a consolidated complaint in -- in front of Judge Conway's case. Is that the complaint that should be -- Do you see a need for any further amendment of it before it's -- it becomes the consolidated case for the track -- on the track you're lead counsel on?
>
> MR. FLANNERY: Thank you, Your Honor, Michael Flannery for the direct purchaser plaintiffs. . . . I think substantively the allegations in the complaint would not change. As we mentioned to defense counsel yesterday, we thought that there might be a need for -- for an amendment by way of, if you will, of interlineation to add a couple of the parties who at the time of the MDL had not been moved in to the case. These are the Massachusetts plaintiff and the Roseland, New Jersey plaintiff. So there might be a slight tweak of the complaint on that basis, but the substance of the complaint would not change, Your Honor.

7

Tr. of Tel. Conf. at 9 (May 13, 2026). NCAPs previously filed this transcript on the docket at ECF No. 68-1. A true and correct copy of a redline showing changes from DPPs' March 11, 2026 Consolidated Amended Class Action Complaint filed before Judge Conway and their May 22, 2026 First Amended Consolidated Class Action Complaint filed before this Court is attached hereto as **Exhibit A**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 8th day of June, 2026, at Los Angeles, California.

/s/ Catherine S. Simonsen  
Catherine S. Simonsen